IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SHAWN WOODWARD,

                            Plaintiff,                Civil Action No.
                                            9:16-CV-1174 (NAM/DEP)

        v.

LYTLE, Correctional Officer, Cape
Vincent Correctional Facility, *et al.*,

                          Defendants.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF:

SHAWN WOODWARD, *Pro Se*
00-A-6563
Collins Correctional Facility
P.O. Box 340
Collins, NY 14034

FOR DEFENDANTS:

HON. BARBARA D. UNDERWOOD        HELENA LYNCH, ESQ.
New York State Attorney General        Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Shawn Woodward, a New York State prison inmate, has commenced this civil rights action against seven individuals employed by the New York State Department of Corrections and Community Supervision ("DOCCS") pursuant to 42 U.S.C. § 1983. Plaintiff's complaint generally alleges that defendants retaliated against him for assisting other inmates in preparing grievances against prison officials by issuing him false misbehavior reports and assaulting him.

Currently pending before the court is a motion filed by defendants seeking the entry of summary judgment dismissing plaintiff's remaining claims. For the reasons set forth below, I recommend that the motion be granted.

I.      <u>BACKGROUND</u>[1]

Plaintiff is a New York State prison inmate currently being held in the custody of the DOCCS. *See generally* Dkt. No. 1. While he is now incarcerated elsewhere, at the times relevant to his claims in this action, plaintiff was confined in the Cape Vincent Correctional Facility ("Cape Vincent") located in Cape Vincent, New York. *Id.*

---

[1]      In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in the non-movant's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

Plaintiff arrived at Cape Vincent on or about April 3, 2015. Dkt. No. 1 at 3. Shortly after his arrival, plaintiff began working in the Cape Vincent law library. *Id.* at 3. While working in the law library, plaintiff assisted inmates in preparing legal memoranda, including a letter of complaint concerning defendant Dawley, a corrections officer, for an inmate who plaintiff has identified as "Inmate D-2-39B."[2] *Id.* at 3.

In late April or early May 2015, Inmate D-2-39B was transferred to a different housing block within Cape Vincent. Dkt. No. 1 at 3. According to plaintiff, "[a]fter Inmate D-2-39B left, Defendant Lytle – who was [the corrections officer on duty in plaintiff's dormitory early] that day – came to Plaintiff and told Plaintiff he could not be in his dorm (D-2) and think he would be writing up stuff on staff and no one would say anything and that [plaintiff's] job in the Law Lib wouldn't last long either." *Id.* at 3-4. Defendant Dawley worked as the D-2 dormitory officer later on that same day and asked plaintiff if he had assisted inmate D-2-39B in writing "any letters about him[.]" *Id.* at 4. When plaintiff responded that he had not, defendant Dawley recommended to Woodward that he assault Inmate D-2-39B because "saying that Plaintiff wrote them letters could get Plaintiff

---

[2]    "D-2-39B" refers to the dormitory in which the inmate was housed as of April 3, 2015. Dkt. No. 1 at 3. Upon entering Cape Vincent, plaintiff was housed in "D-2-40 Top." *Id.*

'fucked-up' real bad especially when those letters are about defendant [Dawley]." *Id.*

At the end of May 2015, plaintiff agreed to be a witness on behalf of another fellow inmate, Jose Colon, during a disciplinary hearing related to a misbehavior report issued to inmate Colon by defendant Docteur, a corrections officer. Dkt. No. 1 at 4. On May 31, 2015, defendant Docteur asked plaintiff to tell him what he planned to testify about at inmate Colon's disciplinary hearing. *Id.* at 5. Plaintiff answered that he intended to testify that defendant Docteur lied in the misbehavior report he authored with respect to inmate Colon. *Id.* Defendant Docteur allegedly responded, "'We[']ll see how good I lie on your [misbehavior report].'" *Id.* The following day, on June 1, 2015, defendant Docteur issued plaintiff an allegedly false misbehavior report accusing him of smoking in the bathroom. *Id.* Although plaintiff was never actually called as a witness at inmate Colon's disciplinary hearing, plaintiff told defendant Jones, a corrections lieutenant who presided as the hearing officer, that defendant Docteur was retaliating against plaintiff for acting as a witness. *Id.*

After plaintiff returned to his dormitory following his interaction with defendant Jones, defendant Lytle reminded him that both he and defendant Dawley had previously warned him about the consequences of

advocating on behalf of other inmates, and then instructed plaintiff not to attend his law library program "[u]ntil told otherwise[.]" Dkt. No. 1 at 5-6. Three hours later, plaintiff was directed to undergo a urinalysis test. *Id.* at 6. As plaintiff was leaving the test, defendant Lytle told plaintiff "to get all the outside rec[reation] now because it would be a long time before Plaintiff went outside." *Id.*

During the morning of June 3, 2015, defendant Gaffney, another Cape Vincent corrections officer, "told Plaintiff that he was on his way to the box" because plaintiff had been issued "the smoking [misbehavior report], lost his job in the Law Lib, [and] got the drug use [misbehavior] report." Dkt. No. 1 at 6-7. Defendant Gaffney also told plaintiff that "he and Defendant Lytle spoke and they agreed that Plaintiff could not work in the Law Library." *Id.* at 7. Plaintiff asked defendant Gaffney what he meant by the "drug use" misbehavior report, and defendant Gaffney "stated what did Plaintiff think was going to happen when Plaintiff gave the urine?" *Id.* at 6-7. Defendant Gaffney then remarked that plaintiff had been warned to "mind his business more than once." *Id.* at 8. Two hours later, plaintiff received several documents related to his removal from the law library position, as well as a misbehavior report accusing him of drug use.[3] *Id.* At

---

[3]      The misbehavior report concerning drug use was issued by defendant

that same time, defendant Gaffney repeated the threat to transfer plaintiff to a different dormitory because plaintiff had "pissed off too many staff." *Id.* Plaintiff was transferred to a different dormitory "[a] few days later," at which time defendant Gaffney threatened plaintiff with the issuance of a "sex charge" misbehavior report if plaintiff continued to "writ[e] up staff shit." *Id.* at 8.

On June 11, 2015, defendant Jones held a disciplinary hearing regarding the two misbehavior reports issued to plaintiff accusing him of smoking in the bathroom and drug use. Dkt. No. 1 at 8. Defendant Jones informed plaintiff that his "best choice" would be to plead guilty and "lay off writing up staff and being a witness at other inmates' hearing[s]." *Id.* As it was presented to plaintiff by defendant Jones, the alternative was that plaintiff would go to the "box"[4] and might not receive his personal property. *Id.* Although plaintiff attempted to explain that the misbehavior reports and job removal were in retaliation for his protected conduct, defendant Jones threatened to sanction plaintiff to the SHU if he said "one more word about

---

Anderson, a corrections officer. Dkt. No. 1 at 9, 12. Defendant Anderson later told plaintiff that he did not know whether plaintiff actually tested positive for drug use and that he "really [did not] care" because "what he did care about was the fact that Plaintiff don't know how to mind his business, do his own time, and don't worry about writing anything up against staff." *Id.* at 12.

4       The court understands this to be a reference to Cape Vincent's special housing unit ("SHU").

that retaliation bullshit[.]" *Id.* at 9. Plaintiff thereafter pleaded guilty to the charges set forth in both of the misbehavior reports and was sentenced by defendant Jones to ninety days of lost recreation and other privileges, as well as a recommended loss of ninety days of good-time credits. *Id.* Four hours later, plaintiff's work assignment to the law library was withdrawn by the facility's program committee. *Id.*; *see also* Dkt. No. 1-3 at 1.

In late June 2015, plaintiff authored a draft grievance against defendant Dawley on behalf of another inmate, who plaintiff identifies as "Tai." Dkt. No. 1 at 10. The grievance included information regarding Inmate D-2-39B to demonstrate that defendant Dawley "had a history of misconduct." *Id.* "Shortly after this," defendant Dawley arrived at plaintiff's dormitory and directed plaintiff "to go outside for a patfrisk." *Id.* Defendant Dawley asked plaintiff whether he had assisted inmate Tai in writing a grievance, and when plaintiff denied doing so, defendant Dawley called him a liar and began choking him. *Id.* at 11. "On several occasions after this" defendant Dawley appeared in plaintiff's dormitory and told other inmates that plaintiff "was a 'snitch' and a 'rapo,'" and told "known gang members that if someone 'fucked-up' plaintiff[,] that defendant Dawley would guaranty [sic] that no staff member sees it and no one goes to the [SHU]." *Id.*

7

On July 3, 2015, plaintiff was punched in the face by a fellow inmate while in the bathroom after being asked by the inmate about "what Defendant [Dawley] was saying[.]" Dkt. No. 1 at 12. Although plaintiff and the inmate were both taken to the SHU and charged with fighting, plaintiff was also charged with drug use. *Id.* at 13. Plaintiff was found guilty of both charges, while the other inmate was exonerated. *Id.* Although the determinations were eventually reversed, plaintiff spent nearly two months in the SHU as a result of the charges. *Id.*

In late July 2015, the chaplain of Cape Vincent informed plaintiff that he was entitled to receive a cold alternative diet ("CAD") because he is a Muslim. Dkt. No. 1 at 13. Although plaintiff filed the necessary paperwork for receiving a CAD on August 1, 2015, defendant Kenyon, who plaintiff has identified as a civilian cook at Cape Vincent, told plaintiff that he would not receive the CAD in light of a grievance plaintiff had filed concerning the mess hall staff's failure to comply with a prison directive. *Id.* at 14-15. Plaintiff then informed defendant Kenyon that he intended to file a grievance against him for retaliation, and defendant Kenyon responded by saying, "'I'll show you how to write.'" *Id.* at 15. The next day, plaintiff was issued a false misbehavior report accusing him of violating several prison rules. Dkt. No. 1 at 15.

II.    <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on or about September 28, 2016, by

the filing of a complaint, accompanied by an application for leave to

proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. Plaintiff's complaint

asserts First Amendment retaliation claims against all of the named

defendants, as well as an Eighth Amendment excessive force claim

against defendant Dawley and a Fourteenth Amendment due process

claim against defendant Jones. <u>Dkt. No. 1 at 16-18</u>.

Upon review of plaintiff's complaint and accompanying IFP

application pursuant to 28 U.S.C. §§ 1915(e), 1915A, Senior District Judge

Norman A. Mordue issued a decision and order on October 19, 2016,

granting plaintiff's IFP application and dismissing plaintiff's Fourteenth

Amendment due process claim. <u>Dkt. No. 4 at 14</u>. Although the remaining

causes of action asserted against defendants Lytle, Dawley, Docteur,

Anderson, Gaffney, Jones, and Kenyon survived the court's initial review,

in a decision and order issued on September 22, 2017, based upon a

report and recommendation issued by me on August 15, 2017, concerning

a motion by defendants requesting dismissal of plaintiff's complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the

court dismissed the following claims:

> (1) [P]laintiff's retaliation claim asserted against defendant Lytle concerning (a) the issuance of a false misbehavior report, and (b) a dormitory transfer; and (2) plaintiff's retaliation claim asserted against defendant Gaffney concerning the issuance of a false misbehavior report.

Dkt. No. 30 at 38; Dkt. No. 36 at 5. The remaining retaliation claims asserted against all defendants, and the excessive force claim asserted against defendant Dawley, remain pending following Judge Mordue's decision. *Id.*

On February 9, 2018, defendants filed the currently pending motion for summary judgment arguing that plaintiff's remaining claims are barred based on plaintiff's failure to exhaust the available administrative remedies prior to filing this action. Dkt. No. 41. Plaintiff filed a response and sur-reply in opposition to the motion, and defendants have replied in further support of their motion. Dkt. Nos. 51, 52, 56. Defendants' motion has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   <u>DISCUSSION</u>

    A.   <u>Legal Standard Governing Summary Judgment Motions</u>

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial

burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250. When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson*, 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

  B. <u>Exhaustion of Available Administrative Remedies</u>

  Defendants' motion for summary judgment is based on their contention that plaintiff failed to exhaust available administrative remedies prior to filing this action. *See generally* <u>Dkt. No. 41-1</u>.

1.   <u>Legal Standard</u>

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is mandatory and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by

"compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).[5]

In New York, the DOCCS has instituted a grievance procedure, designated as the Inmate Grievance Program ("IGP"), for use by prison inmates to lodge complaints regarding the conditions of their confinement. *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC")[6] have up to sixteen days after the grievance is filed to informally resolve the issue. 7 N.Y.C.R.R. § 701.5(b)(1). If there is no such informal resolution,

---

[5]     While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "'in a substantive sense,'" an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004) (emphasis omitted)).

**[6]**     The IGRC is comprised of "two voting inmates, two voting staff members, and a non- voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. 7 N.Y.C.R.R. § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal.[7] 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of the appeal. 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii).

Where an inmate's grievance complains of employee harassment, the grievance is forwarded directly to the superintendent, bypassing the IGRC review. 7 N.Y.C.R.R. § 701.8(b), (c). The superintendent then has twenty-five days from the date of its receipt to render a decision. 7 N.Y.C.R.R. § 701.8(g). An inmate may appeal the superintendent's

---

[7]    Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

decision to the CORC within seven days of its receipt. 7 N.Y.C.R.R. §
701.8(h).

As can be seen, at each step of the IGP, a decision must be
rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the
IGRC and/or superintendent do not timely respond, an inmate is permitted
to appeal "to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). Generally, if a
plaintiff fails to follow each of the required three steps of the above-
described IGP prior to commencing litigation, he has failed to exhaust his
administrative remedies as required under the PLRA. *See Ruggerio v.
Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires
proper exhaustion, which means using all steps that the agency holds out,
and doing so *properly* (so that the agency addresses the issues on the
merits)." (internal quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative
remedies, it also "contains its own, textual exception to mandatory
exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a)
provides that only those administrative remedies that "are available" must
first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at
1858 ("[T]he exhaustion requirement hinges on the availability of
administrative remedies." (quotation marks omitted)). In the PLRA context,

the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA.[8] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

---

[8]    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

2.    Analysis

Defendants contend, and plaintiff does not dispute, that plaintiff did not fulfill the steps required under the IGP to exhaust administrative remedies. It is uncontroverted that plaintiff did not file any grievances at Cape Vincent, nor did he appeal any grievances concerning his claims in this action to the CORC. *Compare* Dkt. No. 41-2 at 4 *with* Dkt. No. 51 at 3; *see also* Dkt. No. 41-3 at 2-3; Dkt. No. 41-5 at 3. The only question to be resolved is whether the IGP was unavailable to plaintiff such that he may be excused from his failure to fully exhaust the administrative remedies.

Plaintiff contends that he attempted to file grievances at Cape Vincent while he was housed in the facility's SHU but that his efforts were thwarted by the Cape Vincent grievance supervisor. Dkt. No. 51 at 3; Dkt. No. 51-1. Specifically, plaintiff alleges that, on July 14, 2015, he submitted a grievance at Cape Vincent complaining of retaliatory conduct by defendants Docteur, Gaffney, Dawley, and Jones, but that "[l]ater that week when the Inmate Grievance Program Supervisor made her rounds she told [plaintiff] that she was not filing my grievance because she knew some of the officers and did not believe what [plaintiff] was saying."[9] Dkt.

---

[9]    The grievance also allegedly included a complaint that defendant Dawley used excessive force against plaintiff in retaliation for plaintiff engaging in constitutionally protected conduct. Dkt. No. 52-2 at 6. As described by plaintiff, however, the grievance

No. 52-2 at 1-2. Following the IGP supervisor's refusal to file plaintiff's

grievance, plaintiff then submitted a handwritten letter to the Cape Vincent

superintendent.[10] *Id.* at 2. On July 27, 2015, the Cape Vincent

superintendent allegedly informed plaintiff that "[a]ll matters of grievance

should be referred to the grievance department." *Id.* On the same date,

plaintiff wrote a letter to Acting DOCCS Commissioner Anthony Annucci,

informing him that his efforts to file a grievance at Cape Vincent had been

unsuccessful. *Id.* In that letter, plaintiff also wrote the following:

> Therefore, because step one (1) and two (2) in the
> grievance level are refusing to file my complaint, I'm
> sending it to you to either one (1) order the facility's
> Grievance Program Supervisor to file such or two
> (2) delegate this matter to Central Office Review
> Committee (CORC)[.]

*Id.* Annucci referred plaintiff's letter to Karen Bellamy, the DOCCS Director

of the IGP, who wrote plaintiff in response on August 3, 2015. Dkt. No. 52-

---

did not include any allegations concerning defendant Lytle or Anderson. *See generally*
Dkt. No. 52-2. There is no record evidence, and plaintiff does not contend, that he filed
or attempted to file any grievances whatsoever against defendants Lytle or Anderson,
nor does plaintiff argue that the IGP was unavailable in connection with his complaints
against those defendants. Accordingly, plaintiff's constitutional claims asserted against
those defendants are subject to dismissal for failure to exhaust the administrative
remedies.

[10]      Although it is not clear whether plaintiff's letter to the superintendent complained
only of the IGP supervisor's failure to file his grievance, or also complained of the
alleged retaliatory conduct by defendants Gaffney, Dawley, and Jones, I have resolved
this ambiguity in plaintiff's favor and assumed, for purposes of this motion, that plaintiff
included both complaints in his letter to the superintendent. Dkt. No. 52-2 at 2.

3. In pertinent part, Bellamy's letter stated as follows:

> Contact with the [Cape Vincent] administration reveals that the IGP Supervisor did not receive or refuse to file a July 15, 2015 complaint from you alleging staff misconduct. Further, she does not recall speaking with you during rounds on July 15, 2015.
>
> You are advised that Directive #4040 makes no provision for an inmate to refer grievances directly to Central Office, and that specific grievance concerns should be directed to the IGP Supervisor for the most expeditious means of resolution.

*Id.*

Defendants contend that the IGP remained available to plaintiff at all relevant times, as evidenced by a grievance submitted by plaintiff on or about July 22, 2015, a date in and around the timeframe implicated in this action. Dkt. No. 41-1 at 13; Dkt. No. 41-4 at 2-4. Defendants also argue that, even assuming all of plaintiff's allegations are true concerning his efforts to file a grievance complaining of retaliatory conduct by defendants (including a physical assault on him by defendant Dawley), plaintiff failed to appeal a non-response to his grievance to the CORC, as required in the IGP. Dkt. No. 52 at 9.

After carefully considering the parties' positions on the pending matter, I find that, although a dispute of fact concerning plaintiff's initial attempt to file a grievance at Cape Vincent exists in the record, there is no

dispute that he failed to file an appeal of the non-response of any grievance to the CORC. The IGP unequivocally provides that inmates who do not receive a response to a grievance within the specified time frames can appeal to the next level. 7 N.Y.C.R.R. § 701.6(g)(2). Indeed, proceeding the next step in the grievance process following the lack of a response for the next-earlier step is precisely what plaintiff alleges he did by reaching out to the Cape Vincent superintendent when the grievance supervisor did not accept his grievance at the first step. Dkt. No. 52-2 at 2. By writing a letter to Annucci after the superintendent allegedly denied plaintiff any relief, plaintiff did not appeal to the CORC, as the IGP mandates, but rather sought intervention from DOCCS administration. This sort of circumvention of the IGP has been consistently rejected in this circuit under the PLRA. *See, e.g., Kearney v. Drankhan*, No. 11-CV-6033, 2014 WL 4678040, at *3 (W.D.N.Y. Sept. 18, 2014); *Lashley v. Artuz*, No. 01-CV-1154, 2004 WL 1192090, at *3 (S.D.N.Y. May 27, 2004); *Hernandez v. Coffey*, No. 99-CV-11615, 2003 WL 22241431, at *3 (S.D.N.Y. Sept. 29, 2003).[11] Moreover, plaintiff has provided the court with no justification or evidence that suggests his ability to file an appeal with

---

[11]     All unreported cases cited to in this report have been appended for the convenience of the *pro se* plaintiff.

the CORC was thwarted or otherwise unavailable to him.

Notwithstanding my definitive findings above that plaintiff did not properly exhaust the IGP in this case and that the IGP was available to him, it is worth noting that plaintiff is correct that the IGP does not specify a remedy for prisoners whose grievances at the first step are not filed, whether through inadvertent or deliberate prison official conduct, and subsequent appeals to the superintendent and the CORC complaining of a non-response at the previous step are unsuccessful. *See* 7 N.Y.C.R.R. § 701.6(g)(2) (only providing that "matters not decided within the time limits may appealed to the next step"). Plaintiff in this case appears to have proceeded through the IGP in accordance with the regulations, except that, instead of filing an appeal to the CORC after the superintendent rejected his efforts to appeal the facility grievance supervisor's failure to file his grievance, he sought intervention from the DOCCS Acting Commissioner. While this nearly hit the mark in terms of complying with the IGP, by its specific language, the IGP requires inmates to appeal to the next step, which, under the circumstances of this case, required plaintiff to file an appeal to the CORC. 7 N.Y.C.R.R. § 701.6(g)(2). Hypothetically speaking, had plaintiff appealed the non-responses of his grievance from the IGRC and the superintendent to the CORC, rather than

to Annucci, and assuming that the CORC had responded prior to the time plaintiff commenced this action, plaintiff at that point would have fully complied with the IGP and thereafter had a stronger argument concerning whether the IGP was available to him in light of the fact that there is no provision in the IGP for what an inmate should do when the IGP supervisor refuses to file a grievance and the superintendent and the CORC reject the inmate's efforts to appeal that initial refusal. *See Ross*, 136 S. Ct. at 1859 ("[A]n administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."); *Williams*, 829 F.3d at 124-25 (finding that 7 N.Y.C.R.R. § 701.6(g)(2) was so confusing rendering the IGP unavailable under the circumstances, where the plaintiff had alleged that his grievance had not been filed and that he was subsequently transferred to a different correctional facility, obscuring the "appeal to the next step" provision of the IGP).

In any event, setting aside hypothetical considerations, the undipsuted facts in this case reveal that plaintiff did not file an appeal to the CORC, and instead attempted to circumvent the IGP by requesting intervention by DOCCS administration. Accordingly, I find both that plaintiff did not fully comply with the IGP and that the procedures set forth in the IGP remained available to plaintiff at all times.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Although plaintiff alleges that he attempted to fully exhaust the administrative remedies prior to commencing this action but was precluded from doing so by the actions of prison officials and the ambiguities of the relevant prison regulations, I find that the IGP clearly set forth a remedy for plaintiff under the circumstances of this case. Because plaintiff did not fully comply with the available IGP, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment dismissing plaintiff's complaint based on plaintiff's failure to exhaust the available administrative remedies (Dkt. No. 41) be GRANTED, and that plaintiff's complaint be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[12] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

---

[12]   If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      August 13, 2018
            Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

2003 WL 22241431
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Jose HERNANDEZ, Plaintiff,
v.
Kevin R. COFFEY, C.O., Lawrence J.
Featherston, C.O. James Chamberlain,
Sgt., M. Taylor, Nurse, Defendants.

No. 99 Civ. 11615(WHP).
|
Sept. 29, 2003.

## Synopsis

Inmate brought a pro se § 1983 action against corrections officers, alleging civil rights violations. On a defense motion for judgment on the pleadings, the District Court, Pauley, J., held that the inmate failed to satisfy the Prison Litigation Reform Act's (PLRA) exhaustion requirement.

Motion granted.

West Headnotes (3)

**[1]**   **Courts**
          👉 In General;Retroactive or Prospective Operation

Supreme court decision establishing that the Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust every claim he wishes to assert prior to filing a claim in district court applies retroactively to prisoners who filed their suits prior to the Supreme Court's pronouncement. Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e(a).

2 Cases that cite this headnote

**[2]**   **Prisons**
          👉 Particular Cases

Inmate's alleged complaint letters to the Commissioner of the New York Department

of Corrections, a county district attorney, and the State Police did not satisfy the Prison Litigation Reform Act's (PLRA) exhaustion requirement. Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e(a); N.Y. Correction Law § 139; N.Y. Comp.Codes R. & Regs tit. 7, § 701.7(a)(1).

6 Cases that cite this headnote

**[3]**   **Civil Rights**
          👉 Criminal Law Enforcement;Prisons

Inmate claiming civil rights violations in connection with an alleged attack by corrections officers failed to satisfy the Prison Litigation Reform Act's (PLRA) exhaustion requirement, as required to file § 1983 suit, where he did not exhaust his administrative appeals or advance any excuse for his failure to exhaust. Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e(a); N.Y. Correction Law § 139; N.Y. Comp.Codes R. & Regs tit. 7, § 701.7(a)(1).

14 Cases that cite this headnote

## Attorneys and Law Firms

Jose Hernandez, Sullivan Correctional Facility, Fallsburg, New York, Plaintiff, pro se.

Susan H. Odessky, Assistant Attorney General, State of New York, Office of the Attorney General, New York, New York, for Defendants.

## *MEMORANDUM AND ORDER*

PAULEY, J.

**\*1**  *Pro se* plaintiff, Jose Hernandez, brings this action against defendants Correction Officer Kevin R. Coffey, Corrections Officer Lawrence J. Featherston, Sergeant James Chamberlain, and M. (Michelle) Taylor, all employed at Downstate Correction Facility ("Downstate"), for civil rights violations pursuant to 42 U.S.C. § 1983 (2003). Defendants move for judgment on the pleadings pursuant to Rule 12(c) of the Federal

Rules of Civil Procedure based on Hernandez's failure to exhaust his available administrative remedies prior to the initiation of this action. For the following reasons, defendants' motion is granted.

### Background

The Complaint alleges a horrific attack by the New York State Department of Correctional Services ("DOCS") personnel on Hernandez while he was incarcerated at Downstate. Hernandez was transiting through Downstate to Clinton Correctional Facility ("Clinton") following his appearance in New York State Family Court, King County. Following the attack, Hernandez was warned that if he told anyone about it he would be killed.

The alleged attack and events in its wake occurred on November 5 and 6, 1998. Hernandez commenced this action on November 29, 1999, alleging that the defendants beat him, and denied him medical care, in violation of his constitutional rights to due process and to be free from cruel and unusual punishment.

In his Complaint, and in an affidavit submitted to this Court on May 16, 2002, [1] Hernandez alleges that he exhausted the administrative remedies available to him by sending letters to Glenn S. Goord, the Commissioner of DOCS, the New York State Police, and William B. Grady, District Attorney of the "Poughkeepsie area." [2] Hernandez further indicated that as a result of these letters, no action was taken and "no results" were achieved.

### Discussion

The applicable legal standards for a Rule 12(c) motion for judgment on the pleadings are the same as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *King v. American Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir.2002); *Bunting v. Nagy,* No. 01 Civ. 5716(SHS), 2003 WL 21305339, at *2 (S.D.N.Y. June 6, 2003). The Court must accept as true the allegations contained in the Complaint and draw all reasonable inferences in favor of the nonmoving party. *King,* 284 F.3d at 356; *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999). Dismissal of a complaint pursuant to Rule 12(c) is appropriate only

where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v.. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994). Further, as with a 12(b)(6) motion, a *pro se* litigant such as Hernandez is allowed a special latitude in responding to a motion for judgment on the pleadings. *See Bunting,* 2003 WL 21305339, at *2.

Defendants present this Court with a single challenge to the Complaint. Defendants argue that judgment on the pleadings should be granted because, accepting the allegations contained in the Complaint as true and drawing all reasonable inferences in favor of the non-moving party, Hernandez failed to exhaust his administrative remedies as required by *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Hernandez contends that he filed both formal and informal grievances, but that no action was taken by DOCS, and thus his remedies should be deemed exhausted. [3]

### I. *Failure to Exhaust Administrative Remedies*
**\*2** As Amended, the Prison Litigation Reform Act of 1996 ("PLRA"), 42 USC § 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or another Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

This provision of the PLRA imposes a mandatory exhaustion requirement on incarcerated plaintiffs prior to filing an action with the Court. *See Porter,* 534 U.S. at 524; *Brown v. Commissioner,* No. 99 Civ. 976(WHP), 2003 WL 1571699, at *3 (S.D.N.Y. Mar.26, 2003); *Baskerville v. Blot,* 224 F.Supp.2d 723, 728-29 (S.D.N.Y.2003); *Harris v. Totten,* 244 F.Supp.2d 229, 232 (S.D.N.Y.2003). The effectiveness of the administrative remedy is no longer a prerequisite to the exhaustion requirement. *Porter,* 534 U.S. at 524.

Prior to the Supreme Court's decision in *Porter,* the law in the Second Circuit was that the " 'prison conditions'

Case 9:16-cv-01174-NAM-DEP   Document 57   Filed 08/13/18   Page 28 of 36
Hernandez v. Coffey, Not Reported in F.Supp.2d (2003)
2003 WL 22241431

phrase [in the PLRA] cover[ed] only conditions affecting prisoners generally, not single incidents that immediately affect only particular prisoners, such as corrections officers' use of excessive force." Porter, 534 U.S. at 516. However, the Supreme Court, in Porter, held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 516.

Thus, after Porter it is clear that the PLRA requires a prisoner to exhaust every claim he wishes to assert prior to filing a claim in district court. See Muhammad v. Pico, No. 02 Civ. 1052(AJP), 2003 WL 21792158, at *7-8 (S.D.N.Y. Aug.5, 2003); Brown, 2003 WL 1571699, at *2; Harris, 244 F.Supp.2d at 232. Subsequent to Porter, courts in the Second Circuit have routinely ruled that excessive force and deliberate indifference claims, such as plaintiff's, are subject to the PLRA's exhaustion requirements. See, e.g., Lawrence v. Goord, 304 F.3d 198, 199 (2nd Cir.2002); Harris, 244 F.Supp.2d at 232-33. Accordingly, all of Hernandez's claims are subject to the PLRA's exhaustion requirement.

[1]  Hernandez argues that he should not be subject to Porter because the law in the Second Circuit when he filed this action did not require administrative exhaustion for claims such as his. Assuming arguendo that plaintiff's analysis is correct, there is no question that the law as enunciated in Porter applies retroactively to prisoners such as Hernandez who filed their suits prior to the Supreme Court's pronouncement in Porter. See Brown, 2003 WL 1571699, at *3; Harris, 244 F.Supp.2d at 232 n. 2; Espinal v. Goord, No. 01 Civ. 6569(NRB), 2002 WL 1585549, at *2 n. 3; Hemphill v. New York, 198 F.Supp.2d 546, 549-50 (S.D.N.Y.2002). Moreover, application of the Porter rule to plaintiff is neither inequitable nor unconstitutional since the Second Circuit's decisions on which plaintiff relies "were not handed down until well after the time when [plaintiff] failed to file a timely grievance," which in this case was late 1998. Hemphill, 198 F.Supp.2d at 550; see, e.g., Lawrence v. Goord, 238 F.3d 182 (2d Cir.2001), vacated by Goord v. Lawrence, 535 U.S. 901, 122 S.Ct. 1200, 152 L.Ed.2d 139 (2002); Nussle v. Willette, 224 F.3d 95 (2d Cir.2000), vacated by Porter, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12.

A. DOCS' Grievance Procedures

*3  [2]  DOCS has a well-established three-step administrative inmate grievance program ("IGP") to resolve inmate grievances. See N.Y. Correction Law § 139; N.Y. Comp.Codes R. & Regs. tit. 7, § 701 .7(a)(1). The IGP requires the inmate to: (1) file a complaint with the Inmate Grievance Review Committee ("IGRC"); (2) appeal to the facility superintendent; and (3) appeal to the DOCS Central Office Review Committee ("CORC") in Albany. N.Y. Comp.Codes R. & Regs tit. 7, § 701.7(a)(1); see also Brown, 2003 WL 1571699, at *3 (explaining IGP process); Harris, 244 F.Supp.2d at 233 (same); Hemphill, 198 F.Supp.2d at 548 (same).

A prisoner's remedies are not deemed exhausted until he goes though all three levels of the IGP. Thus, once an inmate files a grievance, he must exhaust all administrative appeals in order to satisfy the PLRA's exhaustion requirement. [4] Brown, 2003 WL 1571699, at *3; Rivera v. Goord, 253 F.Supp.2d 735, 746 (S.D.N.Y.2003); Harris, 244 F.Supp.2d at 232; Kearsey v. Williams, No. 99 Civ. 8646(DAB), 2002 WL 1268014, at *2 (S.D.N.Y. June 6, 2002); Waters v. Schneider, No. 01 Civ. 5217(SHS), 2002 WL 727025, at *1-2 (S.D.N.Y. Apr.23, 2002); Hemphill, 198 F.Supp.2d at 548-49; see also Sulton v. Wright, 265 F.Supp.2d 292, 296 (S.D.N.Y.2003) ("Inmates must therefore exhaust all administrative remedies, at all levels of appeal, in order for their claims to survive a motion to dismiss."); Sedney v. Hasse, No. 02 Civ. 2583(DC), 2003 WL 21939702, at *4 (S.D.N.Y. Aug.17, 2003) ("A prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure."). Prison officials are entitled to require strict compliance with the existing grievance procedures. Sedney, 2003 WL 21939702, at *4; Baskerville, 224 F.Supp.2d at 730; Hemphill, 198 F.Supp.2d at 549. To satisfy the PLRA exhaustion requirement, inmates must follow procedures established by New York State rather than "invent their own grievance procedures." Hemphill, 198 F.Supp.2d at 549.

Both in his Complaint and affidavit, Hernandez acknowledges that he never filed a formal IGP grievance for his claims in this action. Instead, he asserts that he sought to resolve his grievance by writing to Glenn S. Goord, the Commissioner of DOCS, the Dutchess County District Attorney and the State Police in Albany. However, it is well settled that complaint letters to DOCS or prison officials do not satisfy the PLRA's exhaustion requirements. See Sedney, 2003 WL 21939702, at *4

(noting that courts have "repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements."); *Muhammad,* 2003 WL 21792158, at *8 ("District court decisions in this circuit have repeatedly held that complaint letters to DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements."); *Harris,* 244 F.Supp.2d at 233 ("However, letters to prison officials do not satisfy the exhaustion requirement of the PLRA where the inmate has failed to follow the established grievance procedures."); *Hemphill,* 198 F.Supp.2d at 549 ("[A] letter to the Superintendent has been expressly held to be 'insufficient' to warrant considering a matter 'effectively grieved.' "); *Beatty v. Goord,* 210 F.Supp.2d 250, 255-56 (S.D.N.Y.2000) (holding that writing letters to the Superintendent is not sufficient to comply with the IGP). The same rationale for requiring strict compliance with the IGP applies with equal force to the State Police and the District Attorney. Thus, Hernandez's complaint letters are insufficient to exhaust his administrative remedies.

**\*4** **[3]** Perhaps recognizing his deficiencies, Hernandez asserts in opposition to defendants' motion, that he filed a timely grievance. (Opp. at 5-6, 9-10.) Specifically, he now claims to have filed a grievance at Clinton on November 10, 1998, but asserts it was never answered, and that he did not receive a grievance number or hearing. (Opp. at 5 & Ex. F.) Hernandez also contends that he sent a request for a response to the chairperson of the inmate grievance office at Clinton on February 15, 2000. (Opp. at 6 & Ex. I.) These new allegations contradict Hernandez's earlier statements concerning his exhaustion efforts. However, this Court need not decide whether to accept Hernandez's new allegations because even if they are true, he still has not properly exhausted his administrative remedies.

As noted above, a prisoner must proceed though all three levels of the IGP to satisfy the PLRA's exhaustion requirement. *Brown,* 2003 WL 1571699, at *3; *Rivera,* 253 F.Supp.2d at 746; *Harris,* 244 F.Supp.2d at 232; *Waters v. Schneider,* No. 01 Civ. 5217(SHS), 2002 WL 727025, at *1 (S.D.N.Y. Apr.23, 2002); *Hemphill,* 198 F.Supp.2d at 548-49. Thus, where a prisoner files a grievance, and the IGRC does not respond, the inmate must nevertheless exhaust his appeals to the facility superintendent and the CORC. *Brown,* 2003 WL 1571699, at *3; *Harris,* 244 F.Supp.2d at 232; *Kearsey,* 2002 WL 1268014, at *2; *Waters,* 2002 WL 727025, at *1; *Hemphill,* 198

F.Supp.2d at 548-49; *see also Saunders v. Goord,* No. 98 Civ. 8501(JGK), 2002 WL 1751341, at *3 (S.D.N.Y. July 29, 2002) ("Even if the plaintiff did not receive responses directed toward some grievances, the plaintiff was required, at a minimum, to make reasonable attempts to appeal those grievances before bringing an action in federal court...."). Hernandez's latest allegations do not establish that he pursued his available appeals within the IGP. Even assuming that plaintiff's request for a response was a level two appeal under the IGP, it is clear that plaintiff never appealed to the CORC in Albany, and thus his claims are unexhausted. *Brown,* 2003 WL 1571699, at *3; *Benitez v. Straley,* No. 01 Civ. 181(RCC), 2002 WL 31093608, at *3 (S.D.N.Y. Sept.18, 2002); *Saunders,* 2002 WL 1751341, at *3; *Kearsey,* 2002 WL 1268014, at *2; *Waters,* 2002 WL 727025, at *1; *Hemphill,* 198 F.Supp.2d at 548.

Finally, Hernandez has not advanced any excuse for his failure to exhaust his administrative remedies under the IGP. The circumstances of this case do not warrant a determination that Hernandez exhausted his administrative remedies. [5] For example, he does not allege that anyone hindered his ability to file a grievance. Although Hernandez alleges that he was threatened with retaliation, he does not allege that those threats hindered him in any way. It is evident that he was not hindered from reporting the alleged incident because he wrote to DOCS officials and the District Attorney's office complaining about the attack at Downstate.

*Conclusion*

**\*5** Accordingly, Hernandez's failure to exhaust available administrative remedies compels judgment on the pleadings in defendant's favor and dismissal of the Complaint. Dismissal of an action for failure to comply with the PLRA's exhaustion requirement is without prejudice. *Morales v. Mackalm,* 278 F.3d 126, 128 (2d Cir.2002) (per curiam). Defendant's motion for judgment on the pleadings is granted and the Complaint is dismissed without prejudice. The Clerk fo the Court is directed to close this case.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 22241431

Footnotes

1    At a pre-trial conference on May 3, 2002, this Court directed Hernandez to submit a sworn affidavit explaining how he exhausted his administrative remedies concerning the instant claims, and attaching any copies of grievances or letters he alleges were part of that process. The Court received such an affidavit from Hernandez on May 16, 2002. (Affidavit of Jose Hernandez, dated May 10, 2002 ("Hernandez Aff.").)

2    Plaintiff also notes that he sent a letter complaining about the incidents to then-Chief Judge Thomas P. Griesa of the Southern District of New York. Then-Chief Judge Griesa subsequently replied to plaintiff's letter by sending him instructions on how to file a civil lawsuit. (Hernandez Aff'. ¶ 6.)

3    Defendants attach several documents to their motion for judgment on the pleadings, and argue that the Court may consider them without converting the motion to one for summary judgment under Rule 56 because they are incorporated by reference into the Complaint. Without determining whether defendants are correct, this Court will not consider the documents defendants submitted since this Court finds that defendants' motion must be granted based on the four corners of the Complaint and plaintiff's affidavit.

4    The Second Circuit and some courts in this district have found that a prisoner can be deemed to have informally exhausted his remedies if a resolution of the issue in the prisoner's favor has been reached. *See, e.g., Marvin v. Goord,* 255 F.3d 40, 43 n. 3 (2d Cir.2001); *Sedney v. Hasse,* No. 02 Civ. 2583(DC), 2003 WL 21939702, at *4 (S.D.N.Y. Aug.17, 2003); *Rivera,* 253 F.Supp.2d at 746. Notably, Hernandez alleges precisely the opposite, namely that despite his many pleas and letters, a resolution on this matter was never reached. Thus, he cannot be deemed to have informally exhausted his remedies.

5    Moreover, although Hernandez does not make such an argument, to the extent that he could argue that his noncompliance with the IGP requirements was due to his transfer from Downstate back to Coxsackie the day after the incident, that argument is unavailing. First, "New York's Inmate Grievance Program contains provisions that allow prisoners to pursue grievances even after their transfer out of the facility where their claims arose." *Timmons v. Pereiro,* No. 00 Civ. 1278(LAP), 2003 WL 179769, at *2 (S.D.N.Y. Jan.27, 2003); *see also Delio v. Morgan,* No. 00 Civ. 7167(LTS), 2003 WL 21373168, at *3 (S.D.N.Y. Jun.13, 2003) (rejecting transfer argument and relying on 7 N.Y.C.R.R. § 701.3(k)(2)). Finally, such an argument would indirectly raise a futility argument, and it is well-settled that futility of the administrative remedy is not an excuse for failure to exhaust. *Santiago v. Meinsen,* 89 F.Supp.2d 435, 440-41 (S.D.N.Y.2000); *accord Paulino v. Amicucci,* No. 02 Civ. 208(LAP), 2003 WL 174303, at *3 (S.D.N.Y. Jan.27, 2003).

---

**End of Document**                                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 4678040
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Richard KEARNEY, Plaintiff,

v.

Correction Officers R. DRANKHAN, T.
McDonnell and R. Letina, Defendants.

No. 11–CV–6033–FPG.
|
Signed Sept. 18, 2014.

**Attorneys and Law Firms**

Richard Kearney, Stormville, NY, pro se.

Hillel David Deutsch, NYS Attorney General's Office,
Rochester, NY, for Defendants.

DECISION AND ORDER

FRANK P. GERACI, JR., District Judge.

**\*1** *Pro se* Plaintiff Richard Kearney filed this action
under 42 U .S.C. § 1983, alleging that Defendants,
three employees of the New York State Department
of Corrections and Community Supervision ("DOCCS")
facility in Attica, New York, violated his constitutional
rights. The Complaint stems from an incident on or about
November 9, 2008, where Plaintiff alleges that while he
was an inmate at the Attica Correctional Facility, the
Defendants utilized excessive force against him, and then
falsely filed disciplinary reports against him to cover up
the alleged incident. Because Plaintiff failed to exhaust his
administrative remedies before commencing this action,
Defendants' Motion for Summary Judgment (Dkt.# 27) is
granted, and this case is dismissed with prejudice.

*DISCUSSION*

The standard for ruling on a summary judgment motion
is well known. A party is entitled to summary judgment
"if the movant shows that there is no genuine issue as to
any material fact and that the moving party is entitled
to a judgment as a matter of law." Fed.R.Civ.P. 56(a).

"[W]here the nonmoving party will bear the burden of
proof at trial on a dispositive issue, a summary judgment
motion may properly be made in reliance solely on the
pleadings, depositions, answers to interrogatories, and
admissions on file." *Celotex Corp. v. Catrett,* 477 U.S.
317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal
quotation marks omitted).

When considering a motion for summary judgment, all
genuinely disputed facts must be resolved in favor of
the non-moving party. *Scott v. Harris,* 550 U.S. 372,
380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). In order to
establish a material issue of fact, the non-movant need
only provide "sufficient evidence supporting the claimed
factual dispute" such that a "jury or judge [is required]
to resolve the parties' differing versions of the truth at
trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–
49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting *First
Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253,
288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). Thus, the
"purpose of summary judgment is to 'pierce the pleadings
and to assess the proof in order to see whether there is
a genuine need for trial.' " *Matsushita Elec. Indus. Co.,
Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct.
1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)
advisory committee's note on 1963 amendments). If, after
considering the evidence in the light most favorable to
the non-moving party, the Court finds that no rational
jury could find in favor of that party, a grant of summary
judgment is appropriate. *Scott,* 550 U.S. at 380 (citing
*Matsushita,* 475 U.S. at 586–587).

Because the Plaintiff is proceeding *pro se, his* pleadings
are held to "less stringent standards than formal pleadings
drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89,
94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal
quotation marks omitted). Accordingly, I will interpret
Plaintiff's submissions "to raise the strongest arguments
that they suggest." *Fulton v. Goord,* 591 F.3d 37, 43 (2d
Cir.2009).

**\*2** Under the Prisoner Litigation Reform Act ("PLRA"),
42 U.S.C. § 1997e(a), "[n]o action shall be brought
with respect to prison conditions under section 1983 ...
or any other Federal law, by a prisoner confined in
any jail, prison, or other correctional facility until such
administrative remedies as are available are exhausted." If
an inmate fails to exhaust their administrative remedies,
they are barred from commencing a federal lawsuit.

*Martin v. Niagara County Jail,* No. 05–CV–00868(JTC), 2012 WL 3230435, at *6 (W.D.N.Y. Aug.6, 2012). In other words, to commence a lawsuit "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Johnson v. Killian,* 680 F.3d 234, 238 (2d Cir.2012). Exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly." *Amador v. Andrews,* 655 F.3d 89, 96 (2d Cir.2011) (quoting *Woodford v. Ngo,* 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). To be "[p]roper," exhaustion must comply with all of the agency's "deadlines and other critical procedural rules." *Woodford,* 548 U.S. at 90–91.

To satisfy the PLRA's exhaustion requirement, an inmate in New York is generally required to follow the prescribed DOCCS grievance procedure, which is set forth at 7 N.Y.C.R.R. § 701.5. In short, a prison inmate's administrative remedies consist of a three-step grievance and appeal procedure: (1) investigation and review of the grievance by the Inmate Grievance Resolution Committee ("IGRC"), which is comprised of inmates and DOCCS employees; (2) if appealed, review of the IGRC's determination by (or, if the committee is unable to reach a determination, referral to) the superintendent of the facility; and (3) if the superintendent's decision is appealed, review and final administrative determination by the Central Office Review Committee ("CORC"). *See id.* All three steps of this procedure must ordinarily be exhausted before an inmate may commence suit in federal court. *See Morrison v. Parmele,* 892 F.Supp.2d 485, 488 (W.D.N.Y.2012) (citing *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)).

It is undisputed that the Plaintiff did not file an administrative grievance regarding this matter with DOCCS. In his Complaint [1], Plaintiff states that he "did not use the prisoner grievance procedure in the state institution" because "there was, nor is, within the prison grievance system no available or accessible administrative remedies that could have accomplished the purpose of affording any time of relief for a felony hate crime; racial unlawful discrimination; battery assault; and torture." Dkt. # 1, ¶¶ 17, 23. Defendants have submitted an affidavit from Mark Janes, Grievance Supervisor at the Attica Correctional Facility, in which he states that "my office has no record of a grievance filed by Plaintiff" during the time period of a week prior to the alleged

incident through December 30, 2008, when Plaintiff was transferred out of Attica Correctional Facility. Dkt. # 27. As these facts are undisputed, I easily conclude that Plaintiff did not file a grievance with DOCCS regarding the November 9, 2008 incident, and he has therefore failed to exhaust his administrative remedies.

**\*3** Although Plaintiff failed to comply with DOCCS' grievance procedure, in interpreting Plaintiff's papers liberally, he argues that he should be excused from the exhaustion requirement for three reasons. First, he claims that the grievance system cannot provide him with the relief he is seeking; second, he alleges that assault—the core allegation in his Complaint—is not a matter "about prison life" and therefore is outside the scope of the exhaustion requirement; and third, he argues that he wrote letters to officials including the Commissioner of DOCCS and spoke to prison officials about the incident, and those communications should serve as a substitute for his not filing a grievance. None of these arguments have merit.

Plaintiff's argument that he was not required to file a grievance because the DOCCS procedures could not grant him the relief he sought has been rejected by the United States Supreme Court. *See Booth v. Churner,* 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) ("Congress has mandated exhaustion ... regardless of the relief offered through administrative procedures.")

Similarly, the Supreme Court has also rejected Plaintiff's argument that his assault allegation is not "about prison life," holding that the administrative exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

Finally, Plaintiff's argument that his letters or communications with DOCCS officials should serve as a substitute for filing a grievance falls flat as "decisions in this circuit have repeatedly held that complaint letters to the DOCCS commissioner or the facility superintendent do not satisfy the PLRA's exhaustion requirements." *Muhammad v. Pico,* No. 02 Civ. 1052(AJP), 2003 WL 21792158, at *8 (S.D.N.Y. Aug.5, 2003) (collecting cases). As one court observed, "[t]he Second Circuit has made clear that even if prison officials have notice of a prisoner's claims as a result of such informal communications, the

purposes of the PLRA's exhaustion requirement can only be realized through strict compliance with the applicable administrative procedures." *Mamon v. New York City Dep't of Corr.,* No. 10 Civ. 3454(NRB), 2012 WL 260287, at *4 (S.D.N.Y. Jan.27, 2012) (citing *Macias v. Zenk,* 495 F.3d 37, 44 (2d Cir.2007)).

The same is true for having conversations with prison officials about the incident, as "oral statements to various officials" do not satisfy the PLRA's exhaustion requirement. *Simon v. Campos,* No. 09 Civ. 6231(PKC), 2010 WL 1946871, at *6 (S.D.N.Y. May 10, 2010); *see also Magassouba v. Cross,* No. 08 Civ. 4560(RJH) (HBP), 2010 WL 1047662, at *8 (S.D.N.Y. Mar. 1, 2010) (collecting cases); *Harrison v. Goord,* No. 07 Civ. 1806(HB), 2009 WL 1605770, at *8 (S.D.N.Y. June 9, 2009) (holding that oral complaints and sending letters to prison officials "just don't cut the mustard" in establishing exhaustion).

**\*4** While I am aware that non-exhaustion can be excused under certain circumstances, *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004), there is simply no basis to excuse Plaintiff's failure to exhaust his administrative remedies in this case. Plaintiff had the ability to file a grievance regarding his allegations, but chose not to do so. There is no allegation—much less any evidence— that Plaintiff was in any way prevented from accessing the grievance process, and despite his arguments to the contrary, there are no special circumstances that justify the Plaintiff's failure to comply with the DOCCS grievance procedures. As a result, Plaintiff's failure to exhaust his administrative remedies is fatal to this action, and the Defendants are entitled to summary judgment.

### *CONCLUSION*

Defendants' Motion for Summary Judgment (Dkt.# 27) is GRANTED and this action is dismissed with prejudice. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Any request to proceed *in forma pauperis* on appeal should be directed by motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk of the Court is directed to terminate this action.

IT IS SO ORDERED.

### **All Citations**

Not Reported in F.Supp.3d, 2014 WL 4678040

---

Footnotes

1    In his papers, Plaintiff repeatedly complains that his prior counsel filed an Amended Complaint in this case that Plaintiff did not approve. It is irrelevant to the outcome of this motion, as whether the Court relies on the original Complaint or the Amended Complaint, as the result would be the same. Nevertheless, the Court will refer to the Plaintiff's original *pro se* Complaint (Dkt.# 1), as he has requested.

---

2004 WL 1192090
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Corey LASHLEY, Plaintiff,

v.

Christopher ARTUZ, C. Buday, B. Laclair, John Doe,
K. La Blonk, T. Jiguere, B. Mitchell, W. Glasser,
M. Miller, M. Farrell, J. McGow, Defendants.

No. 01 Civ. 11542(SAS).
|
May 27, 2004.

**Attorneys and Law Firms**

Corey Lashley, Attica Correctional Facility, Attica, New
York, (pro se).

Susan H. Odessky, Assistant Attorney General, New
York, New York, for Defendants.

*MEMORANDUM OPINION AND ORDER*

SCHEINDLIN, J.

 **\*1** Pro se plaintiff Corey Lashley has moved to vacate
this Court's September 24, 2002 Order dismissing his
section 1983 Complaint because he failed to exhaust
administrative remedies. On October 21, 2002, Lashley
filed a Notice of Appeal. On November 5, 2003, the
Second Circuit issued an Order dismissing the appeal. The
November 5th Order directed Lashley to file a motion in
this Court, under Federal Rule of Civil Procedure Rule
60(b), addressing whether he exhausted his administrative
remedies with regard to any of his claims. Lashley filed
a Rule 60(b) motion on February 11, 2004. The Second
Circuit issued its Mandate on April 5, 2004, which was
transmitted to the district court on April 14, 2004. For the
following reasons, Lashley's motion is denied.

## I. JURISDICTION

"The filing of a notice of appeal is an event of
jurisdictional significance—it confers jurisdiction on the
court of appeals and divests the district court of its control
over those aspects of the case involved in the appeal."

Griggs v. Provident Consumer Discount Co., 459 U.S. 56,
58 (1982); see also United States v. Camacho, 302 F.3d
35, 36 (2d Cir.2002). The Federal Rules of Appellate
Procedure carve out an exception to this general rule
where there is a pending motion in the district court "(i)
for judgment under Rule 50(b); (ii) to amend or make
additional factual findings under Rule 52(b), whether or
not granting the motion would alter the judgment; (iii) for
attorney's fees under Rule 54 if the district court extends
the time to appeal under Rule 58; (iv) to alter or amend the
judgment under Rule 59; (v) for a new trial under Rule 59;
or (vi) for relief under Rule 60 if the motion is filed no later
than 10 days after the judgment is entered." Fed. R.App.
P. 4(a)(4)(A). If a party files a notice of appeal after one
of these specified motions is filed in the district court, but
before it is ruled upon, "the notice becomes effective to
appeal a judgment or order, in whole or in part, when
the order disposing of the last such remaining motion is
entered." Fed. R.App. P. 4(a)(4)(b).

Lashley's motion to vacate the judgment pursuant to
Rule 60(b) of the Federal Rules of Civil Procedure was
made while his appeal was pending. The filing of the
Notice of Appeal divested this Court of jurisdiction as
Lashley's motion did not fall within any of the above
exceptions. Because the motion involved the same issues
"involved in the appeal," Griggs, 459 U.S. at 58, this
Court had no jurisdiction over this action at the time
Lashley sought to vacate the judgment. See Kai Wu
Chan v. Reno, 932 F.Supp. 535, 537–38 (S.D.N.Y.1996)
(after a notice of appeal is filed, the district court lacks
jurisdiction over pending motions except in the specific
circumstances delineated in Rule 4 of the Federal Rules
of Appellate Procedure). However, now that the appeal
has been dismissed, jurisdiction has been restored to
this Court because jurisdiction follows the mandate. See
United States v. Rivera, 844 F.2d 916, 921 (2d Cir.1998)
(citing Ostrer v. United States, 584 F.2d 594, 598 (2d
Cir.1978) ("The effect of the mandate is to bring the
proceedings in a case on appeal in our Court to a close and
to remove it from the jurisdiction of this Court, returning
it to the forum whence it came.")). This Court can now
rule on the merits of Lashley's motion.

## II. EXHAUSTION OF ADMINISTRATIVE
REMEDIES

 **\*2** The Prisoner Litigation Reform Act ("PLRA") states
that "no action shall be brought with respect to prison
conditions under section 1983 of this title ... until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 122 S.Ct. 983, 992 (2002). Inmates must therefore exhaust all administrative remedies, at all levels of appeal, in order for their claims to survive a motion to dismiss. *See Hemphill v. New York,* 198 F.Supp.2d 546, 548 (S.D.N.Y. Apr. 19, 2002).

DOCS has created a three-tiered grievance process for all prisoner complaints. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 701.7. *First,* an inmate must file a grievance with the Inmate Grievance Review Committee ("IGRC"), which is composed of fellow inmates and various prison officials. *See id.* § 701.7(a). *Second,* if the inmate is dissatisfied with the IGRC decision, he must appeal to the superintendent of the facility. *See id.* § 701 .7(b). *Third,* if the inmate does not receive a favorable decision from the superintendent, he must appeal to the Central Office Review Committee ("CORC"). *See id.* § 701.7(c). The superintendent's response at the second level must provide "simple directions on how this decision may be appealed" to the CORC. *Id.* § 701.7(b)(5). The grievance process is then complete and the inmate, if still dissatisfied, may bring a complaint in the appropriate court. *See Hemphill,* 198 F.Supp.2d at 548.

The PLRA requires a plaintiff to exhaust all available administrative remedies *before* a complaint in federal court is filed. *See* 42 U.S.C. § 1997e(a). Even where an inmate receives no response to his initial level grievance, he is still required to file an appeal in order to satisfy the exhaustion requirement. *See Burns v. Moore,* No. 99 Civ. 966, 2002 WL 91607, at \*8 (S.D.N.Y. Jan. 24, 2002); *Long v. Lafko,* No. 00 Civ. 723, 2001 WL 863422, at \*1– 2 (S.D.N.Y. July 31, 2001) (an inmate's complaint was dismissed where plaintiff failed to appeal a grievance after not having received a determination at the lower grievance level).

III. DISCUSSION

A. Plaintiff's Grievances
Lashley's motion must be denied on the merits because he has failed to show that he fully exhausted all the grievances that comprise his federal action. In connection with his motion to vacate, plaintiff alleges that he filed

ten grievances dated and identified as follows: January 28, 1999 (GH–39324–98); January 30, 1999 (GH–39325– 98 and GH–39326–98); February 2, 1998 (GH–39332–98); February 6, 1998 (GH–39395–98); February 9, 1998 (GH– 39405–98); February 11, 1998 (GH–39406–98); June 23, 1999 (GH–42530–99); August 4, 1999 (an informal letter of complaint to Superintendent Christopher Artuz); and August 18, 1999 (not produced by plaintiff).

**\*3** The only grievance in which plaintiff fully exhausted his administrative remedies by appealing to the CORC is the June 23, 1999 grievance. *See* CORC Decision dated September 8, 1999, Ex. E–4 to Plaintiff's Affidavit in Support of Notice of Motion to Vacate Judgment ("Pl.Aff."). Plaintiff admittedly did not appeal the January 28, 1998, February 2, 1998 and February 6, 1998 grievances. *See* Pl. Aff. ¶¶ 1(b), 3(b) and 4(b) ("There was no need to further appeal the Grievance decision because plaintiff's ... request[ ] was granted to a certain extent and that extent did not deny plaintiff's Grievance."). Contrary to plaintiff's contention, he did not appeal the grievances he filed on January 30, 1998, February 9, 1998, and February 11, 1998. At the end of each Inmate Grievance Complaint form, there is a section entitled "Appeal Statement" which the inmate signs in order to appeal an unfavorable decision by the IGRC to the Superintendent. Plaintiff did not sign any of the Appeal Statements to any of these grievances. *See* Ex. A to Letter of Assistant Attorney General Susan H. Odessky, dated April 12, 2004. Even if plaintiff had appealed these decisions to the Superintendent, there is no proof that he further appealed them to the CORC. *See* September 13, 2000 Letter from Thomas G. Eagen, Director of Inmate Grievance Program, stating that "the Central Office Review Committee (CORC) has no record of receipt of grievances # GH–39325–98, GH–39326–98, GH–39405–98 nor GH–39406–98. Ex. D–10 to Pl. Aff. *See also* October 3, 2000 Letter from Eagen stating that "CORC has no record of receiving the four grievances filed in 1998 from Green Haven Correctional Facility ." Ex. D–12 to Pl. Aff. Plaintiff's August 4, 1999 grievance is an informal complaint letter to Superintendent Artuz. The New York State Department of Correctional Services ("DOCS") responded to this letter in an Inter– Departmental Communication addressed to plaintiff and dated August 24, 1998. *See* Ex. B–3 to Pl. Aff. Regardless of the form of response, "[c]ourts have repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's

exhaustion requirements." *Nelson v. Rodas,* No. 01 Civ. 7887, 2002 WL 31075804, at *3 (S.D.N.Y. Sept. 17, 2002) (collecting cases). Lastly, plaintiff did not produce the alleged August 17, 1999 grievance which raises the presumption that it was never filed, much less fully exhausted.

**B. Total Exhaustion**
Although defendants concede that the June 23, 1999 grievance has been fully exhausted, *see* Odessky Letter at 3, they argue that the entire action should be dismissed, not merely the unexhausted portion, because plaintiff's Complaint contains both exhausted and unexhausted claims. Courts are currently split on the question of whether the PLRA requires "total exhaustion," an issue now pending before the Second Circuit. *See Ortiz v. McBride,* 323 F.3d 191, 195 (2d Cir.2003) (collecting cases within this district). *See also Nelson,* 2002 WL 31075804, at *5 (collecting circuit and district cases outside this district).

 **\*4** Although the Second Circuit has not yet ruled on the "total exhaustion" issue, Judge John G. Koeltl has upheld defendants' position, relying on the plain language of the statute which states that " '[n]o *action* shall be brought ... until such administrative remedies as are available are exhausted." ' *Saunders v. Goord,* No. 98 Civ. 8501, 2002 WL 1751341, at *3 (S.D .N.Y. July 29, 2002) (quoting 42 U.S.C. § 1997e(a) (emphasis in original)). Judge Lewis A. Kaplan adopted this reasoning in *Vidal v. Gorr,* No. 02 Civ. 5554, 2003 WL 43354, at *1 (S.D.N.Y. Jan. 6, 2003), when he held that an entire complaint must be dismissed for failure to exhaust even one claim. The reasoning of my colleagues is especially persuasive where, as here, only one out of ten grievances was fully exhausted. Accordingly, plaintiff's Complaint is a "mixed" complaint that cannot stand under the PLRA.

**IV. CONCLUSION**
For the foregoing reasons, Lashley's motion to vacate the judgment is denied. The Clerk of the Court is directed to close this motion [Document # 27] and this case.

 SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 1192090

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.