**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**SHAWN WOODWARD,**

                **Plaintiff,**

        **v.**                                  **9:16-CV-1174 (NAM/DEP)**

**LYTLE, Correctional Officer, Cape
Vincent Correctional Facility,** *et al.***,**

                **Defendants.**

---

**Appearances:**

SHAWN WOODWARD, Plaintiff *Pro Se*
00-A-6563
Collins Correctional Facility
P.O. Box 340
Collins, New York 14034

*Attorneys for Defendants*:
Hon. Barbara D. Underwood,
Attorney General of the State of New York
Helena Lynch, Esq.,
Assistant Attorney General
The Capitol
Albany, New York 12224

**Hon. Norman A. Mordue, Senior U. S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff *pro se* Shawn Woodward, a New York State prison inmate, brings this 42 U.S.C. § 1983 action against seven individual Defendants employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), alleging civil rights claims

related to his confinement at Cape Vincent Correctional Facility ("Cape Vincent"). (Dkt. No. 1). Plaintiff's remaining claims are for First Amendment retaliation against all Defendants and Eighth Amendment excessive force against Defendant Dawley. (Dkt. Nos. 30, 36). On February 9, 2018, Defendants filed for summary judgment, on the basis that Plaintiff's claims were barred based on his failure to exhaust the available administrative remedies prior to filing this action. (Dkt. No. 41). The matter was referred to United States Magistrate Judge David E. Peebles, who, on August 13, 2018, issued a Report & Recommendation, recommending that Defendants' motion for summary judgment be granted and that the case be dismissed because Plaintiff failed to exhaust his available administrative remedies. (Dkt. No. 57). Plaintiff then filed timely objections to the Report & Recommendation, arguing, *inter alia*, that he could not have exhausted his administrative remedies since they were "opaque and incapable of use." (Dkt. No. 60, p. 12).

## II. STANDARD OF REVIEW

This court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection, as is the case here. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C).

Summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *In re World Trade Center Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 210 (2d Cir. 2014). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). A fact is genuinely in dispute "if the

2

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In ruling on a summary judgment motion, the court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Where the plaintiff proceeds *pro se*, the Court must read his submissions liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

### III. DISCUSSION

#### a. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. *See Espinal v. Goord*, 558 F.3d 119, 123–24 (2d Cir. 2009). To properly exhaust his administrative remedies, an inmate must complete the administrative review process in accord with the applicable state procedural rules. *Jones v. Bock*, 549 U.S. 199, 218–19 (2007) (citing *Woodford v. Ngo*, 548 US 81, 88 (2006)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90–91. The defendant bears the burden of proving that a plaintiff failed to exhaust available administrative remedies. *See Samuels v. Fischer*, 168 F. Supp. 3d 625, 651 (S.D.N.Y. 2016).

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). 7 N.Y.C.R.R. §§ 701.5(a)(1), (b). The grievance must be filed within 21 days of the alleged occurrence, using an "inmate grievance complaint form (form #2131)," but if this form is not readily available, "a

3

complaint may be submitted on plain paper." *Id.* at § 701.5(a)(1). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* at § 701.5(c)(1). If the grievant wishes to appeal to the Superintendent, "he or she must complete and sign the appeal section on the IGRC response form (form #2131) and submit it to the grievance clerk within seven calendar days after receipt of the IGRC's written response." *Id.* Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* at § 701.5(d)(1). If the grievant wishes to appeal to the CORC, "he or she must complete and sign form #2133 and submit it to the grievance clerk within seven calendar days after receipt of the superintendent's written response to the grievance." *Id.* If the grievance concerns employee harassment, there is an expedited process: the grievance skips the IGRC level and goes to the Superintendent, who has twenty-five days to make a decision, after which the inmate has seven days to appeal to the CORC. *Id.* at § 701.8. During the grievance process, "matters not decided within the time limits may be appealed to the next step." *Id.* at § 701.6(g)(2). Inmates in special housing units have access to Form #2131, and "[t]he IGP supervisor shall monitor and ensure the proper functioning of the grievance procedure in SHU's." *Id.* at § 701.7.

There is also an exception to the mandatory exhaustion requirement, in the event the administrative remedies are "unavailable." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (quoting *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1858 (2016)). An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1858. The Supreme Court has identified three circumstances in which an administrative remedy, while "officially on the books," is not available. *Id.* at 1859. An administrative remedy is unavailable when: (1) "it operates a simple dead end—with officers unable or consistently

4

unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams*, 829 F.3d at 123–24 (quoting *Ross*, 136 S. Ct. at 1859–60).

### b. Evidence of Exhaustion & Availability

On or about April 3, 2015, Plaintiff was incarcerated at Cape Vincent Correctional Facility in Cape Vincent, New York. (Dkt. No. 1, p. 3). Plaintiff helped other inmates prepare complaints about corrections staff, and he was allegedly warned by the staff against "writing up staff" and "testifying at hearings" in support of other inmates, and he was allegedly subjected to retaliation for doing so. (*Id.*, pp. 7–12). On or about July 3, 2015, Plaintiff was confined to the Special Housing Unit ("SHU"), after being found guilty of charges of fighting and drug use. (*Id.*, p. 13). Although the determinations were eventually reversed, Plaintiff spent nearly two months in the SHU as a result of the charges. (*Id.*). Plaintiff alleges that, on July 14, 2015, while in the SHU, he submitted a grievance complaining of retaliatory conduct by various Defendants, but that "[l]ater that week when the Inmate Grievance Program Supervisor made her rounds [,] she told me that she was not filing my grievance because she knew some of the officers and did not believe what I was saying." (Dkt. No. 52-2, pp. 1–2). There is no record of this particular grievance being filed. (*See* Dkt. No. 41-3). On July 22, 2015, Plaintiff successfully filed a grievance related to the food served in the SHU. (Dkt. No. 41-4).

On July 27, 2015, Plaintiff wrote a letter to Acting DOCCS Commissioner Anthony Annucci, informing him that Plaintiff had attempted to file a grievance on July 14, 2015 but was thwarted by the IGP Supervisor. (Dkt. No. 52-2, p. 1). Plaintiff wrote that "because of this [,] I

5

sent a handwritten copy to the facility's superintendent since he is the next in the chain of the grievance appeal process." (*Id.*, p. 2). Plaintiff wrote that he spoke with the Superintendent on July 27, 2015, who referred him back to the "grievance department." (*Id.*). Plaintiff continued:

> Therefore, because step one (1) and two (2) in the grievance level are refusing to file my complaint, I'm sending it to you to either one (1) order the facility's Grievance Program Supervisor to file such or two (2) delegate this matter to Central Office Review Committee (CORC)[.]

(*Id.*). Annucci referred Plaintiff's letter to Karen Bellamy, the DOCCS Director of the IGP, who wrote Plaintiff in response on August 3, 2015. (Dkt. No. 52-3). In relevant part, Bellamy wrote as follows:

> Contact with the [Cape Vincent] administration reveals that the IGP Supervisor did not receive or refuse to file a July 15, 2015 complaint from you alleging staff misconduct. Further, she does not recall speaking with you during rounds on July 15, 2015.
>
> You are advised that Directive #4040 makes no provision for an inmate to refer grievances directly to Central Office, and that specific grievance concerns should be directed to the IGP Supervisor for the most expeditious means of resolution.

(*Id.*). On August 27, 2015, Plaintiff wrote again to Annucci, addressing the Bellamy letter. (Dkt. No. 52-4). Plaintiff expressed confusion as to what to do next, writing that:

> This is problematic because if a facility's IGP's Supervisor refuses to file an inmate grievance [,] then what can the inmate do? Especially when as in this case the facility's Superintendent also refuses to except [sic] an inmate's grievance for filing?

(*Id.*). Plaintiff asked that his grievance be forwarded "to the proper facility's staff for filing," since by that time he had been transferred to Southport Correctional Facility in Pine City, New York. (*Id.*). By letter dated October 8, 2015, Bellamy responded to Plaintiff, writing in relevant part that: "Please be advised that your IGP issues were addressed in my August 3, 2015 letter to

6

you . . . You have not presented any compelling evidence to indicate that your grievances are not being processed in accordance with Directive #4040." (Dkt. No. 52-5). According to DOCCS, "[n]either Plaintiff's July 27, 2015 letter nor his August 27, 2015 letter was a grievance or an appeal of a grievance." (Dkt. No. 52-1, ¶ 7). There is no record of an appeal related to the alleged July 14, 2015 grievance. (*See* Dkt. No. 41-5).

### c. Analysis

In their motion for summary judgment, Defendants argued that Plaintiff failed to exhaust his administrative remedies and could not show that the administrative remedies were unavailable to him. (Dkt. No. 41-1). In the Report & Recommendation, Magistrate Judge Peebles correctly found that Plaintiff failed to exhaust his administrative remedies, since Plaintiff never actually filed a grievance related to the claims in this action, nor did he appeal any such grievance to the CORC. (Dkt. No. 57). That left one question: "whether the IGP was unavailable to plaintiff such that he may be excused from his failure to fully exhaust the administrative remedies." (*Id.*, p. 18). After careful review of the record, the Court finds that an issue of fact remains as to this question, in accordance with the Second Circuit's decision in *Williams v. Correction Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016).

In that case, the plaintiff was housed in the SHU at Downstate Correctional Facility, and while there, he allegedly drafted a grievance concerning staff misconduct and then gave it to a correction officer to forward to the grievance office on his behalf. *Williams*, 829 F.3d at 120–21. The plaintiff never received a response to the grievance, he never appealed it, and he was transferred to another facility about two weeks later. *Id.* at 121. He alleged that the correction officer in the SHU never filed the grievance for him. *Id.* The plaintiff filed a civil rights action,

7

but the defendants successfully moved to dismiss, on the basis that the plaintiff failed to exhaust his administrative remedies, citing records that he never filed an appeal of the grievance. *Id.* But the Second Circuit reversed, finding that the administrative remedies were unavailable to the plaintiff under the circumstances, where he had an unfiled and unanswered grievance:

> However, even if Williams technically could have appealed his grievance, we conclude that the regulatory scheme providing for that appeal is "so opaque" and "so confusing that ... no reasonable prisoner can use [it]." *Ross*, 136 S.Ct. at 1859 (quoting Tr. of Oral Arg. 23). The regulations simply do not contemplate the situation in which Williams found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance.

*Williams*, 829 F.3d at 124. The Circuit explained that the regulations do not outline any process to appeal an unfiled grievance:

> On their face, the regulations only contemplate appeals of grievances that were actually filed. For example, if the grievance had never been filed, the superintendent would never have received it and the timeline for her to provide a response within 25 days "of receipt of the grievance" would never have been triggered. NYCRR tit. 7, § 701.8(f). In turn, the textual provision allowing a grievant to appeal to the CORC would never have come into effect. *See id.* § 701.8(g) ( "If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC.").

*Id.* The Circuit concluded that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Id.* at 126. Further, the "obscurity" of the regulations "was compounded by the fact that Williams was transferred to another facility approximately two weeks after giving his grievance to the correction officer," since the regulations also do not provide guidance "on how a transferred inmate can appeal his grievance with the original facility without having received a response." *Id.* The Circuit recommended that, to avoid confusion going forward, "DOCCS revise its grievance procedures to instruct inmates how to appeal grievances that were not properly filed by prison staff, and

8

how to appeal a grievance, to which the inmate never received a response, after being transferred." *Id.* at 126–27.

Likewise, there is evidence in this case that: 1) Plaintiff drafted a grievance while in the SHU on or about July 14, 2015; 2) he gave it the IGP Supervisor for filing; and 3) the grievance was never filed or answered. (Dkt. No. 1; Dkt. No. 52-2). On the other hand, there is evidence that the IGP Supervisor never received or refused to file any such grievance. (Dkt. No. 52-3). It is undisputed that DOCCS has no record of this grievance or any related appeal. Drawing all inferences in the non-moving party's favor, Plaintiff drafted and submitted the grievance, but it went unfiled and unanswered. Under these particular circumstances, "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Williams*, 829 F.3d at 126. Moreover, Plaintiff was also transferred after attempting to file the grievance, further compounding the problem. *Id.* Plaintiff's understandable confusion about the process is evident in his letters dated July 27, 2015 and August 27, 2015 to Acting Commissioner Annucci. (Dkt. Nos. 52-2, 52-4). And in response, DOCCS made no attempt to explain that Plaintiff had to appeal the non-response to his alleged unfiled grievance to the CORC, the position taken by Defendants in this case.[1] In fact, Plaintiff was advised that "Directive #4040 makes no provision for an inmate to refer grievances directly to Central Office, and that specific grievance concerns should be directed to the IGP Supervisor for the most expeditious means of resolution." (Dkt. No. 53-3). Plaintiff correctly identifies this

---

[1] The obscurity of this Kafkaesque suggested process is further demonstrated by the fact that the regulations spell out that any appeal to the CORC requires Form #2133, while inmates in the SHU only have access to Form #2131. *Compare* N.Y.C.R.R. §§ 701.5(d)(1), 701.7(a); *see also Davis v. State of New York*, 311 F. App'x 397, 399 n.2 (2d Cir. 2009) (explaining that Form #2133 is the form which has the Superintendent's grievance decision printed on the top half of a single sheet and on the bottom half contains the form an inmate is required to file to appeal the Superintendent's decision to the CORC).

9

confounding situation in his objections to the Report & Recommendation.  (Dkt. No. 60, p. 16).

In sum, viewing the evidence in the light most favorable to Plaintiff, the Court finds that an issue of fact exists as to the availability of the grievance process, which precludes summary judgment.[2]  *See Williams*, 829 F.3d at 126–27; *see also Medina v. Napoli*, 725 F. App'x 51, 54 (2d Cir. 2018) ("The record establishes that Medina's allegations, supported by witness testimony, about defendants' actions to prevent the filing of Medina's grievances concerning the June 2007 incident are sufficient, when viewed in the light most favorable to Medina, to raise a genuine issue of material fact as to whether the grievance process was 'available' to Medina under the *Ross* and *Williams* exhaustion analysis."); *Jackson v. Downstate Correctional Facility*, No. 16 Civ. 267, 2018 WL 3650136, at *9, 2018 U.S. Dist. LEXIS 128980, at *18 (S.D.N.Y. July 31, 2018) (denying summary judgment motion based on failure to exhaust administrative remedies where evidence showed that the plaintiff "submitted a grievance, but that grievance was never filed," and the appeal procedures were "prohibitively opaque") (citing *Williams*); *Hurst v. Mollnow*, No. 16 Civ. 1062, 2018 WL 4178226, at *10, 2018 U.S. Dist. LEXIS 122624, at *26 (N.D.N.Y. July 20, 2018) ("In light of *Williams*, the Court finds material issues of fact as to the availability of the grievance process and whether Plaintiff attempted to exhaust his administrative remedies, precluding summary judgment."), *report and recommendation adopted*, No. 16 Civ. 1062, 2018 WL 4153926, 2018 U.S. Dist. LEXIS 147670 (N.D.N.Y. Aug. 30, 2018); *Fann v. Graham*, No. 15 Civ. 1339, 2018 WL 1399331, at *6, 2018 U.S. Dist. LEXIS 6717, at *17 (N.D.N.Y. Jan. 11, 2018) ("Viewing the facts in the light most favorable to

---

[2] The fact that Plaintiff successfully filed one grievance while in the SHU related to the food served there does not demonstrate that he could have filed one about employee misconduct or that he could have appealed an unfiled grievance to the CORC, so as to eliminate the issue of fact as to the availability of administrative remedies.

10

plaintiff, the record suggests that plaintiff's grievances were submitted, but were unfiled and unanswered, creating an issue of fact as to whether the grievance process was available and whether plaintiff attempted to exhaust his administrative remedies . . . ."), *report and recommendation adopted*, No. 15 Civ. 1339, 2018 WL 1399340, 2018 U.S. Dist. LEXIS 43887 (N.D.N.Y. Mar. 19, 2018); *Reid v. Marzano*, No. 15 Civ. 761, 2017 WL 1040420, at *3, 2017 U.S. Dist. LEXIS 38547, at *10 (N.D.N.Y. Mar. 17, 2017) (denying summary judgment motion based on exhaustion argument, noting that "it is DOCCS' borderline incomprehensible regulation governing this situation that is to blame").

### IV. CONCLUSION

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Peebles's Report & Recommendation (Dkt. No. 57) is **REJECTED**; and it is further

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. No. 41) is **DENIED without prejudice** to renew should the Defendants request an exhaustion hearing pursuant to *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011); and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

Dated: September 27, 2018
      Syracuse, New York

*Norman A. Mordue*
Senior U.S. District Judge