IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SHAWN WOODWARD,

                            Plaintiff,                Civil Action No.
                                                      9:16-CV-1174 (NAM/DEP)

    v.

SCOTT LYTLE, Correctional Officer,
Cape Vincent Correctional Facility,
*et al.*,[1]

                            Defendants.

_____

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF:

SHAWN WOODWARD, *Pro Se*[2]
00-A-6563
Franklin Correctional Facility
P.O. Box 10
Malone, NY 12953

_____

[1]      According to testimony by defendants, the proper spellings and full names of the individual defendants identified in plaintiff's complaint are as follows: "P. Gaffney" is "Paul Gaffney," Dkt. No 113 at 3; "Lytle" is "Scott Lytle," *Id.* at 27; "D.C. Docteur" is "Dennis Docteur," *Id.* at 46; "S. Anderson" is "Stephen Anderson," *Id.* at 53; "N. Jones" is "Norman Jones," *Id.* at 63; and "F. Kenyon" as "Frederick Kenyon," *Id.* at 73-74. The clerk of the court will respectfully be directed to modify the court's records to reflect these changes, and the caption has been amended to reflect defendant Lytle's full name.

[2]      Upon the scheduling of an evidentiary hearing to address the defendants' exhaustion of remedies defense, the court assigned *pro bono* counsel to represent plaintiff at the hearing. Dkt. No. 71. In light of plaintiff's objection to that appointment, and his rejection of the court's suggestion that he allow the appointed attorney to serve as standby counsel, *pro bono* counsel was relieved of the assignment, and plaintiff was permitted to proceed during the hearing *pro se*. Dkt. No. 80.

FOR DEFENDANTS:

HON. LETITIA JAMES                    HELENA LYNCH, ESQ.
New York State Attorney General       ERIK B. PINSONNAULT, ESQ.
The Capitol                           Assistant Attorneys General
Albany, NY 12224


DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## ORDER, REPORT AND RECOMMENDATION

This is a civil rights action brought by *pro se* plaintiff Shawn
Woodward, a New York State prison inmate, against several individuals
employed by the New York State Department of Corrections and
Community Supervision ("DOCCS"), pursuant to 42 U.S.C. § 1983. In
general terms, plaintiff's complaint alleges that defendants retaliated
against him for assisting other inmates in preparing grievances against
prison officials by issuing him false misbehavior reports and assaulting
him.

In answer to plaintiff's claims, defendants assert, *inter alia*, that his
failure to fully exhaust available administrative remedies, which is
uncontested, effectively precludes him from litigating his claims in this
action. In response, plaintiff has argued that his efforts to avail himself of
the DOCCS internal administrative process for filing and pursuing inmate

grievances were thwarted, and thus the grievance procedure was not available to him, and that he should be excused from the exhaustion requirement on that ground. Based upon plaintiff's claims, which defendants deny, the matter was referred to me to conduct an evidentiary hearing pursuant to *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011). That hearing having been held on April 12, 2019, I now make the following recommended findings of fact and conclusions of law, based upon the evidence adduced by the parties at the hearing.

I.    BACKGROUND

Plaintiff is a New York State prison inmate currently being held in the custody of the DOCCS. *See generally* Dkt. No. 1. While he is now incarcerated elsewhere, at the times relevant to the claims in this action, plaintiff was confined in the Cape Vincent Correctional Facility ("Cape Vincent"), located in Cape Vincent, New York, having arrived at that facility in early April of 2015. *Id.*

Plaintiff commenced this action on or about September 28, 2016. Dkt. No. 1. On February 9, 2018, defendants moved for the entry of summary judgment dismissing plaintiff's complaint, arguing that his claims are barred by his failure to exhaust available administrative remedies prior to filing suit. Dkt. No. 41. In a memorandum-decision and order, dated

September 27, 2018, Senior District Judge Norman A. Mordue found the existence of genuine issues of material fact surrounding defendants' exhaustion defense. Dkt. No. 61. Following defendants' motion for reconsideration, which plaintiff opposed, Senior District Judge Mordue ordered that an evidentiary hearing be conducted to resolve those factual issues. Dkt. Nos. 63, 65, 66. On November 27, 2018, the matter was referred to me for the purpose of conducting the required evidentiary hearing. Dkt. No. 67.

On April 12, 2019, I held a hearing pursuant to Senior District Judge Mordue's directive. Testifying at that hearing were defendants Scott Lytle, Paul Gaffney, Sean Dawley, Dennis Docteur, Stephen Anderson, Norman Jones, and Frederick Kenyon, as well as Tami Hartz, the Inmate Grievance Supervisor stationed at Cape Vincent. Although offered an opportunity to do so, plaintiff chose not to testify during the exhaustion hearing. Following the hearings, the parties were offered the opportunity to submit proposed findings of fact and conclusions of law. *See* Dkt. No. 113 at 114.

II.    DISCUSSION

In their post-hearing briefing, defendants argue that because plaintiff did not to present any evidence at the hearing, he failed to meet his

burden of production to show the unavailability of the inmate grievance procedure. Dkt. No. 115 at 22-25. Defendants further argue that they met their ultimate burden of proof to demonstrate that the grievance procedure remained available to plaintiff at all relevant times. *Id.* at 25-27.

To date, the court has not received any post-hearing briefing from plaintiff. On May 6, 2019, he requested an extension until May 22, 2019, which was granted by the court. Dkt. Nos. 117, 118. On May 17, 2019, plaintiff requested a further extension, while simultaneously requesting that Judge Mordue hold "[a]ll [f]ilings [i]n [a]beyance" due to a forthcoming motion for recusal. Dkt. Nos. 120, 121. Plaintiff's request for a further extension was denied. Dkt. No. 122.

A.    Legal Standard Governing Exhaustion

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section

1997e(a)'s exhaustion provision is mandatory and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).[3]

In New York, the DOCCS has instituted a grievance procedure, designated as the Inmate Grievance Program ("IGP"), for use by prison inmates to lodge complaints regarding the conditions of their

---

[3]    While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "'in a substantive sense,'" an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004) (emphasis omitted)).

confinement.[4] *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC")[5] have up to sixteen days after the grievance is filed to informally resolve the issue. 7 N.Y.C.R.R. § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. 7 N.Y.C.R.R. § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal.[6] 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

---

[4]    The IGP is embodied in DOCCS Directive No. 4040, which was marked as Court Exhibit ("Exh.") 1 during the hearing.

[5]    The IGRC is comprised of "two voting inmates, two voting staff members, and a non- voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

[6]    Depending on the type of matter complained of by the inmate, the

The third and final step of the IGP involves an appeal to the DOCCS

Central Office Review Committee ("CORC"), which must be taken within

seven days after an inmate receives the superintendent's written decision.

7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written

decision within thirty days of receipt of the appeal. 7 N.Y.C.R.R. §

701.5(d)(2)(i), (ii).

Where an inmate's grievance complains of employee harassment,

the grievance is forwarded directly to the superintendent, bypassing the

IGRC review. 7 N.Y.C.R.R. § 701.8(b), (c). The superintendent then has

twenty-five days from the date of its receipt to render a decision. 7

N.Y.C.R.R. § 701.8(g). An inmate may appeal the superintendent's

decision to the CORC within seven days of its receipt. 7 N.Y.C.R.R. §

701.8(h).

As can be seen, at each step of the IGP, a decision must be

rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the

IGRC and/or superintendent do not timely respond, an inmate is permitted

to appeal "to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). Generally, if a

plaintiff fails to follow each of the required three steps of the above-

---

superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (internal quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to

prisoners under the PLRA.[7] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

B.    Burden of Proof with Respect to Exhaustion

Prior to addressing the parties' arguments, the court must determine who, as between plaintiff and defendant, bears the burden of proof with respect to the exhaustion defense. Because the failure to exhaust administrative remedies is not a pleading requirement, but an affirmative defense, *see Jones v. Bock*, 549 U.S. 199, 216 (2007); *Williams*, 829 F.3d

---

[7]    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

at 123, the party asserting a failure to exhaust administrative remedies typically bears the ultimate burden of proving its essential elements by a preponderance of the evidence. *See, e.g.*, *Hamlet v. Stotler*, No. 17-CV-0939, 2018 WL 2729263, at *5 (N.D.N.Y. Apr. 27, 2018) (Dancks, M.J) *report and recommendation adopted by* 2018 WL 2727875 (N.D.N.Y. Jun 6, 2018) (Sharpe, J.); *Soria v. Girdich*, No. 04-CV-0727, 2007 WL 4790807, at *2 (N.D.N.Y. Dec. 6, 2007) (DiBianco, M.J.) (citing *McCoy v. Goord*, 255 F. Supp. 2d 233, 247 (S.D.N.Y. 2003)); *Howard v. Goord*, No. 98-CV-7471, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).[8]

In *Nelson v. Plumley*, No. 12-CV-0422, 2015 WL 4326762 (N.D.N.Y. Jul. 14, 2015) and *Bailey v. Fortier*, No. 09-CV-0742, 2012 WL 6935254 (N.D.N.Y. Oct. 4, 2012), *report and recommendation adopted by* 2013 WL 310306 (N.D.N.Y. Jan. 25, 2013), I acknowledged the existence of an ambiguity with respect to the appropriate burdens of production and persuasion in the context of exhaustion. *Nelson*, 2015 WL 4326762, at *7; *Bailey*, 2012 WL 6935254, at *5-*6; *see also Calloway v. Grimshaw*, No. 09-CV-1354, 2011 WL 4345299, at *5 & n.5 (N.D.N.Y. Aug. 10, 2011), *report and recommendation adopted by* 2011 WL 4345296 (N.D.N.Y. Sep.

---

[8]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

15, 2011) (McAvoy, J.); *Murray v. Palmer*, No. 03-CV-1010, 2010 WL 1235591, at *4 & n.17 (N.D.N.Y. Mar. 31, 2010). In particular, several district court decisions, "while referencing the burden of proof applicable to an affirmative defense, seem to primarily address an inmate's burden of *production*, or of going forward, to show facts that would form the basis for finding of unavailability, estoppel, or special circumstances, rather than speaking to the ultimate burden of *persuasion*." *Nelson*, 2015 WL 4326762, at *7 (emphasis in original); *see Bailey*, 2012 WL 6935254, at *6.

In *Nelson*, I concluded that although the burden of production may shift to the plaintiff to demonstrate unavailability of the grievance process, the ultimate burden of proof always remains with the defendant. *Nelson*, 2015 WL 4326762, at *7; *Bailey*, 2012 WL 6935254, at *6; *see Puga v. Choto*, No. 11-CV-0070, 2014 WL 675824, at *5 (N.D.N.Y. Feb. 21, 2014) (McAvoy, J., *adopting report and recommendation by* Hummel, M.J.). While the *Nelson* and *Bailey* decisions were decided prior to *Ross*—and therefore applied the *Hemphill* factors—given that "unavailability" is a critical and central element of the legal standard outlined by both *Hemphill* and *Ross*, I see no reason to depart from my previous reasoning. *See Adams v. O'Hara*, No. 16-CV-0527, 2019 WL 652409, at *4 (N.D.N.Y. Feb.

15, 2019) (Suddaby, C.J.); *Coleman v. Nolan*, No. 15-CV-40, 2018 WL 4732778, at \*4 n.2 (N.D.N.Y. Oct. 2, 2018) (Baxter, M.J.); *Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) (Suddaby, C.J.). I conclude, therefore, that although the burden of proof on this affirmative defense remains with the defendant at all times, a plaintiff can be required to produce evidence in order to defeat it. *See Smith*, 985 F. Supp. 2d at 284.

C.    Evidence Adduced at the Hearing

During the hearing, in addition to Cape Vincent's Inmate Grievance Supervisor, all seven of defendants testified regarding their knowledge of the grievance process at Cape Vincent, the availability of that process to plaintiff, and their respective interactions with plaintiff, to the extent each defendant had (or recalled) having any contact with plaintiff during his confinement at Cape Vincent. *See generally* Dkt. No. 113.[9] Although plaintiff was given the opportunity, he declined to testify at the hearing.[10] Tr. 113-14. Accordingly, the following evidence was presented by defendants at the hearing, and stands uncontroverted.

---

[9]     The transcript of the evidentiary hearing, held on April 12, 2019, Dkt. No. 113, will be cited as "Tr. _."

[10]     As indicated in footnote 2, *supra*, although the court appointed *pro bono* counsel to assist plaintiff in connection with exhaustion hearing, plaintiff refused to accept the appointment even as standby counsel. Dkt. Nos. 71, 77; *see also* Text Minute Entry 2/5/2019 ("Plaintiff wishes to proceed [*pro se*] at the evidentiary hearing and declines Judge Peebles' suggestion to have stand by counsel available.")

1.    Testimony of Tami Hartz, Cape Vincent IGP Supervisor

Tami Hartz, the Inmate Grievance Supervisor for Cape Vincent, is responsible for coordinating the IGP at that facility, including accepting, reviewing, and processing grievances filed by inmates and attempting to resolve those grievances. Tr. 87. She testified regarding the specific grievance procedures at Cape Vincent and her role in ensuring the availability of the IGP to inmates housed at that facility. Tr. 86-107. Several methods exist at Cape Vincent by which an inmate can file a grievance. Tr. 89-90, 99. Specifically, an inmate may file grievances by mail, by handing the grievance to an inmate representative,[11] sliding it under Ms. Hartz's office door, or handing it directly to her. Tr. 89-90, 99.

As part of her responsibilities, Ms. Hartz conducts weekly rounds in Cape Vincent's special housing unit ("SHU"), where she speaks to inmates regarding their grievances. Tr. 91, 94-95; *see generally* 7 N.Y.C.R.R. § 701.7. According to the Cape Vincent SHU logbook, Ms. Hartz conducted rounds during the time that plaintiff was housed in the SHU. Tr. 93; Exh. D-1. Specifically, she entered SHU at 2:16 p.m. on July 15, 2015 and left

---

[11]    Ms. Hartz testified that she is responsible for the oversight of three inmates who assist her in administering the IGP, including one clerk and two inmate representatives. Tr. 87. Inmate representatives live within the inmate population and are available to accept grievances directly from other inmates. Tr. 89.

at 2:25 p.m. Exh. D-1. Although she was in the SHU for less than ten minutes on that date, according to Ms. Hartz, rounds were generally "pretty quick" because "most of the time the[ inmates do not] want to talk[.]" Tr. 96.

During the time he was confined at Cape Vincent, plaintiff filed two grievances, one in April 2015 and another in July that year, both of which were processed in the normal course of business and are reflected in the grievance clerk's log. Tr. 103-05; Exh. D-3. According to Ms. Hartz, if plaintiff filed any other grievances, they too would have been reflected in the IGP's grievance log, which did not list the filing of any additional grievances. Tr. 105.

Ms. Hartz testified that she has never refused to accept and process a grievance from any inmate, including from inmates housed in the facility's SHU. Tr. 95, 98. Finally, Ms. Hartz testified that she "file[s] everything" that she receives and that she does not "refuse to file grievances" for inmates. Tr. 98, 106.

2.    Testimony of Defendant Paul Gaffney

In 2015, defendant Paul Gaffney, a corrections officer, was stationed in the Cape Vincent's law library. Tr. 5-6. In that capacity he supervised plaintiff, who worked in the law library as a clerk. Tr. 9-10. Although

plaintiff was responsible for assisting other inmates in the law library, it appeared to defendant Gaffney that plaintiff merely used the position "for his own benefit." Tr. 10-11.

In supervising plaintiff, defendant Gaffney was required to complete an inmate progress report every three months, detailing plaintiff's job performance as a law library clerk. Tr. 13-14. On a June 3, 2015 report of plaintiff's progress, defendant Gaffney noted that he was "only working on [his] legal work while [he was] at work," and he had a "poor attitude toward peers and correction officers." Tr. 15-16 (quoting Exh. D-8). Based on that evaluation, plaintiff was removed from his position in the law library. Tr. 17.

Defendant Gaffney testified that he never discouraged plaintiff from filing a grievance, threatened plaintiff if he filed a grievance, or otherwise took any action against plaintiff because of his use of the IGP. Tr. 12, 17. In addition, defendant Gaffney denied that he told plaintiff that he would be removed from his position as a clerk in the law library if he continued to file grievances. Tr. 17.

      3.    <u>Testimony of Defendants Scott Lytle, Sean Dawley, Dennis Docteur, Stephen Anderson, Norman Jones, and Frederick Kenyon</u>

Each of the remaining defendants also testified at the exhaustion

hearing.[12] Defendant Stephen Anderson, a corrections officer stationed at Cape Vincent, testified that if an inmate asks for grievance form, he "either give[s] [the inmate] a grievance form or tell[s] [the inmate] where [he or she] could pick one up." Tr. 53-54, 57-58. Defendant Anderson specifically denied ever discouraging plaintiff from filing a grievance or "threaten[ing] him not to file a grievance[.]" Tr. 58.

Although defendant Norman Jones is now retired, at the times relevant to plaintiff's claims, he was employed as a disciplinary hearing officer at Cape Vincent. Tr. 63-64. Defendant Jones testified as follows:

> Q   And did you -- as a hearing officer did you tell him that he couldn't call witnesses because he had filed grievances?
>
> A   No.
>
> Q   Did you tell him that he couldn't present evidence because he had filed grievances?
>
> A   No.

---

[12]     Defendants Anderson, Docteur, and Jones each offered testimony regarding their limited interactions with plaintiff, including disciplinary issues, which form the basis to at least some of plaintiff's constitutional claims. *See generally* Dkt. No. 1. By way of one example, plaintiff alleges that defendant Anderson issued plaintiff a false misbehavior report in retaliation for assisting inmates with their grievances. *Id.* at 9, 12. During the exhaustion hearing, defendant Anderson testified that he was ordered by another DOCCS employee to conduct a urinalysis of plaintiff, and after that urinalysis revealed the presence of synthetic marijuana, defendant Anderson issued plaintiff an inmate misbehavior report on June 2, 2015. Tr. 56-57, 61-62; see Exh. D-5. In the court's view, this testimony has limited, if any, relevance to defendants' exhaustion defense.

> . . . .
>
> Q    So let me just make sure I was clear. So does the – if an inmate had filed an unrelated grievance, would that ever be a factor in your conduct of the hearing?
>
> A    No.
>
> Q    Or in your determination at the hearing?
>
> A    No.

Tr. 69-70. In addition, defendant Jones testified that he had never discouraged plaintiff from filing a grievance. Tr. 69, 73.

Defendant Frederick Kenyon, the head cook at Cape Vincent, testified that if an inmate requested a grievance form, he would provide a form and a pen to the requesting inmate. Tr. 74-75. He denied ever having "discouraged an inmate from filing a grievance" or "threatened an inmate not to file a grievance[.]" Tr. 75. Similarly, defendant Dennis Docteur, a retired corrections officer stationed at Cape Vincent, denied ever "discourage[ing] an inmate from filing a grievance," "threaten[ing] an inmate not to file a grievance," or "tak[ing] any negative action toward an inmate because he filed a grievance[.]" Tr. 47-48. Defendant Docteur also specifically denied having discouraged plaintiff from filing a grievance. Tr. 48.

Sean Dawley, a former corrections officer stationed at Cape Vincent

18

during the relevant times and who did not specifically recall his interactions with plaintiff, testified that if an inmate had requested a grievance form, he would provide one if he had one in his possession. Tr. 38-39, 41-42 Defendant Dawley did not "ever tell an inmate not to file a grievance," "ever threaten an inmate against filing a grievance," or "ever take any action against an inmate or toward an inmate based on the fact that [he] filed a grievance[.]" Tr. 39-40, 42.

Finally, defendant Scott Lytle, a corrections officer at Cape Vincent, also indicated that he did not recall any interactions that he had with plaintiff. Tr. 32-33, 41. If an inmate requested a grievance form, defendant Lytle would provide the inmate a form or a piece of paper on which to write the grievance. Tr. 30-31. Defendant Lytle had not ever refused to give an inmate the materials needed to file a grievance, nor threatened an inmate not to file a grievance, including plaintiff. Tr. 31-33.

D.    Analysis

It is uncontroverted, based upon the papers submitted in connection with defendants' summary judgment motion, that no grievance was officially filed and processed at Cape Vincent concerning the claims now being asserted, nor did plaintiff properly appeal any grievances concerning those claims to the CORC. *Compare* Dkt. No. 41-2 at 4 with Dkt. No. 51 at

3; *see also* Dkt. No. 41-3 at 2-3; Dkt. No. 41-5 at 3. The only question left

to be resolved is whether the IGP was available to plaintiff during the

relevant times. *See Ross*, 136 S. Ct. at 1858

Based upon the hearing testimony, I recommend a finding that none

of the defendants did anything to discourage plaintiff from filing

grievances, and took no retaliatory action against plaintiff for filing

grievances. Addressing Woodward's specific claim that he was removed

from his law library clerk position in retaliation for filing grievances or

assisting others in doing so, defendant Gaffney credibly testified, and I

recommend that the court find, that plaintiff's removal from that position

was based upon his poor work performance, and in particular due to the

fact that he was ignoring the needs of fellow inmates and spending his

time working on his personal, legal matters. Tr. 12-13, 16-17; Exh. D-8.

That testimony and the testimony of Gaffney's fellow defendants

concerning the fact that they did not threaten plaintiff or retaliate against

him for filing of grievances stand uncontradicted in view of plaintiff's

decision failure to testify at the evidentiary hearing.

In addition, Ms. Hartz testified concerning her duties and

responsibilities as the Inmate Grievance Supervisor at Cape Vincent.

According to Ms. Hartz, she was required to make rounds at least weekly,

in the Cape Vincent special housing unit ("SHU"), where plaintiff was confined at the relevant times. Tr. 91. A redacted excerpt from a log book received in evidence reveals that on July 15, 2015, the date on which plaintiff has alleged having had a conversation with Ms. Hartz concerning a grievance that he attempted to file, revealed that she entered the SHU on that date and remained there for a total of nine minutes.[13] Exh. D-1. Ms. Hartz credibly testified that while she did not specifically recall plaintiff, she would never have refused to file a grievance, nor would she have told plaintiff or any other inmate that she would not file a grievance. Tr. 98. It was noted during cross-examination of Ms. Hartz that plaintiff in fact filed grievances at Cape Vincent on April 21, 2015 (No. CV-10162-15) and July 24, 2015 (No. CV-10239-15), related to "delay transfer funds and commissary buy" and "feed up tray compartments," respectively. Exh. D-3. Based upon her uncontroverted and credible testimony, I recommend a finding that Ms. Hartz took no action on inhibit or prevent plaintiff from filing a grievance regarding the claims raised in this action.

Despite bearing the burden of doing so, during the hearing plaintiff

---

[13]    In papers submitted in opposition to defendants' motion for summary judgment, plaintiff alleged that "when the Inmate Grievance Program Supervisor made her rounds[,] she told [him] that she was not filing [his] grievances because she knew some of the officers and did not believe what [he] was saying." Dkt. No. 52-2 at 1-2.

provided no evidence, much less "reliable evidence," showing either (1)
that the IGP was unavailable to him, (2) defendants should be estopped
from asserting his failure to file a grievance, or (3) the existence of other
"special circumstances" that would warrant excusing him from the
requirement of exhaustion. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284
(N.D.N.Y. 2013) (Suddaby, J.). Significantly, plaintiff who bore the burden
of production to demonstrate unavailability of the grievance process failed
to meet that burden in failing to present any evidence, including his own
testimony, that would indicate that Ms. Hartz, or any defendants, refused
to file a grievance while he was housed in the SHU at Cape Vincent. *See
Adams*, 2019 WL 652409, at *4 ("[W]hile the burden of proving this
affirmative defense remains at all times on the defendant, the plaintiff may
sometimes have to adduce evidence in order to defeat it.").

Accordingly, it being uncontroverted plaintiff failed to file and pursue
to completion a grievance concerning the claims raised in this case, I
recommend a finding that defendants have carried their burden of proving
that administrative remedies concerning the claims now being raised were
available to the plaintiff, and that his claims in this action should be
dismissed based upon his failure to exhaust.

IV.    SUMMARY AND RECOMMENDATION

22

The record now before the court reflects that plaintiff failed to file and pursue to completion a grievance concerning his claims in this action before commencing suit. The evidence adduced at the recent evidentiary hearing failed to yield any evidence of unavailability of the IGP to the plaintiff or any other basis to excuse him from the PLRA's exhaustion requirement. Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's complaint (Dkt. No. 1) in this action be DISMISSED based upon his failure to exhaust available administrative remedies before filing suit.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[14] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court is respectfully

---

[14]    If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

directed to modify the court's records to change defendants' names, as reflected in footnote one, above; and it is further respectfully

     ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     May 24, 2019
          Syracuse, NY

2019 WL 652409
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert ADAMS, III, Plaintiff,

v.

David O'HARA, Corr. Officer, Auburn Corr.
Fac.; K. Kirkwood, Corr. Officer, Auburn Corr.
Fac.; C. Curtis, Corr. Officer, Auburn Corr.
Fac.; L. Seery, Corr. Officer, Auburn Corr.
Fac.; P. Dilallo, Corr. Officer, Auburn Corr.
Fac.; and S. Walshvelo, Corr. Serg., Auburn
Corr. Fac., a/k/a S. Walshevo, Defendants.

9:16-CV-0527 (GTS/ATB)
|
Signed 02/15/2019

**Attorneys and Law Firms**

OF COUNSEL: NOLAN J. LAFLER, ESQ., BLITMAN
& KING LLP, 443 North Franklin Street, Franklin
Center, Suite 300, Syracuse, NY 13204-1415, Pro Bono
Counsel for Plaintiff.

HON. LETITIA A. JAMES, OF COUNSEL: DENISE
P. BUCKLEY, ESQ., KONSTANDINOS D. LERIS,
ESQ., Assistants Attorney General, Attorney General for
the State of New York, The Capitol, Albany, NY 12224,
Counsel for Defendants.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** The trial in this prisoner civil rights action, filed
*pro se* by Robert Adams, III ("Plaintiff") pursuant
to 42 U.S.C. § 1983, began with an evidentiary
hearing before the undersigned on February 12, 2019,
regarding the affirmative defense of the six above-
captioned correctional employees ("Defendants") that
Plaintiff failed to exhaust his available administrative
remedies, before filing this action on May 4, 2016,
as required by the Prison Litigation Reform Act. At
the hearing, documentary evidence was admitted, and
testimony was taken of Plaintiff as well as Defendants'
three witness (Auburn Correctional Facility Lieutenant
Timothy C. Abate, Auburn Correctional Facility Inmate

Grievance Program Supervisor Cheryl Parmiter, and New
York State Department of Corrections and Community
Supervisor Inmate Grievance Program Assistant Director
Rachael Seguin), whom Plaintiff was able to cross-
examine through *pro bono* trial counsel. At the conclusion
of the hearing, the Court indicated that a written decision
would follow. This is that written decision. For the reasons
stated below, Plaintiff's Second Amended Complaint is
dismissed because of his failure to exhaust his available
administrative remedies before filing this action.

**I. RELEVANT LEGAL STANDARD**

The Prison Litigation Reform Act of 1995 ("PLRA")
requires that prisoners who bring suit in federal court must
first exhaust their available administrative remedies: "No
action shall be brought with respect to prison conditions
under § 1983 ... by a prisoner confined in any jail, prison,
or other correctional facility until such administrative
remedies as are available are exhausted." 42 U.S.C. §
1997e.

The PLRA was enacted "to reduce the quantity and
improve the quality of prisoner suits" by "afford[ing]
corrections officials time and opportunity to address
complaints internally before allowing the initiation
of a federal case." *Porter v. Nussle*, 534 U.S. 516,
524-25 (2002). In this regard, exhaustion serves two
main purposes. First, it protects "administrative agency
authority" by giving the agency "an opportunity to
correct its own mistakes with respect to the programs
it administers before it is haled into federal court, and
it discourages disregard of the agency's procedures."
*Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Second,
exhaustion promotes efficiency because (a) "[c]laims
generally can be resolved much more quickly and
economically in proceedings before an agency than in
litigation in federal court," and (b) "even where a
controversy survives administrative review, exhaustion
of the administrative procedure may produce a useful record
for subsequent judicial consideration." *Woodford*, 548
U.S. at 89. "[T]he PLRA's exhaustion requirement applies
to all inmate suits about prison life, whether they involve
general circumstances or particular episodes, and whether
they allege excessive force or some other wrong." *Porter*,
534 U.S. at 532.

In accordance with the PLRA, the New York State
Department of Corrections and Community Supervision
("DOCCS") has made available a well-established inmate

grievance program. 7 N.Y.C.R.R. § 701.7. Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following three-step procedure for the filing of grievances. 7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7. [1]

**\*2** **First**, an inmate must file a complaint with the facility's IGP clerk within a certain number of days of the alleged occurrence. [2] If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. A representative of the facility's inmate grievance resolution committee ("IGRC") has a certain number of days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within a certain number of days of receipt of the grievance, and issues a written decision within a certain number of days of the conclusion of the hearing.

Second, a grievant may appeal the IGRC decision to the facility's superintendent within a certain number of days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within a certain number of days of receipt of the grievant's appeal.

Third, a grievant may appeal to the central office review committee ("CORC") within a certain number of days of receipt of the superintendent's written decision. CORC is to render a written decision within a certain number of days of receipt of the appeal.

Moreover, there is an expedited process for the review of complaints of inmate harassment or other misconduct by correction officers or prison employees. 7 N.Y.C.R.R. § 701.8. In the event the inmate seeks expedited review, he or she may report the misconduct to the employee's supervisor. The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the superintendent for review. Under the regulations, the superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint in one of three ways: "in-house," by the New York State Office of the Inspector General, or by the New York State Police's Bureau of Criminal Investigation. An appeal of the adverse decision of the superintendent may be taken to the CORC as in the regular grievance procedure. A similar special procedure is provided for

claims of discrimination against an inmate. 7 N.Y.C.R.R. § 701.9.

These procedural requirements contain several safeguards. For example, if an inmate could not file such a complaint within the required time period after the alleged occurrence, he or she could apply to the facility's IGP Supervisor for an exception to the time limit based on mitigating circumstances. If that application was denied, the inmate could file a complaint complaining that the application was wrongfully denied. [3] Moreover, any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can–and must–be appealed to the next level, including CORC, to complete the grievance process. [4]

**\*3** It is important to note that, where an inmate does not know that an unprocessed grievance (i.e., a grievance that has not been assigned a grievance number) may technically be appealed, he need not appeal that unprocessed grievance, because the regulatory scheme advising him of that right is too opaque. *See Williams v. Corr. Officer Priatno*, 829 F.3d 118, 126 (2d Cir. 2016) (finding that, "even if Williams technically could have appealed his [unprocesseed] grievance, we conclude that the regulatory scheme providing for that appeal is 'so opaque' and 'so confusing that ... no reasonable prisoner can use' [it pursuant to *Ross v. Blake*, 136 S. Ct. 1850 (2016) ]").

It is also important to note that DOCCS has a *separate and distinct* administrative appeal process for inmate misbehavior hearings:

A. For Tier III superintendent hearings, the appeal is to the Commissioner's designee, Donald Selsky, D.O.C.S. Director of Special Housing/Inmate Disciplinary Program, pursuant to 8 N.Y.C.R.R. § 254.8;

B. For Tier II disciplinary hearings, the appeal is to the facility superintendent pursuant to 7 N.Y.C.R.R. § 253.8; and

C. For Tier I violation hearings, the appeal is to the facility superintendent or a designee pursuant to 7 N.Y.C.R.R. § 252.6.

"An individual decision or disposition of any current or subsequent program or procedure having a written

appeal mechanism which extends review to outside the facility shall be considered non-grievable." 7 N.Y.C.R.R. § 701.3(e)(1). Similarly, "an individual decision or disposition resulting from a disciplinary proceeding ... is not grievable." 7 N.Y.C.R.R. § 701.3(e)(2). However, "[t]he policies, rules, and procedures of any program or procedure, including those above, are grievable." 7 N.Y.C.R.R. § 701.3(e)(3); *see also* N.Y. Dep't Corr. Serv. Directive No. 4040 at III.E.

Generally, if a prisoner has failed to properly follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies, and his claims are subject to dismissal. *Woodford*, 548 U.S. at 93; *Porter*, 534 U.S. at 524; *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006). However, a plaintiff's failure to exhaust does not end the inquiry. This is because certain exceptions exist to the exhaustion requirement.

In particularly, in 2004, in *Hemphill v. State of New York*, the Second Circuit held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004), *accord, Ruggiero*, 467 F.3d at 175. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* [citations omitted]. Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* [citations and internal quotations omitted].

**\*4** However, in 2016, in *Ross v. Blake*, the Supreme Court abrogated *Hemphill*'s third prong and effectively enveloped its second prong within its first prong. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). More specifically, under *Ross*, any inquiry that previously would have been considered under the second or third prongs of *Hemphill* is now considered entirely within the context of whether administrative remedies were actually available to the aggrieved inmate. *Ross*, 136 S. Ct. at 1858. This is because, the Supreme Court explained, the PLRA "contains its own, textual exception to mandatory exhaustion." *Id.* In particular, 42 U.S.C. § 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. *Id.* In the PLRA context, the Supreme Court determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (quotation marks omitted).

To guide courts in this new analysis, the Supreme Court has identified three kinds of circumstances in which an administrative remedy, "although officially on the books," is not "available." *Ross*, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end–with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Finally, two additional points bear mentioning regarding exhaustion hearings. First, the Second Circuit has ruled that a plaintiff in a lawsuit governed by PLRA is not entitled to a jury trial on disputed factual issues relating to his exhaustion of administrative remedies; rather, PLRA exhaustion is a matter of judicial administration. *Messa v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011). Second, given that non-exhaustion is an affirmative defense, the defendant bears the burden of providing that a prisoner has failed to exhaust his available administrative remedies. [5] However, once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then "counter" the defendant's assertion by persuading the Court of either exhaustion or unavailability. [6] As a result, practically speaking, while

the burden of proving this affirmative defense remains at all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it.

## II. ANALYSIS

According to Plaintiff, he made three attempts to exhaust his available administrative remedies regarding the claims at issue in this action: (1) he filed a grievance at Auburn Correctional Facility ("Auburn C.F."); (2) he sent a letter of complaint to the New York State Office of the Inspector General ("Inspector General"); and (3) he filed a grievance at Southport Correctional Facility ("Southport C.F."). (Hrg. Tr.) [7]

### A. Plaintiff's First Attempt: Filing a Grievance at Auburn C.F.

**\*5** The Court begins by finding that, if a correctional sergeant ripped up Plaintiff's grievance in front of him and threatened him not to further pursue the grievance as Plaintiff testified, sufficient grounds would exist to deem his administrative remedies to have been effectively rendered unavailable (despite his having continued to complain through avenues other than the grievance process at Auburn C.F.). This is because the unavailability inquiry is an objective one, [8] which survives the Supreme Court's decision in *Ross*. [9]

However, after carefully considering the matter, the Court finds that Plaintiff has failed to offer any credible evidence that, while he was at Auburn C.F. between January 20 and January 22, 2015, he submitted a grievance that a correctional employee either ripped up or threatened him not to continue to pursue. (*See generally* Hrg. Tr.) In finding that Plaintiff's hearing testimony lacks credibility, the Court relies on the following eight facts: (1) Plaintiff's unconvincing demeanor and body language (including, but not limited to, his demeanor, tone of voice, facial expressions, and eye contact or lack thereof) during his testimony; [10] (2) the fact that Plaintiff contradicted himself by initially testifying at the hearing that he did not "actually observe" (but only "heard") the correction officer who picked up his grievance and then later testifying that he *did* see, and indeed made eye contact with, that correction officer (which is consistent with his prior deposition testimony); [11] (3) the inconsistency between Plaintiff's testimony that he had "[a]t least twice" filed grievances at Auburn C.F. "on the standard

form for inmate grievances" (other than the grievance he purportedly submitted regarding the events of this litigation) and the unchallenged hearing testimony of IGP Supervisor Parmiter that Plaintiff *never* filed a grievance at Auburn C.F. (as well as Plaintiff's apparent stipulation that he never filed a grievance at Auburn C.F.); [12] (4) the inconsistency between Plaintiff's hearing testimony that an unidentified sergeant ripped up his first grievance about the assault (which stopped Plaintiff from filing another grievance at Auburn C.F.) and Plaintiff's assertion (in his letter of June 1, 2015) that the interception of his grievance about the assault occurred "on two separate occasions, by S.H.U. Supervisors"; [13] (5) the inconsistency between Plaintiff's hearing testimony that complaining about the individual who had threatened him would have been like "throwing a ball in the dark" because Plaintiff "wasn't able to identify [him]" [14] and the fact that Plaintiff knew the individual's (a) rank ("sergeant"), (b) hair color ("brown"), (c) approximate height ("5-10 to 6 foot"), (d) approximate weight ("two [hundred pounds] and some change, 220"), and most importantly (e) his *job assignment* (as the admitted supervisor of the correction officers who had allegedly assaulted Plaintiff); [15] (6) the fact that it is difficult to believe that Plaintiff would not have even *tried* to avail himself of the opportunity to place his sealed grievance directly through a slot into the locked mailbag (beyond the reach of correctional employees until it reaches the grievance office), given his belief that "keep[ing] everything inside quiet, on the hush" is "what they do up there [in S.H.U.] ... they want total control"; [16] (7) the fact that it is difficult to believe that a correctional sergeant would take off his name tag (which in itself would subject him to discipline) and then stand before an inmate's cell in SHU and tear up the inmate's grievance, knowing that the act would be captured on video and that the video would be retained for a period of two weeks (and even longer if the inmate complained of the incident, in which case the video would be saved to a DVD); [17] and (8) the fact that it is difficult to believe that Plaintiff would write to the Inspector General on January 22, 2015, complaining about the intimidation he experienced two days before by Correction Officer "K. Deford" (who purportedly banged on Plaintiff's cell in the Mental Health Unit and stated, *inter alia*, "There's more where that came from. We're not finished w[ith] you yet") without mentioning that a sergeant purportedly ripped up Plaintiff's grievance earlier in the day on January 22. [18]

### B. Plaintiff's Second Attempt: Sending a Letter of Complaint Directly to the Inspector General

**\*6** Setting aside (for the sake of brevity) the fact that Plaintiff never obtained a referral from the superintendent before complaining to the Inspector General, no record evidence exists either that Plaintiff received a finding of substantiation by the Inspector General or that he appealed to CORC any finding of unsubstantiation by the Inspector General. (Hrg. Tr. at 15-17, 24-27, 29, 32-35 [Plf.'s Hrg. Testimony]; Hrg. Tr. at 58 [Seguin's Hrg. Testimony]; Hrg. Ex. D-1 [Record of Plf.'s Appeals to CORC]; D-5, at 129-32 [Plf.'s Depo. Tr.]; Hrg. Ex. P-1 [Plf.'s Letter to IG dated Jan. 22, 2015]; Dkt. No. 89, at ¶¶ 147-49 [Plf.'s Verified Second Am. Compl.].)

As this Court has previously explained, "There is no exhaustion where an inmate complains directly to the Inspector General (i.e., instead of complaining to the superintendent and having the complaint referred to the Inspector General pursuant to 7 N.Y.C.R.R. § 701.8[d] ), the Inspector General renders a finding of unsubstantiation, and the inmate fails to appeal that finding to CORC." *Smith v. Kelly*, 985 F. Supp.2d 275, 285 (N.D.N.Y. 2013) (Suddaby, J.) (collecting cases), *accord, McPherson v. Rogers*, 12-CV-0766, 2014 WL 675830, at *7 (N.D.N.Y. Feb. 21, 2014) (report-recommendation of Peebles, M.J., adopted by Hurd, J.).

This is especially true after the Supreme Court's June 6, 2016, decision in *Ross. See, e.g., Kearney v. Gebo*, 15-CV-0253, 2017 WL 61951, at *6 (N.D.N.Y. Jan. 4, 2017) ("As discussed above, however, the Supreme Court recently rejected the Second Circuit's 'special circumstances' exception to the PLRA's exhaustion requirement. Therefore, Plaintiff's complaint to the Inspector General, which does not constitute complete and proper exhaustion under New York's grievance scheme, cannot excuse his failure to exhaust."), *aff'd*, 713 F. App'x 39 (2d Cir. 2017) ("Kearney's pursuit of alternative relief from the Inspector General's Office and Commission of Correction did not render the ordinary inmate grievance procedures unavailable to him, such that he is excused from complying with those ordinary procedures. Their pendency did not preclude him from filing a grievance. Nor do any assurances Kearney received that these offices were considering his complaint warrant a finding that prison administrators thwarted Kearney from pursuing the ordinary grievance

procedures through machination, misrepresentation, or intimidation.") (internal quotation marks omitted).

Analyzed through the framework set forth by *Ross*, here, the pending nature of the Inspector General's investigation in no way precluded Plaintiff from filing a grievance. *See Kearney v. Gebo*, 713 F. App'x 39, 42 (2d Cir. 2017) ("[The pendency of] Kearney's pursuit of alternative relief from the Inspector General's Office and Commission of Correction ... did not preclude him from filing a grievance."). Nor did any assurance that Plaintiff received that the Inspector General was considering his complaint warrant a finding that prison administrators thwarted Plaintiff from pursuing the ordinary grievance procedures "through machination, misrepresentation, or intimidation." *See Kearney*, 713 F. App'x at 42 ("Nor do any assurances Kearney received that these offices were considering his complaint warrant a finding that prison administrators thwarted Kearney from pursuing the ordinary grievance procedures through machination, misrepresentation, or intimidation.") (internal quotation marks omitted). To the contrary, Plaintiff swears that, after interviewing Plaintiff for an hour, the Inspector General's investigator instructed Plaintiff to contact the Inspector General if he experienced further issues or retaliation. (Hrg. Tr. at 15-17, 24-27, 29, 32-35 [Plf.'s Hrg. Testimony]; Dkt. No. 89, at ¶¶ 147-49 [Plf.'s Verified Second Am. Compl.].)

### C. Plaintiff's Third Attempt: Filing a Grievance at Southport C.F.

**\*7** The grievance that Plaintiff filed at Southport C.F. was rejected as untimely, and there was no subsequent finding of mitigating circumstances to excuse that untimeliness. (Hrg. Tr. at 19-20 [Plf.'s Hrg. Testimony]; Hrg. Ex. D-5, at 138-39 [Plf.'s Depo. Tr.]; Hrg. Ex. P-2 [Plf.'s Letter to Southport C.F. IGP Supervisor dated June 1, 2015]; Hrg. Ex. P-3 [Southport C.F. IGP Supervisor's Letter to Plf. dated June 2, 2015]; Hrg. Ex. D-1 [Record of Plf.'s Appeals to CORC].)

Filing an untimely grievance without subsequently obtaining a finding of mitigating circumstances is insufficient to exhaust one's available administrative remedies. *See Cole v. Miraflor*, 02-CV-9981, 2006 WL 457817, at *5 (S.D.N.Y. Feb. 23, 2006) ("Contrary to Cole's claim that administrative remedies were no longer available to him because DOCS did not find mitigating circumstances to excuse his late grievance, ... the very

fact that DOCS' policies provide for the filing of late grievances where there are mitigating circumstances, demonstrates that administrative remedies were available to Plaintiff."), *aff'd*, 305 F. App'x 781 (2d Cir. 2009); *Galberth v. Durkin*, 14-CV-0115, 2016 WL 11480153, at *7 (N.D.N.Y. Apr. 21, 2016) (Baxter, M.J.) ("An inmate has not exhausted his administrative remedies when he has requested permission to file an untimely appeal and been denied by CORC due to an unpersuasive showing of mitigating circumstances."), *adopted*, 2016 WL 3910270 (N.D.N.Y. July 14, 2016) (Sannes, J.); *Burns v. Zwillinger*, 02-CV-5802, 2005 WL 323744, at *3 (S.D.N.Y. Feb. 9, 2005) ("Since [plaintiff] failed to present mitigating circumstances for his untimely appeal to the IGP Superintendent, the CORC, or this Court, [defendant's] motion to dismiss on the grounds that [plaintiff] failed to timely exhaust his administrative remedies is granted."); *Soto v. Belcher*, 339 F.Supp.2d 592, 595 (S.D.N.Y. 2004) ("Without mitigating circumstances, courts consistently have found that CORC's dismissal of a grievance appeal as untimely constitutes failure to exhaust available administrative remedies.") (collecting cases).

As explained by the Court,

> If exhaustion were permissible under such circumstances, every inmate could exhaust his available administrative remedies without fulfilling the functions of the exhaustion requirement: affording corrections officials the time and opportunity to quickly and economically correct its own mistakes internally, and producing a useful record for litigation, before allowing the initiation of a federal case.

*Smith v. Kelly*, 985 F. Supp.2d 275, 290-91 (N.D.N.Y. 2013) (Suddaby, J.); *see also Murray v. Palmer*, 03-CV-1010, 2008 WL 2522324, at *19 (N.D.N.Y. June 20, 2008) (report-recommendation of Lowe, M.J., adopted by Hurd, J.) ("If the rule were to the contrary, then, as a practical matter, no prisoner could ever be said to have failed to exhaust his administrative remedies because, immediately before filing suit in federal court, he could perfunctorily write to CORC asking for permission to file an untimely appeal, and whatever the answer, he could claim to have completed the exhaustion requirement.").

### D. Conclusion

None of Plaintiff's three attempts to exhaust his available administrative remedies was sufficient under the PLRA, *Ross* and *Hemphill*. As for Plaintiff's first attempt (on which he appeared to rely most strongly at the hearing), simply stated, the Court agrees with Defendants that, after Plaintiff learned that his hasty complaint directly to the Inspector General had not been substantiated, and after he learned that he would not be able to file a timely grievance at Southport C.F., he fabricated the story that his grievance had been destroyed and he had been threatened while at Auburn C.F. (Hrg. Tr. at 31.) The Court is not convinced by Plaintiff's contradictory and incredible hearing testimony.

**\*8** **ACCORDINGLY**, it is

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 89) is **DISMISSED in its entirety with prejudice** [19] for failure to exhaust his available administrative remedies before filing this action, pursuant to the PLRA; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment for Defendants and close the file in this action.

### All Citations

Slip Copy, 2019 WL 652409

---

Footnotes

1    *See also Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *1 & n.1 (N.D.N.Y. March 31, 2010) [citation omitted].

2019 WL 652409

2    The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

3    *See Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *2 & n.3 (N.D.N.Y. March 31, 2010) (citing *Groves v. Knight*, 05-CV-0183, Decision and Order at 3 [N.D.N.Y. filed Aug. 4, 2009], an appeal from which was subsequently dismissed as frivolous, *see Groves v. Knight*, No. 09-3641, Mandate [2d Cir. filed Jan. 15, 2010].)

4    7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *see also Murray,* 2010 WL 1235591, at *2 & n.4 [collecting cases]; *cf.* 7 N.Y.C.R.R. § 701.8(g) ("If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC.").

5    *Id.* at *4 [citation omitted].

6    *Id.* at *4 & n.17 [citing cases]; *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (noting that special circumstances must be "plausibly alleged, ... justify[ing] the prisoner's failure to comply with administrative procedural requirements"); *Grant v. Kopp*, 17-CV-1224, 2019 WL 368378, at *4 (N.D.N.Y. Jan. 3, 2019) (Peebles, M.J.) ("I conclude that although the burden of proof on this affirmative defense remains with the defendant at all times, the plaintiff can be required to produce evidence in order to defeat it.") (citing cases), *adopted*, 2019 WL 367302 (N.D.N.Y. Jan. 30, 2019) (Sharpe, J.).

7    The Court notes that Defendants' Answers timely asserted this affirmative defense. (Dkt. No. 101, at ¶ 18 [Defs.' Answer]; Dkt. No. 102, at ¶ 17 [Def. Walshvelo's Answer].)

8    *See Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004) ("The test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available.... Moreover, it should be pointed out that threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts.").

9    *See, e.g., Davis v. Doe*, 16-CV-0994, 2017 WL 8640829, at *4 (N.D.N.Y. Dec. 29, 2017) (Stewart, M.J.) (continuing to apply objective test after *Ross* ), *adopted*, 2018 WL 1582230 (N.D.N.Y. March 27, 2018) (D'Agostino, J.); *accord, Allen v. Graham*, 16-CV-0047, 2017 WL 9511168, at *6 (N.D.N.Y. Sept. 26, 2017) (Baxter, M.J.), *adopted*, 2017 WL 5957742 (N.D.N.Y. Dec. 1, 2017) (Suddaby, C.J.); *White v. Dishaw*, 14-CV-0002, 2017 WL 4325770, at *3 (N.D.N.Y. June 20, 2017) (Stewart, M.J.), *adopted*, 2017 WL 4326074 (N.D.N.Y. Sept. 27, 2017) (Sharpe, J.); *Cole v. N.Y.S. Dep't of Corr. and Cmty. Supervision*, 14-CV-0539, 2016 WL 5394752, at *10 (N.D.N.Y. Aug. 25, 2016) (Peebles, M.J.), *adopted*, 2016 WL 5374125 (N.D.N.Y. Sept. 26, 2016) (Sannes, J.).

10    *Cf. Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 634 (2d Cir. 1996) ("[W]e must accord great deference to the trial court's findings regarding credibility because the trial judge is in the best position to evaluate a witness's demeanor and tone of voice as well as other mannerisms that bear heavily on one's belief in what the witness says.").

11    (*Compare* Hrg. Tr. at 10, 21 [Plf.'s Hrg. Testimony] *with* Hrg. Tr. at 10, 22-23, 31-32 [Plf.'s Hrg. Testimony] *and* Hrg. Ex. D-5, at 127 [Plf.'s Depo. Tr.].)

12    (*Compare* Hrg. Tr. at 7-8 [Plf.'s Hrg. Testimony] *with* Hrg. Tr. at 55 [Parmiter Hrg. Testimony] *and* Hrg. Tr. at 4 [Tr. of Parties' Stipulations, in which Plaintiff's counsel stated, "We also understood that there was going to be testimony from the defense that the internal grievance files at Auburn were searched and that no record of a grievance from the plaintiff was located. We can stipulate to that issue as well."].)

13    (*Compare* Hrg. Tr. at 6-7, 24, 33 [Plf.'s Hrg. Testimony] *with* Hrg. Ex. P-2 [Plf.'s Letter to Southport C.F. IGP Supervisor dated June 1, 2015].)

14    (Hrg. Tr. at 32 [Plf.'s Hrg. Testimony].)

15    (Hrg. Tr. at 11-14 [Plf.'s Hrg. Testimony, stating, *inter alia*, that the sergeant referred to the offending corrections officers as "my officers"]; Dkt. No. 138, Attach. 4, at ¶ 3 [Plf.'s Sworn Statement, identifying the individual as "the SHU Block Sgt." and stating that he referred to the offending correction officers as "my officers"]; Dkt. No. 138, Attach. 3, at ¶ 18 [Plf.'s Sworn Statement, identifying the individual as "the SHU Block Sgt."].)

16    (Hrg. Tr. at 41-44, 38, 50 [Abate's Hrg. Testimony]; Hrg. Tr. at 33 [Plf.'s Hrg. Testimony].) The Court notes that, despite Lieutenant Abate's (somewhat vague) indication that a prisoner had to "hand[ ] [his grievance] to an officer," a fair reading of Lieutenant Abate's hearing testimony leads the Court to believe that, had he wanted to, Plaintiff could have "directly place[d]" his grievance "into the mailbag." (Hrg. Tr. at 42, 44, 50 [Abate's Hrg. Testimony].)

17    (Hrg. Tr. at 11-14, 32 [Plf.'s Hrg. Testimony]; Hrg. Tr. at 39-41, 45-47 [Abate's Hrg. Testimony].)

18    (Hrg. Tr. at 28-31, 33-34 [Plf.'s Hrg. Testimony]; Hrg. Ex. P-1, at 7 [attaching page "5" of Plf.'s Letter to IG dated Jan. 22, 2015].)

19    The Court notes that this dismissal is with prejudice because "it is not possible for Plaintiff to obtain a waiver to file a late appeal to CORC." *Nickelson v. Annucci*, 15-CV-0227, 2019 WL 396003, at *1 & n.2 (N.D.N.Y. Jan. 31, 2019) (Suddaby, J.) (citing 7 N.Y.C.R.R. § 701.6[g] [2007] and *Murray v. Goord*, 03-CV-1010, 2008 WL 2522324, at *19 [N.D.N.Y. June 20, 2008] ); *see also Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2003) ("[T]he broader dictum that dismissal for failure to exhaust 'should' be without prejudice would extend too far if applied to cases where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust."); *McCoy v. Goord*, 255 F. Supp.2d 233, 252 (S.D.N.Y. 2003) ("[W]here a plaintiff is effectively barred from administrative exhaustion–such as when the time for administrative exhaustion has expired and the inmate has been denied a waiver to file a late grievance–courts have not hesitated to dismiss with prejudice.").

---

**End of Document**    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 6935254
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Everton BAILEY, Plaintiff,
v.
M. FORTIER, Defendant.

Civ. Action No. 9:09–CV–0742 (GLS/DEP).
|
Oct. 4, 2012.

**Attorneys and Law Firms**

Hancock Estabrook LLP, Michael J. Sciotti, Esq., Robert Thorpe, Esq., of Counsel, Syracuse, NY, for Plaintiff.

Hon. Richard S. Hartunian, United States Attorney, Charles E. Roberts, Esq., Assistant U.S. Attorney, of counsel, Syracuse, NY, for Defendant.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** Plaintiff Everton Bailey, a federal prison inmate, has commenced this *Bivens* [1] action against defendant Michelle Fortier, a corrections officer stationed at the prison facility in which Bailey was confined at the relevant times, alleging deprivation of his civil rights. Bailey's claims are based upon Fortier's alleged failure to protect him from an assault by a cellmate, despite having registered prior complaints expressing fear for his safety.

Currently at the forefront of the action is the threshold question of whether Bailey, who admits that he did not file a grievance following the procedures in place at Bureau of Prisons ("BOP") facilities, should be excused from the requirement of exhausting administrative remedies before commencing suit due to the alleged refusal of prison officials to provide him with the forms necessary to file a grievance. Because I find, based upon an evidentiary hearing conducted, that Bailey was not prevented by the actions of prison officials from filing a grievance regarding his claim against Fortier, and that he has offered no special circumstances providing a basis to excuse his failure to exhaust administrative remedies, I recommend that his

complaint be dismissed on this procedural basis, without addressing its merits.

I. *BACKGROUND*

Bailey is a federal prison inmate currently being held in the custody of the BOP as a result of a 2007 criminal conviction entered in the United States District Court for the Eastern District of Pennsylvania. *See generally* Complaint (Dkt. No. 1); *see also* VanWeelden Decl. (Dkt. No. 10–4) ¶ 5; June 20, 2012 Hearing Transcript (Dkt. No. 44) at p. 84. [2] While he is presently housed in another BOP facility, at times relevant to this litigation Bailey was designated by the BOP to the Ray Brook Federal Correctional Institution ("FCI Ray Brook"), located in Ray Brook, New York. *Id.*

On the morning of February 23, 2009, while housed in a six-person cell in the Mohawk Housing Unit at FCI Ray Brook, Bailey was confronted and physically assaulted by one of his cellmates after being accused of stealing that inmate's prayer oil. Complaint (Dkt. No. 1) ¶¶ 8–9; *see also* VanWeelden Decl. (Dkt. No. 10–4) Exh. D. Bailey reported the incident to Fortier, and requested that he be moved to another cell. Complaint (Dkt. No. 1) ¶ 10. That request was denied, and Bailey was directed by Fortier to return to his cell in light of an impending inmate count. *Id.* at ¶ 11.

Following the inmate count, Bailey again was accosted by the same inmate, who on this occasion threw hot oil from a ceramic mug onto his face. [3] Complaint (Dkt. No. 1) ¶ 13; VanWeelden Decl. (Dkt. No. 10–4) Exh. D; Tr. 100, 145. Bailey suffered second degree burns to his face resulting in his being hospitalized at an outside medical facility for a period of fourteen days. Complaint (Dkt. No. 1) ¶¶ 13–14; Tr. 32, 84–85. Upon his return to FCI Ray Brook, Bailey was placed in a special housing unit ("SHU") cell, where he remained until he was transferred to another BOP facility. Tr. 59–60, 85.

**\*2** The BOP has established an Administrative Remedy Program ("ARP"), comprised of a four-step administrative process through which inmates can seek formal internal review of any complaint regarding any aspect of their imprisonment. Tr. 10; 28 C.F.R. § 542.10 et seq.; *see also Macias v. Zenk,* 495 F.3d 37, 42 (2d Cir.2007). In accordance with the established ARP protocol, an inmate must first attempt informal resolution

of his or her complaint by presenting the issue informally to staff, and staff must attempt to resolve the issue. 28 C.F.R. § 542.13(a); *see also Johnson v. Testman,* 380 F.3d 691, 693 (2d Cir.2004). This informal, initial procedure typically begins with the filing of a "cop-out," which can be submitted either on a BP–8 form available to inmates through several sources, including their assigned counselors, or on paper of any other description. Tr. 10, 22, 27, 66–67, 129, 142.

If the complaint cannot be resolved informally, the inmate may next submit a formal written Administrative Remedy Request ("ARR") to the warden of the facility, utilizing a BP–9 form, within twenty calendar days of the event that generated the inmate's complaint. [4] Tr. 22, 32, 44; 28 C.F.R. § 542.14(a); *see also Johnson,* 380 F.3d at 693. That twenty-day period, however, can be extended in appropriate circumstances. [5] Tr. 33, 54, 144. If that formal request is denied, the inmate may next appeal the matter to the appropriate BOP Regional Director, utilizing a BP–10 form, within twenty calendar days of the date the grievance is denied by the facility warden. Tr. 22; 28 C.F.R. § 542.15(a); *see also Johnson,* 380 F.3d at 693. An unfavorable decision from the Regional Director can then be appealed to the General Counsel's office, utilizing a BP–11 form, within twenty calendar days of the date of the Regional Director's response. Tr. 22; 28 C.F.R. § 542.15(a).

Despite the existence of the ARP, Bailey did not avail himself of that process by filing a grievance regarding the assault or the defendant's alleged failure to protect him from it. Tr. 101–02, 106. Bailey claims that he requested the appropriate forms for commencing the grievance process from several prison workers, including Hawley Snyder, Barbara Darrah, and the warden at FCI Ray Brook. Tr. 86–88, 91, 93–95, 107–09. Employees at FCI Ray Brook, however, uniformly testified that Bailey never requested the appropriate grievance forms from them. *See* Tr. 72, 131, 146–47, 153, 155, 168; *see also* Tr. 49 (Robin Van Weelden); 161 (Jean Marie Diehl); 166 (Michelle Gonyea). I credit the testimony of defendant's witnesses and find that Bailey failed to ask his corrections counselor, or any other BOP employee at FCI Ray Brook, for the necessary forms to commence the grievance process.

The record also reflects that Bailey had abundant opportunity to secure the necessary grievance forms. In February and March of 2009, he was assigned a unit

team that included Barbara Darrah, his unit manager; Michelle Gonyea, a case worker; Hawley Snyder, his assigned corrections counselor; and one other corrections counselor. [6] Tr. 46, 86, 140–41. Members of Bailey's unit team, particularly his corrections counselor, were in frequent contact with him. *See, e.g.,* Tr. 126, 129–30, 140–41, 165.

**\*3** Various other BOP officials were also in regular contact with Bailey, making periodic rounds of the FCI Ray Brook SHU. Tr. 35. For example, at the times relevant to this litigation, the facility's warden typically visited the SHU every Wednesday morning, normally accompanied by Robin Van Weelden, who in February 2009 served as a legal assistant, as well as one or two associate wardens, a corrections captain, and unit team members. Tr. 35, 55. When making those rounds the group would proceed from cell to cell, knocking on doors and asking whether an inmate in a particular cell wished to voice any needs. Tr. 57. In addition, Barbara Darrah, as a unit manager, was required to visit inmates in the SHU twice weekly, although she testified that she was in that portion of the facility "pretty much daily." Tr. 126. When visiting the SHU, Darrah generally carried with her a folder of various forms, including BP–8, BP–9, BP–10, BP–11 and cop-out forms, earning her the nickname "the form lady." Tr. 70–71, 120, 124–27, 131. Like the warden and the warden's group, when visiting the SHU facility Darrah normally would proceed from cell-to-cell. Tr. 128. Similarly Michelle Gonyea, as plaintiff's case manager during February and March of 2009, was required to visit the SHU at least once weekly. Tr. 165.

Despite all of those visits and requests as to whether he needed anything, Bailey did not ask any of those individuals for the forms necessary to grieve Fortier's alleged failure to protect him from harm. Tr. 161–62, 166, 49–50, 72, 132, 144, 154–55, 161, 166.

As previously indicated, plaintiff was absent from FCI Ray Brook receiving outside treatment for his injuries during the fourteen-day period immediately following the inmate assault. In accordance with FCI Ray Brook policy requiring visits by prison officials to any inmate hospitalized for more than five days, Darrah, as plaintiff's unit manager, visited him in or about March of 2009, while he was a patient at the Adirondack Medical Center in Saranac Lake, in order to insure that his needs were being

met. Tr. 133. When asked on that occasion whether he needed anything, Bailey replied, "No." [7] *Id.*

## II. *PROCEDURAL HISTORY*

Bailey commenced this action on June 29, 2009. Dkt. No. 1. His complaint identifies Corrections Officer M. Fortier as the sole named defendant, and alleges that she violated his constitutional rights by failing to protect him from foreseeable harm. *Id.*

On January 8, 2010, prior to answering, Fortier moved to dismiss Bailey's complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, for summary judgment pursuant to Rule 56. Dkt. No. 10. The sole basis for Fortier's motion was her contention that Bailey's complaint is subject to dismissal based upon his failure to exhaust available administrative remedies before commencing suit, as required under 42 U.S.C. § 1997e(a). That motion resulted in my issuance of a report on August 30, 2010, recommending that the motion be denied, based upon the existence of genuine disputes of material fact to be resolved before addressing whether a proper basis for excusing the governing exhaustion requirement had been demonstrated. Dkt. No. 19. That recommendation was adopted by Chief District Judge Gary L. Sharpe on October 12, 2010. Dkt. No. 21.

**\*4** Following the issuance and acceptance of my report and recommendation, the parties were afforded the opportunity to engage in discovery, and a scheduling order was entered requiring, *inter alia,* that any additional dispositive motions be filed on or before October 3, 2011. *See* Dkt. No. 23. All deadlines under that scheduling order have passed, without the filing of any additional motions, and the case is now trial-ready. In light of the existence of a threshold procedural issue regarding exhaustion, the matter was referred to me for the purpose of conducting an evidentiary hearing, pursuant to *Messa v. Goord,* 652 F.3d 305 (2d Cir.2011), in order to develop the record concerning Bailey's efforts to satisfy his exhaustion requirement. *See* Text Entry 11/02/11. That hearing was conducted on June 20, 2012, *see* Text Entry 6/20/12, and, following the close of the hearing, decision was reserved pending briefing by the parties. [8] , [9]

## III. *DISCUSSION*

### A. *Governing Legal Principles*

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006); *Hargrove v. Riley,* No. CV–04–4587, 2007 WL 389003, at \*5–6 (E.D.N.Y. Jan.31, 2007). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002). An inmate plaintiff's complaint is subject to dismissal if the evidence establishes that he or she failed to properly exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal. *See Pettus v. McCoy,* No. 04–CV–0471, 2006 WL 2639369, at \*1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 94–95, 126 S.Ct. at 2387–88 (holding that the PLRA requires "proper exhaustion" of available remedies). "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford,* 548 U.S. at 95, 126 S.Ct. at 2388; *see also Macias,* 495 F.3d at 43 (citing *Woodford* ). Complete exhaustion has not occurred, for purposes of the PLRA, until all of the steps of that available process have been taken. *Macias,* 495 F.3d at 44; *see also Johnson v. Rowley,* 569 F.3d 40, 45 (2d Cir.2009); *Strong v. Lapin,* No. 90–CV–3522, 2010 WL 276206, at \*4 (E.D.N.Y. Jan.15, 2010) ("Until the BOP'S Central Office considers the appeal, no administrative remedy is considered to be fully exhausted.").

**\*5** In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted in the event of a failure to satisfy the PLRA's exhaustion requirement. *Macias,* 495 F.3d at 41; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Under the prescribed rubric, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,*

495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendant should be deemed to have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it, or whether, through the defendant's own actions preventing the plaintiff from exhausting otherwise available remedies, he or she should be estopped from asserting failure to exhaust as a defense. *Id.* In the event the proffered defense survives these first two levels of scrutiny, the court must determine whether the plaintiff has established the existence of special circumstances sufficient "to justify the failure to comply with applicable administrative procedural requirements.[10], [11] *Id.*

B. *Burden of Proof*

Before applying the foregoing legal principles, I must first consider who bears the burden of proof, and whether that burden shifts throughout the analysis prescribed under *Hemphill.*

As an affirmative defense, *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), exhaustion is a claim upon which the party asserting it typically bears the ultimate burden of proving its essential elements by a preponderance of the evidence. *Soria v. Girdich,* No. 9:04–CV–727, 2007 WL 4790807, at *2 (N.D.N.Y. Dec. 2007) (DiBianco, M.J.) (citing *McCoy v. Goord,* 255 F.Supp.2d 233, 247 (S.D.N.Y.2003)); *McEachin v. Selsky,* No. 9:04–CV–83(FJS/RFT), 2005 WL 2128851, at *4 (N.D.N.Y. Aug.30, 2005) (Scullin, C.J.) (citing *Howard v. Goord,* No. 98–CV–7471, 1999 WL 1288679, *3 (E.D.N.Y. Dec. 28, 1999)), *aff'd in part, vacated in part,* 225 F. App'x 36 (2d Cir.2007). The issue is somewhat complicated, however, by consideration of the three-part analysis mandated by *Hemphill* and related cases because that line of cases incorporates concepts—such as estoppel, for example— that typically require the party asserting them to bear the ultimate burden of proof. *See e.g., Abbas v. Dixon,* 480 F.3d 636, 642 (2d Cir.2007) ("The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel ...."); *In re Heflin,* 464 B.R. 545, 554 (D.Conn.2011) ("The burden of providing every element of an estoppel is upon the party seeking to set up the estoppel.") (citing *Comm'r v. Union Pac. R.R. Co.,* 86 F.2d 637, 640 (2d Cir.1936)).

*6 Also complicating matters is the fact that several courts have held that once a defendant satisfies the burden of demonstrating that an inmate has failed to exhaust administrative remedies, it then becomes incumbent upon the plaintiff to counter with a showing of unavailability, estoppel, or special circumstances. *See, e.g., Murray v. Palmer,* No. 9:03–CV–1010 (GTS/GHL), 2010 WL 1235591, at *4 and n. 17 (N.D.N.Y. Mar.31, 2010) (Suddaby, J.); *see also Calloway v. Grimshaw,* No. 9:09–CV–1354, 2011 WL 4345299, at *5 and n. 5 (N.D.N.Y. Aug.10, 2011) (Lowe, M.J.) (citing cases); *report and recommendation adopted,* 2011 WL 4345296 (N.D.N.Y. Sep.15, 2011) (McAvoy, S.J.); *Cohn v. KeySpan Corp.,* 713 F.Supp.2d 143, 155 (E.D.N.Y.2010) (finding that, in the employment discrimination context, defendants bear the burden of establishing the affirmative defense of failure to timely exhaust his administrative remedies, but once defendants have done so, the plaintiff must plead and prove facts supporting equitable avoidance of the defense.). Those decisions, while referencing the burden of proof on an affirmative defense, seem to primarily address an inmate's burden of *production,* or of going forward, to show facts that would form the basis for finding of unavailability, estoppel, or a finding of special circumstances, rather than speaking to the ultimate burden of *persuasion.*

I have been unable to uncover any cases squarely holding that the defendant bears the ultimate burden of proof with regard to all elements of a *Hemphill* analysis. In the final analysis, however, *Hemphill* addresses all of the elements a court is required to consider when analyzing an exhaustion defense. *See Macias,* 495 F.3d at 41 ("In *Hemphill* we "read together" [a series of cases] and formulated a three-part *test* ....") (emphasis added). Therefore, I recommend a finding that, while the burden of production may shift to the plaintiff when a court undertakes a *Hemphill* analysis, the ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendant. *See Soria,* 2007 WL 4790807, at *2 ("[A]s with other affirmative defenses, the defendant has the burden of proof to show that plaintiff failed to exhaust his administrative remedies.").

C. *Application of Governing Legal Principles*

1. *Availability of Administrative Remedy*

In this instance, the question of whether the ARP was available to Bailey is at the heart of the exhaustion

analysis. The hearing testimony confirmed, and Bailey admitted, that at all times relevant to this litigation, there was an inmate grievance procedure in place at FCI Ray Brook. This, however, does not necessarily mean that it was "available" to the plaintiff.

Bailey contends that the grievance process was not available to him in light of the alleged refusal of prison officials to provide him with the forms necessary to file an ARR and pursue the grievance to culmination. Having considered the competing testimony, however, I conclude that Fortier has established, by a preponderance of the evidence, that the forms necessary to pursue a grievance in accordance with the ARP in place at FCI Ray Brook were available to Bailey through several sources, but were not requested. As such, Fortier has satisfied the first *Hemphill* factor.

### 2. *Presentation of Defense/Estoppel*

**\*7** The focus of the second prong of the *Hemphill* analysis is upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill,* 380 F.3d at 686 (citations omitted). In her answer, Fortier raised exhaustion as a defense in a timely fashion. *See* Answer (Dkt. No. 22) Second Defense ("Plaintiff clearly failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)."). Bailey argues, however, that his failure to follow the prescribed grievance process was a direct result of the refusal of prison officials to cooperate in his efforts to grieve the matter.

" 'Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals.' " *Atkins v. Menard,* No. 9:11–CV–9366, 2012 WL 4026840, at \*3 (N.D.N.Y. Sept.12, 2012) (Suddaby, J.) (citing *Murray,* 2010 WL 1235591, at \*5 and n. 26 (collecting cases)). Put differently, a plaintiff must allege that a defendant named in the lawsuit acted to interfere with his ability to exhaust in order to establish a basis to estop that defendant from invoking the exhaustion defense. *Calloway,* 2011 WL 4345299, at \*4 (citing *Bennett v. James,* 737 F.Supp.2d

219, 226 (S.D.N.Y.2010), *aff'd,* 441 F. App'x 816 (2d Cir.2011)) (other citations omitted).

The question of whether, in this instance, prison officials should be estopped from asserting failure to exhaust as an affirmative defense as a result of their conduct is inextricably intertwined with the question of availability of the remedy. Assuming, however, that this presents a distinct inquiry, the court must examine whether, through her conduct, Fortier has provided a basis to estop her from asserting an exhaustion defense.

In this instance, Bailey does not allege that Fortier engaged in a campaign to preclude him from filing a grievance regarding her actions. Instead, his focus is upon the alleged refusal of other officials at FCI Ray Brook to provide him with necessary forms and cooperate in his efforts to present his grievance against Fortier. Accordingly, Bailey has failed to present any evidence that would support an estoppel against the defendant from raising the issue of exhaustion. *Atkins,* 2012 WL 4026840, at \* 3. Therefore, I conclude that Fortier has proven, by a preponderance of the evidence, that she did not, through her own actions, preclude Bailey from taking advantage of the ARP and therefore should not be estopped from asserting the defense.

### 3. *Special Circumstances*

The third, catchall factor that must be considered under the Second Circuit's prescribed exhaustion rubric centers upon whether special circumstances sufficient to justify excusing the plaintiff's failure to exhaust administrative remedies have been demonstrated. *Hemphill,* 380 F.3d at 689; *see also Giano,* 380 F.3d at 676–77; *Hargrove,* 2007 WL 389003, at \*10. Among the circumstances potentially qualifying as "special" under this prong of the test is where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable. *Giano,* 380 F.3d at 676–77; *see also Hargrove,* 2007 WL 389003, at \*10 (quoting and citing *Giano* ). Special circumstances may also exist when a facility's "[f]ailure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals-which effectively rendered the grievance process unavailable to him." *Murray,* 2010 WL 1235591, at \*6 (quoting *Sandlin v. Poole,* 488 (W.D.N.Y.2008) (noting that "[s]uch facts support a finding that defendant's are estopped from

relying on exhaustion defense as 'special circumstances' excusing plaintiff's failure to exhaust")).

 **\*8**  During the evidentiary hearing, Bailey testified to his awareness of the existence of the ARP at FCI Ray Brook. *See, e.g.,* Tr. 102. Bailey's testimony regarding his alleged efforts to secure the forms necessary to pursue the grievance plainly evidences his knowledge of the requirement that he exhaust available administrative remedies, and negates a finding of any reasonable belief on his part that the dispute in issue was not grievable and could not have been presented through the BOP's internal grievance process. Accordingly, again allocating the ultimate burden of proof on the issue of special circumstances to the defendant, I nonetheless conclude that she has demonstrated, by a preponderance of the evidence, the absence of any special circumstances that would serve to excuse plaintiff's failure to exhaust administrative remedies.

### IV. *SUMMARY AND RECOMMENDATION*

The credible testimony and evidence adduced at the recent hearing, held to address the merits of defendant's exhaustion defense, establishes that (1) Bailey failed to avail himself of the BOP grievance process, which was available to him, before commencing this action; (2) Fortier did not, through her actions, preclude Bailey from filing a grievance regarding the claims set forth in his complaint, or otherwise engage in conduct for which she should be estopped from asserting failure to exhaust as an affirmative defense; and (3) Bailey has offered no special circumstances warranting that he be excused from the PLRA's exhaustion requirement. Accordingly, it is therefore hereby respectfully

RECOMMENDED, that plaintiff's complaint in this action be DISMISSED, based upon his failure to comply with the exhaustion requirements of 42 U.S.C. § 1997e(a).

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 6935254

---

Footnotes

1    *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

2    The June 20, 2012 Hearing Transcript (Dkt. No. 44) will hereinafter be cited as "Tr. ____".

3    According to Bailey, there were no corrections officers present in his cell unit at the time of the assault. Complaint (Dkt. No. 1) ¶ 13.

4    Plaintiff was aware of the twenty-day limitation for filing a BP–9 form to initiate the formal grievance process. Tr. 103.

5    Here, the record demonstrates that in light of his circumstances, including the fourteen-day period of hospitalization following the incident, Bailey almost certainly would have been granted relief from that requirement had such a request been made. *See* Tr. 43, 144. I note, parenthetically, that the handbook provided to inmates at FCI Ray Brook does not address the possibility of requesting an extension of the twenty-day time limit for filing a BP–9. *See* Tr. 34, 43.

6    Jean Marie Diehl took over as plaintiff's correction counselor in or about September 2009, shortly before Snyder's retirement from the BOP. Tr. 140, 163.

7    During the hearing Bailey testified that he did not recall Darrah visiting him. *See* Tr. 114. Once again, I credit the testimony of Darrah over that of the Bailey with respect to this issue.

8    The hearing was conducted by video conference, with Bailey participating and testifying from the Kentucky federal correctional facility in which he is currently being held, pursuant to Rule 43(a) of the Federal Rules of Civil Procedure. *See Rivera v. Santirocco,* 814 F.2d 859, 862 (2d Cir.1987). At the outset of the hearing I placed upon the record the factors which I considered in declining to exercise my discretion to require that Bailey be produced in person for the evidentiary hearing. *See* Tr. 3.

2012 WL 6935254

9    Attorney Michael J. Sciotti, Esq., of the firm of Hancock & Estabrook, LLP, was appointed in January 2012 to represent the plaintiff in this action, *pro bono,* at the hearing. The court wishes to express its thanks to Attorney Sciotti and his co-counsel, Robert Thorpe, Esq., for their energetic and diligent efforts on behalf of the plaintiff.

10   In *Macias,* which, like this action, involved an Eighth Amendment claim under *Bivens,* as well as claims under the Federal Court Claims Act, 28 U.S.C. § 2671 *et seq.,* defendants asserted that plaintiff's complaint was subject to dismissal under the PLRA based upon his failure to exhaust available administrative remedies. *Macias,* 495 F.3d at 40. Reiterating the importance of exhaustion in both a substantive and a procedural sense, the Second Circuit concluded that, while a prisoner may have substantively exhausted remedies by making informal complaints regarding the conditions at issue, the PLRA, as illuminated by *Woodford,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368, requires proper procedural exhaustion through the available grievance channels. *Id.* at 41. The court left open, however, the possibility that, notwithstanding the Supreme Court's decision in *Woodford,* a defendant could be precluded from asserting failure to exhaust available administrative remedies in the event of a finding that threats by prison officials may have deterred compliance with the PLRA exhaustion requirements, including under *Hemphill. Id.* at 44–45. The court in *Macias* also noted that the plaintiff in that case did not assert that the available internal remedial scheme was so confusing as to excuse his failure to avail himself of that process, thereby obviating the need for the court to determine what effect, if any, *Woodford* would have upon the *Hemphill* holding to the effect that a reasonable misinterpretation of the available scheme could justify an inmate's failure to follow the procedural rules. *See Amador v. Superintendents of Dep't of Correctional Serv.,* No. 03 CIV. 0650 (KTD/CWG), 2007 WL 4326747, at *6 (S.D.N.Y. Dec.4, 2007). It therefore appears that the teachings of *Hemphill* remain intact, at least with regard to the first two points of inquiry. *Id.* at *7.

11   In practicality, these three prongs of the prescribed test, though perhaps intellectually distinct, plainly admit of significant overlap. *See Hargrove,* 2007 WL 389003, at *8 n. 14; *see also Giano v. Goord,* 380 F.3d 670, 677 n. 6 (2d Cir.2004).

---

**End of Document**                              © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 310306
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Everton BAILEY, Plaintiff,
v.
M. FORTIER, Defendant.

No. 9:09–cv–742 (GLS/DEP).
|
Jan. 25, 2013.

**Attorneys and Law Firms**

Hancock, Estabrook Law Firm, Michael J. Sciotti, Esq., of Counsel, Syracuse, NY, for the Plaintiff.

Hon. Richard S. Hartunian, United States Attorney, Charles E. Roberts, Assistant U.S. Attorney, of Counsel, Syracuse, NY, for the Defendant.

*MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

**I.** *Introduction*

 **\*1** Plaintiff Everton Bailey commenced this action *pro se* against defendant Michelle Fortier, a corrections officer at FCI Ray Brook, under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). (*See* Compl., Dkt. No. 1.) After Fortier raised the issue of exhaustion, (*see, e.g.,* Dkt. No. 10, Attach. 1 at 5–12), Magistrate Judge David E. Peebles determined—and the court concurred —that dismissal of Bailey's claim on that ground was inappropriate. (*See* Dkt. Nos. 19, 21.) Accordingly, Bailey was granted limited discovery on the issue of exhaustion, which culminated in an evidentiary hearing before Judge Peebles in June 2012.[1] (*See* Dkt. No. 21; Tr.[2] at 2:13– 21.) After receiving testimony and considering the parties' supplemental briefs, Judge Peebles issued a Report– Recommendation and Order (R & R) on October 4, 2012, wherein he recommended that Bailey's Complaint be dismissed for failure to comply with the exhaustion requirements of 42 U.S.C. § 1997e(a).[3] (*See generally* R

& R, Dkt. No. 49.) Pending are Bailey's objections to the R & R. (*See* Dkt. No. 50.) For the reasons that follow, the R & R is adopted in its entirety, and Bailey's Complaint is dismissed.

**II.** *Standard of Review*

Before entering final judgment, this court routinely reviews all reportrecommendation and orders in cases it has referred to a magistrate judge. If a party has objected to specific elements of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo. See Almonte v. N.Y. State Div. of Parole,* No. Civ. 904CV484GLS, 2006 WL 149049, at *6–7 (N.D.N.Y. Jan.18, 2006). However, the court "may not reject the magistrate judge's credibility findings," unless it "has the opportunity to observe and evaluate witness credibility in the first instance." *United States v. Preston,* 635 F.Supp.2d 267, 269 (W.D.N.Y.2009) (citing *Cullen v. United States,* 194 F.3d 401, 407 (2d Cir.1999)). Where no party has filed an objection, only vague or general objections are made, or a party resubmits the same papers and arguments already considered by the magistrate judge, this court reviews the findings and recommendations of the magistrate judge for clear error. *See Almonte,* 2006 WL 149049, at *4–5.

**III.** *Discussion*

Bailey argues that Judge Peebles failed to consider the testimony of Stevie Simmons, Bailey's cellmate, and reached improper conclusions on the issues of estoppel and special circumstances. (*See* Dkt. No. 50. at 3–8.) Fortier counters each of these assertions, arguing that Judge Peebles' decision was correct in all respects. (*See* Dkt. No. 53 at 2–7.) The court, having conducted a *de novo* review of Bailey's objections, agrees with Fortier.

First, Simmons' testimony was, as Fortier notes, irrelevant. (*See id.* at 2–3.) Besides being unable to recall, among other things, the names of the staff members who allegedly refused to provide Bailey the grievance forms, (*see* Tr. at 121:7–122:14), Simmons was not Bailey's cellmate in February or March of 2009, (*compare* Tr. at 120:1–15, *with* Compl. ¶ 8). Because an inmate generally has only twenty calendar days to file a grievance, (*see* R & R at 5), the alleged refusal of unnamed staff members to

provide Bailey with grievance forms six months after the incident in question is of no moment, (*see* Dkt. No. 53 at 2–3). It follows that Judge Peebles correctly disregarded Simmons' testimony. [4]

**\*2** Second, Bailey's estoppel argument is meritless. (*See* Dkt. No. 50 at 4–6.) As relevant here, a defendant is only estopped from asserting the exhaustion defense if she, through her "own actions inhibit[ed] the inmate's exhaustion of remedies." *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004); (*see* R & R at 19.) Here, Bailey has never alleged that Fortier precluded him from filing a grievance; rather he has repeatedly stated that other officials at FCI Ray Brook did so. (*See* R & R at 19–20; Compl. ¶ 6; Dkt. No. 11 at 1–5; Tr. at 86:18–97:16; Dkt. No. 50 at 5.) Thus, Judge Peebles correctly found that Fortier was not estopped from asserting the exhaustion defense.

Bailey's final claim, that Judge Peebles erred in finding that no special circumstances existed to excuse his failure to exhaust, is unpersuasive. (*See* Dkt. No. 50 at 6–8.) Because Bailey was unquestionably familiar with the grievance program at FCI Ray Brook, (*see, e.g.,* R & R at 21), his failure to exhaust can only be excused if something "rendered the grievance appeal process unavailable to him," *Murray v. Palmer,* No. 9:03–CV–1010, 2010 WL 1235591, at \*6 (N.D.N.Y. Mar.31, 2010) (internal quotation marks and citations omitted). In finding that no special circumstances existed, Judge Peebles' credited the testimony of Fortier's witnesses—each of whom testified that Bailey never asked for the grievance forms—and discredited Bailey's testimony to the contrary. (*See* R & R at 8, 22.) Given that this finding rests on an assessment of credibility, which neither party has challenged, there is no basis to disturb it. [5]

*See Cullen,* 194 F.3d at 407; (*see generally* Dkt. Nos. 50, 53.) Necessarily then, the court adopts Judge Peebles' finding that Bailey was not denied access to the grievance program, as well as his conclusion with respect to the existence of special circumstances. (*See* R & R at 21–22.)

In sum, having reviewed the specific objections *de novo* and the remainder of the R & R for clear error, and finding none, the court adopts it in its entirety.

## IV. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Michael J. Sciotti, Esq. is **TERMINATED** as counsel for Bailey effective immediately; and it is further

**ORDERED** that Magistrate Judge David E. Peebles' October 4, 2012 Report–Recommendation and Order (Dkt. No. 49) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Bailey's Complaint (Dkt. No. 1) is **DISMISSED;** and it is further

**ORDERED** that the Clerk shall close this case; and it is further **ORDERED** that the Clerk provide a copy of this MemorandumDecision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 310306

---

Footnotes

1    Additionally, Judge Peebles appointed attorney Michael Sciotti to represent Bailey during the evidentiary hearing. (*See* Dkt. No. 28.) In furtherance of that appointment, attorney Sciotti filed both a post-hearing brief and the pending objections to the Report–Recommendation and Order. (*See* Dkt. Nos. 45–46, 50.)

2    Page references preceded by "Tr." refer to the transcript of the evidentiary hearing conducted on June 20, 2012. (*See* Dkt. No. 44.)

3    The Clerk is directed to append the R & R to this decision, and familiarity therewith is presumed.

4    The fact that Judge Peebles did not explicitly discuss Simmons' testimony is also inconsequential, as there is no evidence that he did not consider it. (*See generally* R & R.) Simmons not only testified at the hearing before Judge Peebles, but Bailey also submitted proposed findings of fact and conclusions of law based on his testimony. (*See* Tr. at 119:13–123:25; Dkt. No. 45 ¶ 12.)

**Bailey v. Fortier, Not Reported in F.Supp.2d (2013)**

2013 WL 310306

5    Even if the parties had challenged it, the court, having reviewed the record as whole, discerns no reason to conduct an
     independent credibility assessment.

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

2011 WL 4345299
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Samuel CALLOWAY, Plaintiff,
v.
Sgt. Charles GRIMSHAW, a/
k/a Grinnhan, Defendant.

No. 9:09–CV–1354 (TJM/GHL).
|
Aug. 10, 2011.

**Attorneys and Law Firms**

Samuel Calloway, Marcy, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the
State of New York, Brian J. O'Donnell, Esq., C. Harris
Dague, Esq., of counsel, Albany, NY, for Defendant.

*REPORT–RECOMMENDATION AND ORDER*

GEORGE H. LOWE, United States Magistrate Judge.

*\*1* This *pro se* prisoner civil rights action, commenced
pursuant to 42 U.S.C. § 1983, has been referred to
me for Report and Recommendation by the Honorable
Thomas J. McAvoy, Senior United States District
Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule
72.3(c). Generally, Plaintiff Samuel Calloway alleges
that Defendant Sergeant Charles Grimshaw administered
excessive force against Plaintiff and denied him medical
assistance. Dkt. No. 1.

Currently pending before the Court is Defendant's motion
for summary judgment pursuant to Fed.R.Civ.P. 56. Dkt.
No. 30. After the motion was filed, Plaintiff submitted
a one-page letter, which will be described below. Dkt. No.
31.

**I. BACKGROUND**

**A. Summary of the Amended Complaint** [1]
Plaintiff alleges the following: On July 4, 2008, at
Clinton Correctional Facility, he experienced a "psychotic
episode" after he was denied his medication. Dkt. No.

18 at ¶ 6. Defendant Grimshaw and three unknown
correctional officers came to Plaintiff's cell. *Id.* at ¶ 7.
Two officers pinned Plaintiff's arms to his side while
Defendant Grimshaw punched him in the face and head
and "rammed" Plaintiff's head into iron bars two or
three times. *Id.* at ¶¶ 7–8. Plaintiff then was beaten by
other unknown officers before he was taken to a holding
cell in the Mental Health Satellite Unit. *Id.* at ¶ 7. He
received medical attention. *Id.* He sustained, *inter alia,*
a wound above his right eye, bruises, and scrapes. *Id.*
He alleges that Defendant Grimshaw utilized excessive
force, committed assault and battery, subjected Plaintiff
to intentional infliction of emotional distress, and denied
immediate emergency aid to Plaintiff. *Id.* at ¶¶ 8–13.

**B. Summary of Grounds in Support of Defendant
Grimshaw's Motion**
Defendant argues that summary judgment should be
granted because Plaintiff failed to exhaust administrative
remedies prior to commencing this action. Dkt. No. 30.
Defendant asserts that (1) Plaintiff did not avail himself of
available administrative remedies; (2) Defendant should
not be estopped from raising the exhaustion defense;
and (3) no special circumstances were alleged that would
excuse Plaintiff's non-compliance with the exhaustion
requirement. *Id.*

**C. Summary of Plaintiff's Letter**
The only submission filed by Plaintiff following the filing
of the motion was a one-page letter. Dkt. No. 31. In the
letter, Plaintiff states, *inter alia,* that he is trying to
find an attorney, that Defendant is a malicious man, that
Defendant never "reached out" to the nurse who treated
Plaintiff on the night of the incident, and that somehow
the nurse is being "set-up." *Id.* Plaintiff made no reference
to the pending motion. *See id.*

**II. LEGAL STANDARD GOVERNING MOTIONS
FOR SUMMARY JUDGMENT**
Under Federal Rule of Civil Procedure 56, summary
judgment is warranted if "the pleadings, the discovery and
disclosure materials on file, and any affidavits show that
there is no genuine issue as to any material fact and that
the movant is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(c)(2). The party moving for summary
judgment bears the initial burden of showing, through the
production of admissible evidence, that no genuine issue

Calloway v. Grimshaw, Not Reported in F.Supp.2d (2011)
2011 WL 4345299
Case 9:16-cv-01174-NAM-DEP    Document 123    Filed 05/24/19    Page 44 of 107

of material fact exists. Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006).

**\*2** The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material [2] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino,* 542 F.3d 290, 309 (2d Cir.2008).

When a plaintiff fails to respond to a defendant's motion for summary judgment, "[t]he fact that there has been no [such] response ... does not ... [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). Rather, practically speaking, the Court must (1) determine what material facts, if any, are *disputed* in the record presented on the defendants' motion, and (2) assure itself that, based on those *undisputed* material facts, the law indeed warrants judgment for the defendants. *See Champion,* 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.,* 140 F.Supp.2d 229, 232 (N.D.N.Y.2001); N.D.N.Y. L.R. 7.1(b)(3).

Where a plaintiff has failed to properly respond to a defendant's Statement of Material Facts (its "Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true to the extent that (1) those facts are supported by the evidence in the record, and (2) the non-moving party, if he is proceeding *pro se,* has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment. *See* N.D.N.Y. L.R. 7.1(a)(3); *Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.,* 373 F.3d 241, 243 (2d Cir.2004); *Champion,* 76 F.3d at 486.

Similarly, where a plaintiff has failed to respond to a defendant's properly filed and facially meritorious

memorandum of law, the plaintiff is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court. Implied in this standard is the fact that, where a non-movant fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is proceeding *pro se. See Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470 (2d Cir.2002). This is because even *pro se* plaintiffs must obey the Court's procedural rules. [3] For example, this Court has consistently enforced Local Rule 7.1(a)(3) (and its predecessor, Local Rule 7.1[f] ), by deeming facts set forth in a moving party's statement to have been admitted where the opposing party has failed to properly respond to that statement-even where the opposing party was proceeding *pro se* in a civil rights case. [4] Here, however, in an abundance of caution, I have independently reviewed the entire record.

## III. ANALYSIS

### A. Exhaustion Requirement
**\*3** Under the Prison Litigation Reform Act, ("PLRA"), inmates must exhaust all available administrative remedies before bringing a federal action. 42 U.S.C. § 1997e(a). Exhaustion is a requirement that applies to all actions about prison life, whether they involve general circumstances or particular episodes and regardless of the claim's subject matter. *See, e.g., Giano v. Goord,* 380 F.3d 670, 675–76 (2d Cir.2004).

In *Jones v. Bock,* the Supreme Court held that in order to properly exhaust administrative remedies, an inmate must complete the administrative review process in accordance with the applicable state rules. 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (citing *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In *Woodford,* the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules as a prerequisite to bringing a suit in federal court. 548 U.S. at 90–103.

The Department of Correctional Services ("DOCS") maintains a three-tiered administrative review and appeals system for prisoner grievances. *See* 7 N.Y. Comp.Codes

R. & Regs. ("N.Y.C.R.R.") § 701.5. Prior to pursuing a § 1983 action in federal court, a prisoner in the DOCS system must exhaust all three levels. *See Porter,* 534 U.S. at 524. First, an inmate may file an inmate grievance complaint form or a written grievance, if forms are not available, with the Inmate Grievance Resolution Committee ("IGRC"). *See* 7 N.Y.C.R.R. § 701.5(a). Second, if the inmate is dissatisfied with the IGRC decision, he may appeal to the prison superintendent. *See id.* § 701.5(c). Finally, DOCS permits an inmate to appeal the superintendent's written decision to the Central Office Review Committee ("CORC"). *See id.* § 701.5(d).

The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill,* 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted); *see also Messa v. Goord,* No. 10–1019–pr, —— F.3d ——, 2011 WL 3086827, *2 (2d Cir. July 25, 2011) (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)).

**\*4** Here, in the amended complaint, Plaintiff indicated that he submitted a grievance. Dkt. No. 18 at ¶ 4(b). However, when asked to state the "final result" of that grievance, he stated that he was "surrounded by several Correctional Officer[s] and an [u]nknown [s]ergeant in D Block in the transitional Inmate Care Program" and was told that if he "didn't sign off on the grievance, they would set [him] up by placing a weapon in [his] cell and [ ] they could make it hard for [him] if [he] was transferred." *Id.*

**Regarding the first inquiry set forth in** *Hemphill,* I note that an administrative remedy was available to Plaintiff. Plaintiff expressly states that there was a prisoner grievance procedure at Clinton Correctional Facility. Dkt. No. 18 at ¶ 4. Thus, an administrative remedy was available to Plaintiff.

**Regarding the second inquiry set forth in** *Hemphill,* the court is required to determine if Defendant may have forfeited the affirmative defense by failing to raise or preserve it or if Defendant took some affirmative action to prevent Plaintiff from using the grievance procedure, such as beating, denying grievance forms and writing implements, or threatening retaliation. *Cisson v. Middaugh,* No. 9:09–CV–260, 2011 WL 2579800, at *3 (N.D.N.Y. Feb.2, 2011) (citing *Ruggiero v. County of Orange,* 467 F.3d 170, 178 (2d Cir.2004) (citations omitted)), *accepted,* 2011 WL 2559568 (N.D.N.Y. June 27, 2011) (Scullin, J.).

First, Defendant did not forfeit the administrative defense of non-exhaustion by failing to raise or preserve it. Defendant's Answer timely asserted this affirmative defense. Dkt. No. 16 at ¶ 11.

Second, regarding Plaintiff's vague assertion that several correctional officers and an unknown sergeant threatened him to "sign off" on his grievance, Plaintiff provides only the most conclusory allegation on this topic. He provides no information as to the identity of these non-defendants and when the alleged interaction took place.

"Notwithstanding the deference to which a *pro se* litigant is entitled, as well as the deference accorded to a non-movant on a summary judgment motion, [Plaintiff] must produce specific facts to rebut the movant's showing and to establish that there are material issues of fact requiring a trial." *See Bennett v. James,* No. 08 Civ. 9979, 737 F.Supp.2d 219, 226 (S.D.N.Y. Sept.16, 2010) (quotation marks omitted) (citing *Almanzar v. Newland,* No. 08 Civ. 8612, 2010 WL 1379739, at *6 (S.D.N.Y. Mar.26, 2010) (citation and internal quotations omitted) (finding plaintiff's "vague allegations" insufficient to demonstrate his efforts to exhaust); *Winston v. Woodward,* No. 05 Civ. 3385, 2008 WL 2263191, at *9 (S.D.N.Y. May 30, 2008) (allegations of threats and harassment that "stand alone and unsupported" insufficient to defeat summary judgment on question of exhaustion) (quoting *Veloz,* 339 F.Supp.2d at 516); *Veloz,* 339 F.Supp.2d at 516

(dismissing suit for failure to exhaust where plaintiff "offers no evidence that any particular officer thwarted his attempts to file")).

**\*5** Here, Plaintiff does not provide the Court with *any* evidence to support a finding that *Defendant* acted to interfere with his ability to exhaust. *See Bennett,* 737 F.Supp.2d at 226 (citing *Bennett v. Bailey,* No. 07 Civ. 7002, 2010 WL 1459192, at \*5 (S.D.N.Y. Apr.9, 2010) (plaintiff's contention that "unidentified medical officials told him that pursuing a grievance would be 'a waste of time' ... falls far short of conduct amounting to the denial [of] administrative remedies to a prisoner" (citation omitted)); *Murray v. Palmer,* No. 9:03–CV–1010, 2010 WL 1235591, at \*5 (N.D.N.Y. Mar.31, 2010) (Suddaby, J.) (finding that Plaintiff "failed to offer any credible evidence ... that Defendants in any way interfered with Plaintiff's ability to file grievances during the time in question") (emphasis in original) (citing cases) (emphasis in original)). [5]

Moreover, as pointed out by Defendant, Plaintiff made no mention of being surrounded and threatened during his deposition. Dkt. No. 30–10 at 8–9 (citing Dep. Tr. (Dkt. No. 30–8 at 43–54)). Instead, Plaintiff stated that he filed a grievance related to the incident but never received a response. [6] *Id.* at 8–9 (citing Dep. Tr. (Dkt. No. 30–8 at 43–54)). Accordingly, I find that Defendant should not be estopped from asserting this defense.

**Regarding the third inquiry set forth in *Hemphill,*** when a prisoner plausibly alleges special circumstances that caused the prisoner's failure to comply with the grievance procedures, the court may waive the exhaustion requirement. *See, e.g., Brownell v. Krom,* 446 F.3d 305, 311–12 (2d Cir.2006). "The special circumstances inquiry 'must be determined by looking at the circumstances which might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way.' " *Jones v. Fischer,* No. 07 Civ. 7589, 2008 WL 3174510, at \*4 (S.D.N.Y.2008) (quoting *Giano v. Goord,* 380 F.3d 670, 678 (2d Cir.2004). "Findings of special circumstances have been primarily established where plaintiffs acted pursuant to reasonable interpretations of the regulations, thus preventing exhaustion." *Winston,* 2008 WL 2263191, at \*10.

Here, Plaintiff has alleged no special circumstances that caused his failure to comply with the grievance

procedures. "Indeed, 'absent an allegation by the inmate that his failure to exhaust was based on a reasonable, but erroneous interpretation of prison regulations, the special circumstances exception is generally inapplicable.' " *Almanzar,* 2010 WL 1379739, at \*6 (quoting *McDowall v. Metropolitan Corr. Ctr.,* No. 08–Civ–8329, 2010 WL 64877, at \*7 n. 4 (S.D.N.Y. Feb. 22, 2010).

Lastly, I note that Plaintiff stated in his amended complaint that he was suffering from a psychotic episode. However, Plaintiff does not allege that any mental condition constituted a special circumstance that prevented him from exhausting his administrative remedies. Even if Plaintiff made such an argument, "the special circumstances exception under *Hemphill* concerned an inmate's justifiable confusion regarding the proper DOCS procedure for filing an expedited grievance, not an inmate's mental or emotional condition." *Newman v. Duncan,* No. 04–CV–395, 2007 WL 2847304, at \*4 (N.D.N.Y. Sept. 26, 2007) (citing *Hemphill,* 380 F.3d at 689–91). Thus, even if Plaintiff alleged that he suffered from a mental condition that constituted a special circumstance, such an argument would fail. *See Newman,* 2007 WL 2847304, at \*4 (failure to exhaust remedies due to claimed but undocumented mental illness is not a special circumstance).

**\*6 ACCORDINGLY,** it is

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 30) be **GRANTED;** and it is further

**ORDERED,** that the Clerk serve copies of the electronically-available-only decisions cited herein on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a).

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 4345299

Footnotes

1    The Court granted Plaintiff leave to amend his complaint. Dkt. No. 17.

2    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson,* 477 U.S. at 248.

3    *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Edwards v. I.N.S.,* 59 F.3d 5, 8 (2d Cir.1995) ("[W]hile a *pro se* litigant's pleadings must be construed liberally, ... *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them .") [citations omitted].

4    *See, e.g., DeMar v. Car–Freshner Corp.,* 49 F.Supp.2d 84, 86 & n. 1 (N.D.N.Y.1999) (*pro se* civil rights case); *Costello v. Norton,* No. 96–CV–1634, 1998 WL 743710, at *1, n. 1 (N.D.N.Y. Oct.21, 1998) (McAvoy, C.J.) (*pro se* civil rights case); *Squair v. O'Brien & Gere Eng'rs, Inc.,* No. 96–CV–1812, 1998 WL 566773, at *1, n. 2 (N.D.N.Y. Aug.21, 1998) (Scullin, J.) (*pro se* civil rights case); *see also Monahan v. N.Y. City Dep't of Corr.,* 214 F.3d 275, 292 (2d Cir.2000) (discussing district courts' discretion to adopt local rules like 7.1[a][3], in *pro se* civil rights case).

5    (citing *inter alia, Ruggiero v. County of Orange,* 467 F.3d 170, 178 (2d Cir.2006) (holding that defendants were not estopped from asserting the affirmative defense of non-exhaustion where the conduct plaintiff alleged kept him from filing a grievance-that he was not given the manual on how to grieve-was not attributable to the defendants and plaintiff "point[ed] to no affirmative act by prison officials that would have prevented him from pursuing administrative remedies"); *Murray v. Palmer,* 03–CV–1010, 2008 WL 2522324, at *19 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report–Recommendation of Lowe, M.J.) ("I have found no evidence sufficient to create a genuine issue of triable fact on the issue of whether Defendants, *through their own actions,* have inhibited Plaintiff ['s] exhaustion of remedies so as to estop one or more Defendants from raising Plaintiff's failure to exhaust as a defense.") (emphasis in original); *Shaheen v. McIntyre,* 05–CV–0173, 2007 WL 3274835, at *16 (N.D.N.Y. Nov.5, 2007) (McAvoy, J. adopting Report–Recommendation of Lowe, M.J.) (finding defendants not estopped from raising Plaintiff's non-exhaustion as a defense based on plaintiff's allegation "that [he] was inhibited (through non-responsiveness) by [ ] unnamed officials at Coxsackie C.F.'s Inmate Grievance Program (or perhaps the Grievance Review Committee), and Coxsackie C.F. Deputy Superintendent of Security Graham" because plaintiff's complaint and "opposition papers ... fail to contain any evidence placing blame on Defendants for the (alleged) failure to address his grievances and complaint letters"); *Smith v. Woods,* 03–CV–0480, 2006 WL 1133247, at *16 (N.D.N.Y. Apr.24, 2006) (Hurd, J. adopting Report–Recommendation of Lowe, M.J.) (finding that defendants are not estopped from relying on the defense of non-exhaustion because "no evidence (or even an argument) exists that any *Defendant* ... inhibit[ed] Plaintiff's exhaustion of remedies; Plaintiff merely argues that a non-party to this action (the IGRC Supervisor) advised him that his allegedly defective bunk bed was not a grievable matter.") (emphasis in original)).

6    Once it became clear to Plaintiff that a response to his initial filing was not forthcoming, he was required to appeal his claim to the next level. *See Martinez v. Williams,* 186 F.Supp.2d 353, 357 (S.D.N.Y.2002) (inmate who allegedly received no response to grievance "could have and should have appealed grievance in accordance with grievance procedure") (citing 7 N.Y. Comp.Codes R. & Regs. § 701.8).

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:16-cv-01174-NAM-DEP    Document 123    Filed 05/24/19    Page 48 of 107
Calloway v. Grimshaw, Not Reported in F.Supp.2d (2011)
2011 WL 4345296

2011 WL 4345296
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Samuel CALLOWAY, Plaintiff,
v.
Sgt. Charles GRIMSHAW, a/
k/a Grinnhan, Defendant.

No. 9:09−CV−1354 (TJM/GHL.).
|
Sept. 15, 2011.

**Attorneys and Law Firms**

Samuel Calloway, Marcy, NY, pro se.

Brian J. O'Donnell, C. Harris Dague, New York State
Attorney General, Albany, NY, for Defendant.

### DECISION & ORDER

THOMAS J. McAVOY, Senior District Judge.

### I. INTRODUCTION

**\*1** This *pro se* action brought pursuant to 42 U.S.C.
§ 1983 was referred to the Hon. George H. Lowe,
United States Magistrate Judge, for a Report and
Recommendation pursuant to 28 U.S.C. § 636(b) and
Local Rule 72.3(c). No objections to the Report–
Recommendation and Order dated August 10, 2011 have
been filed, and the time to do so has expired. Furthermore,
after examining the record, this Court has determined that
the Report–Recommendation and Order is not subject to
attack for plain error or manifest injustice.

### II. CONCLUSION

Accordingly, the Court **ADOPTS** the Report–
Recommendation and Order for the reasons stated
therein. Therefore, it is hereby

**ORDERED** that Defendant's motion for summary
judgment (Dkt.# 30) is **GRANTED** and the Complaint is
**DISMISSED.**

### IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 4345296

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 4732778

2018 WL 4732778
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Towaun COLEMAN, Plaintiff,
v.
Luke NOLAN, Defendant.

9:15-CV-40 (ATB)
|
Signed 10/02/2018

**Attorneys and Law Firms**

MICHAEL E. KOLB, ESQ., for Plaintiff.

ERIK BOULE PINSONNAULT, Asst. Attorney General, for Defendant Nolan.

**DECISION AND ORDER**

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** Plaintiff Towaun Coleman filed this action pursuant to 42 U.S.C. § 1983, alleging that, while an inmate at the Clinton Correctional Facility ("Clinton"), he was deprived of his civil rights by various individuals employed by the New York State Department of Corrections and Community Supervision ("DOCCS"). (Compl., Dkt. No. 1; Am. Compl., Dkt. No. 19). As a result of an initial review of plaintiff's amended complaint and litigation of a defense motion to dismiss before Senior District Judge Thomas McAvoy, the only surviving cause of action arises from plaintiff's allegation that, on December 4, 2014, defendant Correction Officer Luke Nolan used excessive force against plaintiff by striking him in the leg with a baton while plaintiff was asleep in his cell. (See 6/24/2015 Decision and Order, Dkt. No. 21; 1/4/2016 Decision and Order, Dkt. No. 38).

Defendant Nolan subsequently moved for summary judgment based on plaintiff's alleged failure to exhaust his administrative remedies. (Dkt. No. 50). Adopting my Report-Recommendation (Dkt. No. 53), Judge McAvoy denied summary judgment, finding that there was a material issue of fact as to whether the administrative grievance process was "unavailable" to plaintiff under the particular circumstances of this case. (6/14/2017 Decision

and Order, Dkt. No. 57). See Ross v. Blake, ––– U.S. ––––, 136 S.Ct. 1850, 1858-60, 195 L.Ed.2d 117 (2016). On January 24, 2018, Judge McAvoy appointed counsel to assist the formerly pro se plaintiff at a trial on his excessive force claim, which was scheduled to begin on September 17, 2018. (1/24/2018 Order, Dkt. No. 63; Amended Pretrial Scheduling Order, Dkt. No. 64).

On April 20, 2018, defense counsel requested an evidentiary hearing and judicial ruling on the issue of whether plaintiff exhausted his administrative remedies, pursuant to Messa v. Goord, 652 F.3d 305, 308-10 (2d Cir. 2011). (Dkt. No. 67). Judge McAvoy referred that motion to me to issue a Report-Recommendation. (Dkt. No. 68). On May 14, 2018, Judge McAvoy re-assigned the case to me for all further proceedings, including the entry of judgment, with the consent of the parties. (See Dkt. Nos. 75, 76). The parties filed various pre-hearing submissions with respect to exhaustion issues. (Dkt. Nos. 71, 72, 78-81).

At a conference prior to the "exhaustion hearing," defense counsel stipulated that a grievance process was in place at Clinton while plaintiff was confined there, and that DOCCS has no record that plaintiff filed a grievance or grievance appeal relating to defendant Nolan's alleged use of excessive force on December 4, 2014. (See 6/14/2018 Text Minute Entry). Plaintiff contends, however, that he made two unsuccessful attempts to file a grievance pursuant to DOCCS procedures, and that, under the circumstances of this case, the grievance process was "unavailable" to him, within the meaning of Ross. (See 6/8/2018 Ltr. of Pl.'s Counsel, Dkt. No. 79).

I conducted the requested evidentiary exhaustion hearing on June 27, 2018, during which plaintiff and several DOCCS witnesses testified. (6/27/19 Transcript ("Tr."), Dkt. No. 88). Inmate Donnell Jefferson was designated as a witness for plaintiff, and was expected to testify that he placed plaintiff's first grievance in the facility mail box, at the request of plaintiff, who was then confined to his cell on "keeplock" status. However, inmate Jefferson did not testify at the hearing because he refused to come out of his cell pursuant to the writ issued by this court to secure his appearance, apparently because he was not clear on where he was going to be transported or why. (Tr. at 2, 5-6, 202-03; 6/26/18 & 7/13/2018 Text Minute Entries). For the first time, during the exhaustion hearing, defense counsel suggested that this action should be dismissed because

plaintiff first filed the action before his opportunity to exhaust his administrative remedies was extinguished. (Tr. at 100-03, 192-94, 202). *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001) (subsequent exhaustion after suit is filed is insufficient), *overruled on other grounds, Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

**\*2** The court subsequently ordered that the parties depose inmate Jefferson with respect to, inter alia, any information relevant to exhaustion issues. (7/13/2018 Text Minute Entry). The deposition was not conducted until September 14, 2018. At the court's direction, the parties submitted post-hearing briefing, the last of which was submitted on October 1 st, after the Jefferson deposition. (Dkt. Nos. 87, 95, 96).

Based upon the evidence adduced at that hearing and thereafter, and the law outlined below and in my prior Report-Recommendation (Dkt. No. 53), I conclude that plaintiff presented credible evidence that the grievance process was unavailable to him in connection with his complaint of excessive force. Because the grievance process was "unavailable" to plaintiff by the time he filed this action, I reject defendant's argument that this lawsuit should be dismissed because it was filed prematurely. I find, further, that defendant has failed to sustain his burden to prove, by a preponderance of the evidence, the affirmative defense that plaintiff failed to exhaust his administrative remedies. Accordingly, this case must proceed to trial on plaintiff's surviving cause of action for excessive force.

## I. Exhaustion of Administrative Remedies

### A. General Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F.Supp.2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19, 127 S.Ct. 910 (citing *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) ). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103, 126 S.Ct. 2378.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a) (1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program ("IGP") encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also an expedited procedure for complaints raising bona fide issues of harassment by staff, which bypasses the IGRC, and initially refers the grievance to the facility superintendent or his designee for prompt review, investigation, and decision. *Id.* § 701.8.

**\*3** Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops

them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, 136 S.Ct. at 1857. " '[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.' " *Riles v. Buchanan*, 656 Fed.Appx. 577, 580 (2d Cir. 2016) (quoting *Ross*, ––– U.S. ––––, 136 S.Ct. at 1857). Although *Ross* did away with the "special circumstances" exception, the other two factors in *Hemphill*–availability and estoppel–are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, ––– U.S. ––––, 136 S.Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id.; see also Riles*, 656 Fed.Appx. at 580. An administrative procedure is "unavailable" when

> (1) "it operates a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is "so opaque that is [sic] becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Riles, supra* (quoting *Ross*, ––– U.S. ––––, 136 S.Ct. at 1859-60).

In *Ross*, the Supreme Court gave examples of the circumstances under which each of the above would apply. *Ross*, ––– U.S. ––––, 136 S.Ct. at 1859-60. The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief. *Id.* at 1859. The second example is when the administrative procedure "exists," but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate it." *Id.* Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure. *Id.* at 1860.

In *Williams v. Priatno*, 829 F.3d 118, 123-27 (2d Cir. 2016), the Second Circuit considered whether administrative remedies had been "actually available" to the plaintiff under *Ross*, after the district court granted the defendants' motion to dismiss for failure to exhaust. The plaintiff alleged that, while housed in the special housing unit ("SHU"), he drafted a grievance that he delivered to a correction officer to forward to the grievance office on his behalf. *Id.* at 120-121. Approximately two weeks later, the plaintiff was transferred to a different facility. *Id.* at 121. He never received a response to his grievance and alleged that it was never filed by the officer to whom he had given it. It was undisputed that plaintiff never appealed the grievance. *Id.*

**\*4** The defendants in *Williams* argued that even if the grievance was never filed, the plaintiff was required to appeal it and complete the grievance process. *Id.* at 124. The defendants relied on a DOCCS regulation that provided that "an inmate may appeal a grievance 'to the next step' if he does not receive a timely response." *Id.* (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g) (2) ). The Second Circuit rejected this argument and held that, for an inmate in the plaintiff's situation, the regulatory scheme was so "opaque" and "confusing" as to be practically unavailable. *Id.* The Second Circuit found that DOCCS regulations "only contemplate appeals of grievances that [have been] actually filed ... [and] give no guidance whatsoever to an inmate whose grievance was never filed." *Id.* Thus, *Williams* holds that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Id.* at 126. [1] *See also Medina v. Napoli*, 725 F. App'x 51, 53-54 (2d Cir. 2018) (following *Williams* in the context of a summary judgment motion).

### B. Exhaustion Hearings

The Second Circuit has ruled that a plaintiff in a lawsuit governed by PLRA is not entitled to a jury trial relating to his exhaustion of administrative remedies. *Messa v. Goord*, 652 F.3d at 308-10. Rather, PLRA exhaustion is a matter of judicial administration, and the court, not a jury, determines factual disputes regarding an inmate's alleged failure to exhaust. *Id.* at 308-08.

As noted above, the defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil

action. *See, e.g., Howard v. Goord,* No. 98-CV-7471, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999). However, once a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable. *Smith v. Kelly*, 985 F.Supp.2d 275, 284 (N.D.N.Y. 2013) (Suddaby, J.). "As a result, practically speaking, while the burden on this affirmative defense remains at all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it." *Id.* While there is some ambiguity in the district court cases in the Second Circuit on this point, I agree with Magistrate Judge Peeble's cogent analysis that, while "the burden of production" may shift to a plaintiff when a court considers whether the grievance process was unavailable, "the ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendant." *See, e.g., Bailey v. Fortier,* No. 9:09-CV-0742 (GLS/DEP), 2012 WL 6935254, at *5-6 (N.D.N.Y. Oct. 4, 2012) (Rep't-Rec.), *adopted,* 2013 WL 310306 (N.D.N.Y. Jan. 25, 2013); *Nelson v. Plumley*, No. 9:12-CV-422 (TJM/DEP), 2015 WL 4326762, at *7-8 (N.D.N.Y. July 14, 2015) (Rep't-Rec.), *adopted,* 2013 WL 1305338 (N.D.N.Y. Mar. 18, 2013). [2]

## II. Facts

### A. Undisputed Facts

As noted, plaintiff stipulated that a grievance process was in place at DOCCS and at Clinton during the relevant time period, and that neither had a record of plaintiff filing a grievance or grievance appeal relating to the alleged December 4, 2014 assault. (Tr. at 12). Plaintiff acknowledged this during his hearing testimony (Tr. at 51-52), and the defendant briefly offered proof supporting the stipulation at the exhaustion hearing (Tr. at 111-113, 125-30). The parties also stipulated to the admission of Defendant's Exhibits 1 through 25 and Plaintiff's Exhibits A through I (subject to relevance objections), although Plaintiff's Exhibit D was admitted for a limited purpose. (Tr. 9-11, 17, 18, 45, 122, 191).

### B. Plaintiff's Version of Disputed Facts

**\*5** Plaintiff testified during the exhaustion hearing, referencing various defense exhibits and offering several additional plaintiff's exhibits. He stated that, during the evening of December 4, 2014, he wrote a grievance complaining of defendant Nolan's use of excessive force on plaintiff earlier that afternoon. (Tr. at 19, 74). Plaintiff made and retained a carbon copy of the grievance, a photocopy of which he identified, and which was admitted as Defendant's Exhibit 11. (Tr. at 73). The grievance alleged that plaintiff was asleep in his cell when he felt a sharp pain in his lower right leg, and then awoke to see a correction officer, who he later learned was defendant Nolan, putting away his baton. (Def.'s Ex. 11). When plaintiff stated that he was going to report the incident, defendant Nolan stated, *inter alia,* "write whatever the fuck you want, you see what writing just got you." (*Id.*; Tr. at 46, 74-75).

Defendant Nolan issued plaintiff a misbehavior report as a result of their interaction on December 4th, alleging that plaintiff interfered with Officer Nolan's inmate count and disobeyed a direct order. (Tr. at 46-48; Pl.'s Ex. G). Starting on the morning of December 5th, plaintiff was confined in his cell on "keeplock" status pending resolution of the disciplinary charges against him. (Tr. at 47). Plaintiff had placed the grievance in an envelope, which was addressed to the grievance unit and which had plaintiff's name on it. (Tr. at 19-20). Because he was restricted to his cell, plaintiff passed the envelope containing the grievance to an inmate in an adjacent cell, named Jefferson, to put in the facility mailbox that morning. [3] (Tr. at 19, 20-21, 76). In response to cross-examination by defense counsel, plaintiff testified that inmate Jefferson later confirmed that he placed the grievance in the facility mailbox on their cell block. (Tr. 76-77). Plaintiff procured a contemporaneous declaration from inmate Jefferson regarding what he heard during the alleged assault of plaintiff, which corroborated that Jefferson occupied the cell next to plaintiff in December 2012. (Tr. at 77). [4] During his recent deposition, inmate Jefferson stated that he had no specific recollection of placing something in the facility mailbox for plaintiff in December 2014, when he was confined in the cell next to plaintiff. However, inmate Jefferson testified that, if plaintiff had asked him to mail something while plaintiff was confined on keeplock, Jefferson would have done so. [5]

A hearing officer dismissed the misbehavior report against plaintiff on or about December 9, 2014, and he was taken off "keeplock" status. (Tr. 72-73, 83). Plaintiff thereafter had regular access to the facility mailbox. (Tr. at

83-84). The hearing officer reported plaintiff's allegation, during the disciplinary hearing, of an assault by defendant Nolan. [6] (Tr. at 97). Lt. Brooks interviewed plaintiff and Officer Nolan about the alleged incident on December 15, 2014. (Tr. at 97-98; Pl.'s Exs. A-C). [7]

 **\*6** Because plaintiff did not receive the expected written confirmation that his grievance had been filed with the IGP Supervisor (Tr. at 25), he made a request to DOCCS under the Freedom of Information Law ("FOIL"), on or about December 15, 2014 to determine whether his grievance had been received and filed. (Tr. at 27-29). Plaintiff received a response from the facility FOIL unit, on or about December 26th, that the facility did not have a record of his December 4th grievance. (Def.'s Ex. 12; Tr. at 29-32). [8]

Plaintiff alleges that on December 30, 2014, he "resubmitted" a copy of his grievance, again retaining a copy. (Def.'s Ex. 13; Tr. at 32, 35). Plaintiff testified that he personally placed this grievance in the facility mailbox on his cell block in an envelope addressed to the grievance unit, with his name on it. (Tr. at 35-36). The "resubmitted" grievance contained a cover-letter, addressed to the IGRC, stating that plaintiff had been informed, through his FOIL request, that the IGRC never received his December 4th grievance, and advising that plaintiff was "re-submitting [his] initial grievance regarding retaliatory treatment/assault" by defendant Nolan. (Def.'s Ex. 13). Because plaintiff's re-submitted grievance was allegedly mailed more than 21 days after the alleged assault, it was untimely under DOCCS rules; however, it was mailed within the 45-day period during which an inmate could be granted an extension of the filing deadline. (Tr. at 3, 138-39; Def.'s Ex. 20, DOCCS Directive # 4040, §§ 701.5(a)(1), 701.6(g) ).

After again not receiving the expected written confirmation of his December 30th grievance, plaintiff made another FOIL request to determine whether it had been received by the Inmate Grievance Supervisor. [9] (Tr. at 38-39). Plaintiff was advised on January 22, 2015, that his request was being reviewed and, on January 23rd, that the inmate grievance unit had no record of his December 30th grievance. (Def.'s Ex. 15).

On January 23rd, plaintiff wrote a letter to the facility superintendent complaining about the alleged assault by defendant Nolan on December 4th, and the fact that plaintiff had submitted two grievances that were never filed by the inmate grievance unit. (Tr. at 39, 41; Def.'s Ex. 16). Defendant received a response on January 28th, advising him that his complaint had been referred to the Deputy Superintendent for Security for review and appropriate action. (Tr. at 42; Def.'s Ex. 16). Plaintiff testified that he never received any further communications from facility staff with respect to this complaint. (Tr. at 42). Plaintiff also wrote a similar complaint to the New York Attorney General's Office in March 2015, although he placed the name of another inmate on the envelope to ensure that it was mailed from the facility. (Tr. at 49-51; Def.'s Ex. 17).

### C. The Defense Version of Disputed Facts

Defense counsel extensively cross-examined plaintiff during the exhaustion hearing, and called three witnesses–CORC Assistant Director Rachel Sequin; Clinton's IGP Supervisor, Christine Gregory; and Clinton Sgt. Chad LaValley. Defendant Nolan was not called to testify by either side. (Tr. at 205).

 **\*7** Defense counsel contended that the credible evidence does not support plaintiff's claim that he attempted to submit grievances with respect to the December 4, 2014 incident with defendant Nolan. (Tr. at 195-98). Counsel also suggested, for the first time during the exhaustion hearing, that plaintiff's action should be dismissed because he filed his initial complaint prematurely, while he was still attempting to pursue the grievance process with respect to the incident. (Tr. at 100-03, 192-94, 202).

During the hearing, plaintiff acknowledged that he was aware of the DOCCS grievance procedures and knew that if he did not complete all of the steps of the grievance process with respect to a complaint, he might not be able to pursue a lawsuit. (Tr. at 26-27, 51-52, 84). Plaintiff eventually confirmed that he felt that the grievance process at Clinton was "a joke," and that he failed to fully exhaust some other prior grievances when the alleged staff misconduct did not directly threaten his well-being. (Tr. at 55-57, 58).

During cross-examination of plaintiff, defense counsel established that, before, during, and after December 2014,

various internal communications and other grievances that plaintiff placed in the facility mailbox with his name on the envelope were received by the facility officials to whom they were directed. (*See, e.g.*, Tr. at 61-64, 65-67, 68-72 86-87, 90-93; Def.'s Exs. 1-3, 7, 8, 10, 12, 15, 16). Plaintiff also acknowledged that an April, 2015 grievance against defendant Nolan for alleged harassment was received by the grievance unit and address by the facility superintendent and CORC. (Tr. at 93-94; Def.'s Exs. 19, 21).

Defense counsel documented, during cross-examination, that neither plaintiff, nor inmate Jefferson had alleged, in various documents, that Jefferson placed plaintiff's December 4, 2014 grievance in the facility mailbox, until plaintiff made that assertion during his deposition. (Tr. at 77, 79-80, 81-83). Plaintiff admitted that he did not see inmate Jefferson place the December 4th grievance in the facility mailbox, nor had he seen anyone tampering with his two grievances, or his mail generally. (Tr. at 76-77, 94).

Plaintiff was questioned by defense counsel as to why he did not do more to follow up with the IGP Supervisor who had apparently not received the two December 2014 grievances, of which plaintiff had kept carbon copies. (Tr. at 85-86, 87-90, 99-100). Plaintiff testified that he made two attempts to submit his grievance to the IGP and never obtained any confirmation that his grievances had been received and filed. Viewing further efforts to communicate with the IGP as futile, and not knowing how to proceed otherwise, he complained to the facility superintendent.[10] (Tr. at 42, 85-86, 87-90, 99-100).

IGP Supervisor Christine Gregory testified that she never threw away any inmate grievance received by her unit at Clinton. (Tr. at 132, 134). She stated that the IGP typically provided an inmate with written confirmation that a grievance alleging staff misconduct had been received and filed, with an assigned grievance number. (Tr. at 146-47). Ms. Gregory did not recall being aware of plaintiff's two FOIL requests looking for confirmation that his December 2014 grievances had been received by the IGP, but her unit would have been asked by the FOIL clerk at Clinton to determine whether they had those documents. (Tr. at 149-51). She admitted that her unit would not have followed up on a FOIL request which revealed that the IGP did not have any record of a grievance that an inmate claimed to have filed. (Tr. at 144-45, 150). Ms. Gregory stated that the security staff at the facility, not

the IGP, would have been responsible for investigating complaints that grievances placed in facility mailboxes were not being received. (Tr. at 144-45). She stated that grievances about staff assaults were referred directly to the facility superintendent for investigation and action, and that the IGP would typically not address inmate questions regarding such a grievance. (Tr. at 133, 142).

**\*8** Sgt. LaValley testified about procedures at the Clinton facility, including those relating to inmate mail. He stated that there was a secure facility mailbox in each cell block at Clinton into which inmates could deposit internal or external mail as they left the cell block, *e.g.*, on the way to "chow" (meals). (Tr. at 155-57). The mailbox was in the lobby of plaintiff's cell block in 2014, and could not be viewed by any inmate when he was in his cell. (Tr. at 157, 172-73). While technically not allowed, an inmate could ask another inmate to place a piece of mail in the facility mailbox. (Tr. at 160-61). If an inmate was on keeplock status, he could, in theory, have access to the facility mailbox during the one hour he could be released from his cell for recreation or showers, but would likely be frisked by officers as he was leaving the cell. The correction officer would likely inspect any mail the keeplocked inmate was trying to put in the box, and decide whether or not the inmate could mail it. (Tr. at 160).

Mail was picked up from each cell block every week day by the Visiting Room Officer (or his relief officer if he was not at work) while in the company of an inmate member of the Inmate Liaison Committee ("ILC"). (Tr. at 157-59, 161-63). This process, with an inmate monitoring the mail collection, was implemented more than ten years before because of inmate complaints about their mail going missing. (Tr. at 162, 164-65, 171). Mail was usually picked up when most of the inmates were getting chow and were not present on the cell block. (Tr. at 161-62, 172-73). There were only two rings of keys that would open the mailboxes and the officer collecting mail had to log the key in and out of the room where the keys were stored. (Tr. at 157-58). After the mail was collected from each cell block, the Visiting Room Officer and ILC inmate would deliver the mail to the correspondence room, which Sgt. LaValley believed was staffed by DOCCS civilian employees. (Tr. at 163-64). The Visiting Room Officer and ILC inmate did not observe the mail being sorted or delivered. (Tr. at 179-80).

Sgt. LaValley acknowledged that inmate complaints that grievances at Clinton had not been delivered to the IGP were common, and have been repeatedly raised during periodic meetings between the ILC and facility management. (*See* Pl.'s Ex. D at p. 2; Tr. at 170-71). Sgt. LaValley estimated that, on a typical day, several hundred pieces of mail are picked up at Clinton, including 40 to 50 grievances. (Tr. at 183).

Plaintiff acknowledged that he dated his original federal complaint January 7, 2015. (Tr. at 101). As of that time, plaintiff had not received a response to his second FOIL request about his "re-submitted" December 30, 2014 grievance, and had not yet written his letter of complaint to the facility superintendent. (Tr. at 100-103).

### III. Findings and Conclusions
The court viewed plaintiff's testimony during the hearing, and has reviewed the corroborating and contrary evidence submitted. The court finds that the plaintiff credibly met his burden of production, documenting that he twice attempted to file a grievance with respect to the alleged assault by defendant, pursuant to the mail and grievance procedures in place at Clinton. While defense counsel pointed out some minor inconsistencies between plaintiff's hearing testimony, his June 2016 deposition testimony, and various pleadings filed between early 2015 and late 2016, plaintiff's version of events has been substantially consistent. Given the passage of time since the relevant events of late 2014 and early 2015 and the significant volume of relevant documents, some factual inconsistencies would be expected.

During his recent deposition, inmate Jefferson had no specific recollection of depositing plaintiff's first grievance into the facility mailbox on December 5, 2014–almost four years earlier. However, plaintiff testified, in response to cross-examination by defense counsel, that inmate Jefferson told plaintiff, after the fact, that he had actually placed the grievance in the mail box. Moreover, plaintiff's subsequent steps–submitting a FOIL request to try to confirm that the IGP had received his grievance, and then re-submitting the grievance–provides strong corroboration of plaintiff's testimony. If plaintiff had not submitted the original grievance the day after the incident, he could have just filed a grievance on or about December 15th, when he filed the FOIL request, because the grievance would have still been timely, in that it

would have been submitted less than 21 days after the incident. (*See* Def.'s Exhibit 20, DOCCS Directive # 4040, § 701.5(a)(1); Tr. at 119). [11]

**\*9** The defense countered plaintiff's claims that his two attempts to submit grievances about the alleged assault were thwarted by pointing out that plaintiff had successfully filed grievances before and after December 2014. However, plaintiff pointed to documentation of an earlier example when a grievance he submitted was apparently not delivered to the IGP. [12] (*See* Def.'s Exs. 5-7; Tr. at 37-38, 64-67, 68). And, as plaintiff's counsel pointed out (Tr. at 188), plaintiff's first grievance apparently was diverted the morning after plaintiff told defendant Nolan he would report his conduct. Defendant Nolan allegedly told plaintiff, in substance, that grieving his conduct would not get plaintiff anywhere. On December 15, defendant Nolan received notice that plaintiff was still complaining about the alleged assault, because Officer Nolan was interviewed by Lt. Brooks about the incident, based on plaintiff's prior complaints at his disciplinary hearing. Plaintiff's testimony indicates that defendant Nolan had notice of the likelihood that plaintiff would attempt to file grievances with respect to the alleged assault.

Plaintiff was able to file a subsequent grievance complaining about defendant Nolan's alleged verbal harassment in April of 2015. However, the court notes that this grievance was filed after plaintiff complained to the facility superintendent and the Attorney General's Office about the disappearance of his December 2014 grievances. It seems probable that the investigation of plaintiff's complaint to the superintendent would deter any further efforts to divert his grievances.

Defense counsel suggested that the procedure for gathering mail at Clinton prevented any tampering or diversion of grievances by staff, and that plaintiff offered no specific evidence as to how his grievance could have been diverted. However, there is no way plaintiff could know how his grievances disappeared, because inmates at Clinton were not in a position to monitor what happened during mail pick-up, sorting, or delivery. As Sgt. LaValley stated, there have been continuing complaints at ILC meetings about grievances not being delivered to the IGP, and one of the inmates on the ILC was supposedly the monitor who ensured that the corrections staff did not divert mail when it was being picked up from the facility

mailboxes. [13] While IGP Supervisor Gregory specifically denied ever tampering with an inmate grievance, the defense offered no such representations from defendant Nolan, or from the Visiting Room Officer(s) or the ILC representative(s) who collected the mail, the custodian(s) of the mailbox keys, or the correspondence room staff who sorted and delivered the internal mail at Clinton. [14] Sgt. LaValley acknowledged that most of the correction officers and civilian staff working at Clinton live in the surrounding area. (Tr. 180). Plaintiff's counsel plausibly suggested that the corrections and civilian staff at Clinton may have loyalties to each other that could result in tampering with respect to the internal mail at Clinton. (Tr. at 22-23, 163-64, 179-80, 190-91).

 **\*10** As noted earlier, plaintiff credibly met his burden of production by documenting two efforts to file grievances with respect to the alleged assault, pursuant to the appropriate DOCCS and facility-specific procedures. The defense bears the ultimate burden of establishing the failure to exhaust by a preponderance of the evidence, and the general evidence about mail and grievance procedures at Clinton were not sufficient to overcome plaintiff's evidence, notwithstanding his lack of knowledge as to how his grievances might have been diverted. *See, e.g.,* *Nelson v. Plumley*, 2015 WL 4326762, at \*8-9. In *Nelson v. Plumley*, Magistrate Judge Peebles found, in similar circumstances, that civil right defendants asserting the affirmative defense of failure to exhaust, did not sustain their burden of proof, once plaintiff met his burden of production that he unsuccessfully attempted to file a grievance:

> Here, plaintiff credibly testified that on January 12, 2012, he attempted to mail the January grievances concerning defendants' alleged assault by having a corrections officer pick them up while he was confined in the SHU at Clinton.... While Clinton IGP Supervisor Gregory testified that she never received those grievances, there is no record evidence that explains or suggests why they were not processed or what happened to them after they were retrieved by the unidentified DOCCS corrections

officer.... Defendants have offered no reason why plaintiff would fabricate the grievances post hoc, nor do they provide any reason for why plaintiff would be reluctant to prepare and forward a grievance for processing. At the time he claims to have mailed the grievances, plaintiff sent several letters to various DOCCS officials complaining of the assault, demonstrating that he did not fear retribution for complaining concerning the incident.... Moreover, by his own admission, plaintiff is no stranger to the grievance process and does not appear to have hesitated in lodging complaints concerning this and other matters, both utilizing the IGP and through other avenues....

*Id.* at 8 (citations to record omitted). [15]

Defense counsel repeated an argument made in support of defendant's summary judgment motion, that plaintiff made only a "general claim that his grievance was lost or destroyed[, which] does not excuse the exhaustion requirement." (Def.'s' Mem. of Law at 10-11, Dkt. No. 50-2) (citing, *inter alia*, *Rosado v. Fessetto*, No. 9:09-CV-67 (DNH/ATB), 2010 WL 3808813, at \*7, 2010 U.S. Dist. LEXIS 108238 (N.D.N.Y. Aug. 4, 2010) (Rep't-Rec.), *adopted*, 2010 WL 3809991, 2010 U.S. Dist. LEXIS 99073 (N.D.N.Y. Sept. 20, 2010) ). As noted in my opinion recommending denial of the summary judgment motion (at 10-11, Dkt. No. 53), *Rosado* correctly stated the law, at the time it was decided. However, *Ross* has changed the law with respect to exhaustion, and requires a court to focus on whether the administrative remedies were "available" to the inmate. 136 S.Ct. at 1859-60. In any event, plaintiff did not make a "general claim" that his grievance was lost or destroyed. He submitted a great deal of documentary evidence to corroborate his testimony that he was prevented from filing a grievance, despite reasonable, good faith efforts to do so. [16]

 **\*11** This court has found that plaintiff credibly testified that, despite two attempts, plaintiff's grievances with respect to defendant Nolan's alleged assault were never

2018 WL 4732778

filed with the IGP. Based on that finding, the Second Circuit's *Williams* case, discussed above, establishes that the grievance process was "unavailable" to plaintiff under the Supreme Court's standards in *Ross*. *See Medina v. Napoli*, 2018 WL 1081211, at *1, 725 Fed.Appx. 51 (noting, in the context of a defense summary judgment motion based on plaintiff's alleged failure to exhaust: "The *Williams* decision makes clear that the prison grievance regulations 'plainly do not describe a mechanism for appealing a grievance that was never filed' by reason of inaction or obstruction by prison officials, resulting in a situation where 'the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it.' ")[17]

The case law in this Circuit is relatively clear that *Williams* should be applied only when an inmate's grievance is never filed, as opposed to when a grievance is filed, but not responded to on a timely basis by prison officials. *See, e.g.*, *Cicio v. Wenderlich*, No. 13-CV-195S, 2017 WL 1437206, at *5-6 (W.D.N.Y. Apr. 24, 2017) (granting summary judgment against plaintiff for failure to exhaust when he failed to appeal a grievance **for which he received a receipt confirming that it was filed**, but for which he never received a response on the merits of his grievance), *aff'd*, 714 F. App'x 96, 97 (2d Cir. 2018) (affirming grant of summary judgment, and distinguishing *Williams* which found the DOCCS grievance process "unavailable" when an inmate's grievance was never filed). However, some district court cases also suggest that *Williams* should be limited to its particular facts, *e.g.*, by not applying its holding to plaintiffs who are not confined in a SHU, and who do not need to rely on correction officers to submit their grievances.[18] *See, e.g.*, *Shaw v. Ortiz*, No. 15-CV-8964, 2016 WL 7410722, at *6 (S.D.N.Y. Dec. 21, 2016) ("the factual scenario here is different from that in *Williams* where the Second Circuit found that part of the IGP's regulatory scheme was 'so opaque and so confusing that ... no reasonable prisoner c[ould] use' it.") (citing, *Mena v. City of New York*, No. 13-CV-2430, 2016 WL 3948100, at *5 (S.D.N.Y. July 19, 2016) (finding that the Second Circuit's decision in Williams "hinged on the 'extraordinary circumstances' specific to the case before it") ); *Rodriguez v. Cross*, No. 15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017) ("Courts have denied a defendant's motion for summary judgment when faced with an unanswered and unfiled grievance drafted in SHU.... This is distinguishable from plaintiff's

alleged July 19, 2014 grievance drafted in keeplock.")[19] (Rep't-Rec.), *adopted*, 2017 WL 2790530 (N.D.N.Y. June 27, 2017).[20]

**\*12** As discussed above, the fact that an inmate was in SHU, where an inmate depends on correction officers to forward a grievance, may suggest the most likely explanation for how a grievance could have been diverted. However, this court concludes, despite some district court opinions suggesting otherwise, that the reasoning of *Williams*, which found that DOCCS procedures provided no clear guidance on how any inmate should proceed if a grievance is never filed, would apply even when the inmate is not confined in SHU. *See Berman v. Durkin*, No. 9:13-CV-136 (LEK/DJS), 2017 WL 1215814, at *7-8 (N.D.N.Y. Mar. 10, 2017) (applying *Williams*, in denying a defense summary judgment motion alleging failure to exhaust by an Clinton inmate, apparently housed in general population, who alleged that his grievance was not filed or answered) (Rep't-Rec.), *adopted*, 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017).[21]

As noted earlier, defense counsel argued, for the first time at the close of the exhaustion hearing, that plaintiff's action should be dismissed because he filed his original complaint (dated January 7, 2015) on January 14, 2015, before he completed his efforts to pursue a grievance with respect to the alleged assault. *See, e.g., Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, at *5 (N.D.N.Y. Nov. 9, 2015) (if the entire grievance appeal process is not completed prior to filing a complaint, it must be dismissed without prejudice) (citing *Neal v. Goord*, 267 F.3d at 122). However, by the time plaintiff filed his initial federal complaint, he had attempted to file his first grievance (on December 5, 2014) and to re-submit his grievance (on December 30th), and had not received the customary acknowledgment that either had been received by the inmate grievance unit. By the time the complaint was filed, it was established, under *Williams*, that the grievance process was not available to plaintiff. Thereafter, the plaintiff took other steps with respect to his complaint about the alleged assault–the filing of another FOIL request and letters of complaint to the Superintendent and the New York Attorney General. However, such steps were not part of the official grievance process established by DOCCS. *See, e.g., Berman v. Durkin*, 2017 WL 1215814, at *7 (" 'the law is well-settled that informal means of communicating and pursuing a grievance, even

with senior prison officials, are not sufficient under the PLRA.' ") (*quoting* Timmons v. Schriro, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ). [22] Under these circumstances, *Neal v. Goord* and its progeny would not require the complaint to be dismissed as prematurely filed. [23]

**\*13** The court also notes that the defense counsel's delay in arguing that plaintiff's action should be dismissed as prematurely filed might well provide an independent basis for rejecting that argument. Defense counsel filed a summary judgment motion based on plaintiff's alleged failure to exhaust in September 2016 (Dkt. No. 50), which was denied in June 2017 (Dkt. No. 57). Defense counsel did not argue that this action was prematurely filed in connection with the summary judgment motion, but waited to make that argument at the exhaustion hearing in June 2018. By that time, the three-year statute of limitations would likely have run on plaintiff's claim regarding the incident in December 2014. Defense counsel's delay in arguing that plaintiff's complaint should be dismissed because it was filed prematurely, while perhaps not motivated by an intentional effort to prevent plaintiff from re-filing his action, may well

have that effect. While not necessary to support this court's rejection of the argument that this action was prematurely filed, defense counsel's delay in raising the issue further supports precluding the defendant's reliance on this argument.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that because the exhaustion remedies under the DOCCS Inmate Grievance Program were rendered unavailable to plaintiff with regard to grievances complaining of an alleged assault by defendant Nolan on December 4, 2014, his remaining claim in this action is not barred by the Prison Litigation Reform Act based upon a failure to exhaust administrative remedies. And it is further

**ORDERED**, that this matter be set down for trial on plaintiff's remaining claim of excessive force against defendant Nolan.

### All Citations

Slip Copy, 2018 WL 4732778

### Footnotes

1    My summary of *Williams* tracks that of Magistrate Judge Stewart in *Berman v. Durkin*, No. 9:13-CV-136 (LEK/DJS), 2017 WL 1215814, at *8 (N.D.N.Y. Mar. 10, 2017), (Rep't-Rec.), *adopted*, 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017).

2    *Smith v. Kelly*, *Bailey*, and *Nelson* were all decided before *Ross*, and applied the *Hemphill* factors. However, given that "unavailability" is a common and critical element of the legals standards stated in both in the *Hemphill* line of cases and in *Ross*, the reasoning of the earlier cases with respect to the burden of production and the ultimate burden of proof remain sound after *Ross*.

3    Plaintiff, while on keeplock status, was entitled to be released from his cell for one hour per day for recreation, during which time he would have had access to the facility mailbox. However, he testified that he did not request to be released for recreation while on keeplock status. (Tr. at 72-73, 76). Plaintiff would have been allowed to shower while on keeplock status, but a defense witness, Sgt. LaValley, testified that plaintiff may not have had an opportunity to place mail in the facility mailbox while being escorted to or from his keeplock cell for the purpose of showering. (Tr. at 160, 165-66).

4    A discussed below, inmate Jefferson's declaration did not mention any involvement in mailing plaintiff's first grievance. (Tr. 77).

5    Pending completion of the deposition transcript, plaintiff's counsel summarized inmate Jefferson's testimony on this point in his recent letter brief. (Dkt. No. 95). Defense counsel belatedly filed a supplemental submission, which stressed Jefferson's lack of recollection, but did not contradict plaintiff's counsel's summary of the deposition testimony. (Dkt. No. 96; 8/10/2018 Text Minute Entry).

6    As a result, plaintiff was seen by a DOCCS nurse on December 11th, who reported that plaintiff had a swollen right ankle. (Def.'s Ex. 25 (Am. Compl.), Dkt. No. 19 at 9 & Ex. S-1 to Am. Compl., Dkt. No. 19-22 at 55).

7    The court incorrectly referred to Exhibits A through C as defense exhibits during the hearing, but they were plaintiff's exhibits.

**8**    There are three dates on the DOCCS FOIL form. It appears plaintiff filed his FOIL request on December 15th, was advised on December 23rd that his request was being reviewed, and notified on December 26th that no record of his grievance existed. (Def.'s Ex. 12; Tr. at 33-34).

**9**    It is not clear from the DOCCS response when in January plaintiff filed this FOIL request. As discussed further below, plaintiff's original complaint in this action, dated January 7, 2015, was filed with the court on January 14th. (Def.'s Ex. 14).

**10**    Plaintiff also stated that he did not attempt to communicate directly with CORC about the fact that his grievances had not been filed, because prior efforts to communicate with CORC about other grievance issues resulted in direction to raise his issues at the facility level first. (Tr. at 42). Rachel Sequin, the CORC Assistant Director, confirmed that an inmate who made an inquiry or complaint to CORC that was not made in the context of an appeal of a grievance **filed** at the facility, would be directed to first raise the issue with staff at the facility. (Tr. at 118).

**11**    Plaintiff's omission, in early pleadings, of inmate Jefferson's role in mailing the December 4, 2015 grievance could reflect plaintiff's reluctance to implicate his neighbor in arguably circumventing the keeplock restrictions on plaintiff. But, for the reasons stated above, the court finds that plaintiff's arguably belated disclosure of inmate Jefferson's role does not undermine the credibility of plaintiff's explanation as to how the first grievance was submitted.

**12**    The plaintiff identified a copy of an initial, unrelated grievance that he submitted, but that was not received by the IGP. (Def.'s Ex. 5). Plaintiff successfully resubmitted that grievance, after being advised, in response to an inquiry to the IGP Supervisor, that the IGP did not have the first grievance. (Def.'s Exs. 6-7).

**13**    Sgt. LaValley also testified that grievances were perceived by DOCCS officials as an important outlet for inmates, and suggested that there was no motivation for DOCCS employees to attempt to interfere with inmate access to grievances. (Tr. at 183). However, officials at Clinton demonstrated little interest in following up on plaintiff's FOIL requests or complaints that his grievances had gone missing. Ms. Gregory testified that the IGP would not have taken any further action with respect to plaintiff's two FOIL requests, which indicated that he attempted to file two grievances that were never received. And, plaintiff testified that there was no apparent follow-up by the Deputy Superintendent for Security, to whom the Superintendent delegated the responsibility to investigate plaintiff's January 23, 2015 complaint.

**14**    The court recognizes the burden of eliciting such proof from witnesses, other than defendant Nolan, many years after the events at issue. The court also acknowledges that few such witnesses would have current recollections of relevant events. However, when a plaintiff credibly meets his burden of production with respect to the unavailability of the grievance process in the particular circumstances he faced, the defendants may not be able to meet their ultimate burden of proof with respect to the affirmative defense of failure to exhaust with general evidence about what procedures were on the books with respect to grievances and mail. *See, e.g., Nelson v. Plumley*, 2015 WL 4326762, at *8-9.

**15**    Plaintiff in *Nelson v. Plumley* was confined in the SHU, which meant he could only submit a grievance by handing it to a correction officer. As noted above, the plaintiff in this case was on keeplock status, and was able to give his grievance to an inmate in the neighboring cell to place in the facility mail box. *Nelson v. Plumley* is arguably distinguishable from this case because Nelson's SHU confinement created a more obvious mechanism for correction officers to prevent the filing of a grievance. However, given that plaintiff in this case documented that he made two unsuccessful efforts to file a grievance through the facility mail box (whereas Nelson only made one attempt from his SHU cell), this court still finds *Nelson v. Plumley* instructive authority supporting my finding that defendant did not meet his burden of proof in this case.

**16**    In *Moreau v. Peterson*, 672 F. App'x 119 (2d Cir. 2017), the Second Circuit affirmed a dismissal of civil rights claims for failure to exhaust, even though the plaintiff claimed that he was prevented from doing so, because his argument was "inconsistent with the fact that he filed grievances for other claims in the same time period, and those grievances were processed fully." *Id.* at 3 n.1. A review of the District Court's opinion in *Moreau* shows that plaintiff provided "no evidence" of filing grievances related to the claims in question, all of which occurred after the last grievance that was attached to the complaint. *Moreau v. Peterson*, No. 7:14-CV-201, 2015 WL 4272024, at *7 (S.D.N.Y. July 13, 2015). As discussed in my prior Report-Recommendation (at 11-12), this case is distinguishable from *Moreau* because of the corroborating documentation submitted by plaintiff.

**17**    Magistrate Judge Peebles, in *Nelson v. Plumley*, anticipated the Second Circuit's decision in *Williams*. 2015 WL 4326762, at *9 ("In the absence of any evidence that would explain what happened to plaintiffs January grievances, and in light of plaintiff's credible testimony, I find that the IGP was effectively rendered unavailable to plaintiff when his grievances were lost after a corrections officer picked them up from his SHU cell.").

**18**    In *Medina v. Napoli*, 725 F. App'x at 53-54, the Second Circuit followed *Williams* in a case involving a SHU inmate, but absent the additional circumstance of a transfer to a different facility, which might have further complicated the inmate's ability to file a grievance.

19  As noted above, Sgt. LaValley testified that, while an inmate on keeplock status at Clinton would have limited access to the facility mailbox, officers would likely "frisk" the inmate and could decide whether or not to allow the plaintiff to place an item in the facility mailbox. (Tr. at 160). Thus, at least in the Clinton facility, officer control over an keeplocked inmate's ability to mail a grievance is not dramatically different than for a SHU inmate.

20  Defendants' post-hearing submission cites other cases that would limit *Williams* to its particular facts. (Dkt. No. 87, at 3-6). Many of these cases are inapposite to this case because, unlike plaintiff Coleman, the inmate plaintiffs in the cited cases had offered no documentary corroboration of prior efforts to file a grievance, or admitted that they never actually submitted an initial grievance. *See, e.g., Engles v. Dougherty*, No. 9:14-CV-1185 (TJM/ATB), 2017 WL 6466309, at *5 (N.D.N.Y. Aug. 22, 2017) (Rep't-Rec.), *adopted sub nom. Engles v. Souza*, 2017 WL 6463074 (N.D.N.Y. Dec. 18, 2017); *Johnson v. Fraizer*, No. 16-CV-6096, 2016 WL 7012961, at *4 n.5 (W.D.N.Y. Dec. 1, 2016); *White v. Velie*, 709 F. App'x 35, 36-38 (2d Cir. 2017); *Scott v. Kastner-Smith*, 298 F.Supp.3d 545, 554-55 (W.D.N.Y. 2018); *Pridgen v. Beatie*, No. 9:16-CV-535 (DNH/CFH), 2018 WL 1402049, at *7-8 (N.D.N.Y. Jan. 17, 2018) (Rep't-Rec.), *adopted*, 2018 WL 1394146 (N.D.N.Y. Mar. 19, 2018). Other cases cited by defense counsel do not support the application of *Williams* to this case because the plaintiffs in those cases actually filed initial grievances and defaulted on subsequent steps in the exhaustion process. *See, e.g., Rawls v. Rosenfield*, No. 9:16-CV-582 (LEK/CFH), 2017 WL 7050648, at *7-9 (N.D.N.Y. Nov. 28, 2017), (Rep't-Rec.), *adopted*, 2018 WL 542249 (N.D.N.Y. Jan. 23, 2018); *Anderson v. Pedalty*, No. 14-CV-192, 2016 WL 8116154, at *5 (W.D.N.Y. Dec. 6, 2016) (Rep't-Rec.), *adopted*, 2017 WL 387085 (W.D.N.Y. Jan. 27, 2017).

21  The defendants in *Berman* ultimately withdrew their affirmative defense of failure to exhaust prior to an exhaustion hearing. See N.D.N.Y. Civil Action No. 9:13-CV-136, (Dkt. No. 208).

22  A letter to the facility Superintendent would not have been the appropriate mechanism for plaintiff to appeal his grievance, which fell under the rules for harassment grievances, which are supposed to be addressed by the Superintendent in the first instance.

23  It might have been clearer that this action was not prematurely filed if plaintiff had waited at least 45 days after the alleged assault to submit his complaint. By that time, according to Rachel Sequin, the CORC Assistant Director who testified at the hearing, plaintiff would have been foreclosed from filing a grievance or a requesting leave to file an untimely grievance. (*See* Tr. at 120-21; Defendant's Exhibit 20, DOCCS Directive # 4040, § 701.6(g) ). However, given the holding in *Williams* that DOCCS procedures do not establish an intelligible mechanism for appealing a grievance that is not filed by the facility, plaintiff had no meaningful guidance as to how he should proceed once his two efforts to file his grievance were unsuccessful. In the absence of clear guidance in the DOCCS procedures that plaintiff might have been able to pursue other meaningful relief with respect to a grievance for up to 45 days after the alleged assault, his complaint should not be dismissed for filing the complaint when he did.

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 2729263
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John HAMLET, Plaintiff,
v.
P. STOTLER et al., Defendants.

9:17-cv-0939 (GLS/TWD)
|
Signed 04/27/2018

**Attorneys and Law Firms**

JOHN HAMLETT, 08-A-0598, Green Haven
Correctional Facility, P.O. Box 4000, Stormville, New
York 12582, pro se.

HON. ERIC T. SCHNEIDERMAN, OF COUNSEL:
KATIE E. VALDER, ESQ., Assistant Attorney General,
Attorney General of the State of New York, The Capitol,
Albany, New York 12224, Attorney for Defendants.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**\*1** This *pro se* civil rights action commenced pursuant
to 42 U.S.C. § 1983 by Plaintiff John Hamlet, an inmate
in the custody of the New York State Department of
Corrections and Community Supervision ("DOCCS"),
has been referred for Report and Recommendation by
the Hon. Gary L. Sharpe, Senior U.S. District Judge,
pursuant to 28 U.S.C. § 636(b) and Northern District of
New York Local Rule ("L.R.") 72.3(c).

Plaintiff filed his complaint in this *pro se* § 1983 action
alleging retaliation in violation of his First Amendment
rights and excessive force in violation of his rights under
the Eighth Amendment, together with a motion for leave
to proceed *in forma pauperis* ("IFP Application"), on
August 24, 2017. (Dkt. Nos. 1, 2.) In a Decision and Order
filed October 11, 2017, Judge Sharpe granted Plaintiff's
IFP Application, and upon initial review of the complaint
in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28
U.S.C. § 1915A(b), Judge Sharpe dismissed Plaintiff's

retaliation claims. (Dkt. No. 11 at 10. [1]) Plaintiff's
excessive force claim survived initial review. *Id.*

The matter is now before the Court on the motion
of remaining Defendants Clinton Correctional Facility
("Clinton") Sergeant Patrick Stotler ("Stotler"), and
Clinton Corrections Officers Joseph Collins ("Collins")
and John Doe, for summary judgment pursuant to
Federal Rule of Civil Procedure 56. (Dkt. No. 16.)
Defendants seek summary judgment on the ground
that Plaintiff failed to exhaust available administrative
remedies before commencing the action. *See id.* Plaintiff
has responded in opposition to the motion claiming that
administrative exhaustion was unavailable to him and
Defendants have filed reply papers. (Dkt. Nos. 20, 23.)

For reasons explained below, the Court recommends that
Defendants' motion for summary judgment on exhaustion
grounds be denied.

**I. BACKGROUND**

**A. Alleged Use of Excessive Force**
Plaintiff alleges that on the morning of September 10,
2014, while he was housed at Clinton, he was stopped by
multiple officers while on his way to an Inmate Liaison
Committee meeting as a representative of C-Block. (Dkt.
No. 1 at 4.) Plaintiff claims to have been pat frisked and
taken back to C-Block where he was placed in the shower
area. *Id.* Plaintiff was thereafter placed in front of his
cell while it was searched by Officer Stickney. (Dkt. No.
1 at 4.) Stickney came out of the cell with a weapon,
which Plaintiff claims was planted, in his hand and called
Defendant Stotler. *Id.* Stotler and Defendant Collins then
escorted Plaintiff to the Clinic First Floor room to strip
frisk him. *Id.* Defendant Doe, who identified himself to
Plaintiff as "D. White-Cracker," joined the frisk and all
three of them allegedly assaulted Plaintiff. *Id.* Plaintiff
claims that Collins punched him in the back in the area
of his left kidney as Plaintiff was facing the wall with his
legs spread and his hands on the wall, causing Plaintiff
to defecate. *Id.* at 5. Stotler, Collins, and Doe punched
Plaintiff in the back of the head. *Id.* Plaintiff was then
taken down to the floor with his arms and legs and torso
twisted in different directions by Stotler and Collins. *Id.*
Plaintiff was then kicked, punched, and hit with a night
stick multiple times by Doe and was kicked and punched
by Stotler and Collins while Collins straddled him bending

his wrist and fingers, twisting his ankle, and exposing his rib area to be hit by Doe. *Id.*

**\*2** Plaintiff was lifted to his feet and Stotler left the room. *Id.* With feces on his backside, Plaintiff was told to strip and squat while the officers laughed. *Id.* Stotler returned with clean underwear and Plaintiff was permitted to clean himself. *Id.* Plaintiff was told to sit in the "boss chair" and was then choked, leaving him with a sore throat and jaw. *Id.* Collins threatened that if Plaintiff told the nurse anything they would kill him. *Id.*

Plaintiff was then taken to E-Block and placed in a cell for ten minutes before being taken to the Special Housing Unit ("SHU"). *Id.* According to Plaintiff, he sustained a lump on his head behind his ear and broken left rib in addition to the sore throat during the alleged assault by Defendants. *Id.*

**B. Grievances**

In his complaint, Plaintiff alleges he filed numerous grievances at Clinton after the alleged assault and sent complaints to the Clinton Superintendent. (Dkt. No. 1 at 6.) In his affidavit in opposition to Defendants' motion, Plaintiff states that he wrote his first of two grievances regarding the assault and lack of medical treatment on September 10, 2014, the day of the assault. (Dkt. No. 20-2 at 1.) The September 10, 2014, grievance, which is annexed to Plaintiff's affidavit in opposition, complained about the planting of a weapon in his cell and the subsequent assault by the "escorting Sergeant, Officer Collins, and another Unknown Named Officer." *Id.* at 4. Plaintiff also complained of being denied medical care despite likely having broken ribs and suffering from dizzy spells. *Id.* Plaintiff asked that he be moved for his safety and be provided a camcorder, that he be given medical treatment, and that the officers be punished. *Id.* Plaintiff stated he wanted to file criminal charges against Defendants. *Id.* The grievance indicates copies were sent to Richard Langone, Esq., Clinton Superintendent Racette, and DOCCS Commissioner Anthony Annucci. *Id.*

Plaintiff's second grievance, dated September 19, 2014, was more detailed regarding the retaliatory reasons for the alleged assault, the assault itself, injuries sustained by Plaintiff, and the lack of medical care for his injuries. *Id.* at 7. The grievance indicates that copies were sent to the New York State Commission of Correction and the Clinton County Sheriff's Office. *Id.* at 9. Plaintiff states in

his affidavit that he gave the grievances to the corrections officers on rounds to pick up mail in SHU unit 14 where he was housed following the alleged assault, as was the procedure at Clinton. *Id.* at 1.

Plaintiff was transferred from Clinton to Southport Correctional Facility ("Southport") on September 30, 2014. (Dkt. Nos. 16-5 at 3; 16-9 at 3.) A week later, on October 7, 2014, Plaintiff was transferred from Southport to Five Points Correctional Facility ("Five Points"). (Dkt. Nos. 16-9 at 3; 16-7 at 3.) On October, 24, 2014, while housed at Five Points, Plaintiff wrote to the Clinton Inmate Grievance Program ("IGP") supervisor requesting a number for his September 10, 2014, grievance. (Dkt. No. 23-2 at 4.) Plaintiff wrote in the letter that he had filed a grievance with the IGP regarding the September 10, 2014, assault and had sent the Superintendent a copy. *Id.* He noted in the letter that an investigation had been started by the Inspector General but that he had not received a number for the grievance he filed. *Id.* Plaintiff copied Richard Langone, Esq., on the letter. *Id.*

In an October 30, 2014, memorandum, Clinton IGP Supervisor Christine Gregory ("Gregory") wrote "[t]he last grievance on file for DIN# 08A0598 for the year 2014 was filed on 7/9/14. There is no grievance on file for you concerning an incident of 9/10/14." *Id.* at 6. Plaintiff responded to Gregory's memorandum on November 11, 2014. *Id.* at 8. Plaintiff wrote that he had filed many more grievances since July 9, 2014, and he attached copies of his September 10 and September 19, 2014, grievances regarding the September 10, 2014, alleged assault. *Id.* at 8.

**\*3** In his letter, Plaintiff asked Gregory to file the two grievances so that he could exhaust his administrative remedies on the assault claim. *Id.* Plaintiff also requested that a September 9, 2014, grievance regarding his religious beliefs which he had previously submitted to the IGP office be filed. Gregory responded by memorandum of November 24, 2014, acknowledging receipt of the three grievances sent by Plaintiff and informing Plaintiff that "[i]n accordance with Directive # 4040 Section 701.5(a) (1): ***Filing a complaint ... The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility***." Therefore, your complaints are being returned to you to submit to the IGP office at your present facility. Copies will not (sic) retained in this office." (emphasis in original). *Id.* at 14.

Defendants have submitted evidence in support of their motion establishing that there are no IGP records showing that Plaintiff filed any grievance regarding the September 10, 2014, alleged assault by Defendants while he was at Clinton, Southport, or Five Points. (Dkt. Nos. 16-5 at ¶ 14; 16-7 at ¶ 14; 16-9 at ¶ 14; 23-1 at ¶ 7; 23-2 at 2. [2]) Defendants have also submitted evidence establishing that there was no record of an appeal to CORC of any grievance related to the assault. (Dkt. Nos. 16-11 at ¶ 15; 16-12 at 2-3.)

## II. APPLICABLE SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56; see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Conclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

A party opposing summary judgment is required to submit admissible evidence. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] ... may rely only on admissible evidence.") (citation and internal quotation marks omitted). A plaintiff's verified complaint is to be treated as an affidavit. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit ... and therefore will be considered in determining whether material issues of fact exist....") [3] (citations omitted).

In *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005), the Second Circuit reminded that on summary judgment motions "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." "To defeat summary judgment ... nonmoving parties 'may not rely on conclusory allegations or unsubstantiated speculation.' " *Jeffreys*, 426 F.3d at 554 (citation and internal quotation marks omitted). "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id.* (citation and internal quotation marks omitted). "[T]o satisfy Rule 56(e), affidavits must be based upon 'concrete particulars,' not conclusory allegations." *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (citation omitted). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

**\*4** In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding pro se, the court is obliged to "read [the pro se party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP/JCF), 1999 WL 983876 at \*3 (S.D.N.Y. Oct. 28, 1999) [4] (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) ).

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

### A. Legal Standard for Exhaustion Under the PLRA

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake, —— U.S. ——, 136 S.Ct. 1850, 1854-55, 195 L.Ed.2d 117 (2016).* "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly. *Jones*, 549 U.S. at 218, 127 S.Ct. 910 (citing *Woodford v. Ngo*, 548 U.S. 81, 88, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) ); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly") (internal quotations omitted). In New York State prisons, DOCCS has a well-established three-step IGP. *See* N.Y. Comp. Codes R. & Regs. tit. 7 ("7 NYCRR"), § 701.5.

First, an inmate must file a complaint with the facility IGP clerk within twenty-one days of the alleged occurrence. *Id.* § 701.5(a)(1). A representative of the facility's IGRC has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id.* § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id.* § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are

forwarded directly to CORC for a decision under the process applicable to the third step. *Id.* § 701.5(c)(3)(I).

**\*5** Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id.* § 701.5(d)(1)(I). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

Grievances claiming employee harassment, including claims of excessive force, "are of particular concern to the administration of [DOCCS] facilities," and subject to an expedited procedure whereby the grievance goes directly to the facility superintendent. *Id.* § 701.8; *see, e.g., Torres v. Carry*, 691 F.Supp.2d 366 (S.D.N.Y.) (Section 701.8 has been found applicable to claims of excessive force). The superintendent is required to initiate an in-house investigation by higher ranking supervisory personnel; request an investigation by the inspector general's office; or request an investigation by the New York State Police Bureau of Investigation if the superintendent determines that criminal activity may be involved. *Id.* at 701.8(d).

A grievance referred to the superintendent and determined to be an allegation of harassment, may not be withdrawn and must be addressed by the superintendent. *Id.* at 701.8(d). The superintendent is required to render a decision on the grievance within twenty-five calendar days, and extensions may be granted only with the consent of the grievant. *Id.* at 701.8(f). If the superintendent fails to respond within the required twenty-five days, the grievant may appeal the grievance to CORC by "filing a notice of decision to appeal (form #2133) with the inmate grievance clerk." *Id.* at 701.8(g).

Generally, if a prisoner has failed to properly follow each of the required steps of the above-described grievance procedure, including receiving a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies and is barred from commencing a federal lawsuit. *Woodford*, 548 U.S. at 93, 126 S.Ct. 2378; *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001) (inmate commencing litigation before receiving a decision from CORC does not satisfy PLRA's requirement that administrative remedies be exhausted before filing suit), *overruled on the other grounds, Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12; *Martin, II v. Niagara County Jail*, No. 05-CV-868 (JTC), 2012 WL 3230435, at * 6 (W.D.N.Y. Aug. 6, 2012) (inmate who fails to exhaust

his administrative remedies is barred from commencing a federal lawsuit).

Because failure to exhaust is an affirmative defense, defendants bear the burden of showing by a preponderance of the evidence that a plaintiff has failed to exhaust his available administrative remedies. *See Murray v. Palmer*, No. 9:03-CV-1010 (GTS/GHL), 2010 WL 1235591, at *4 (N.D.N.Y. Mar. 31, 2010); *Bailey v. Fortier*, No. 09-CV-0742 (GLS/DEP), 2012 WL 6935254, at *6 (N.D.N.Y. Oct. 4, 2012) (the party asserting failure to exhaust bears the burden of proving its elements by a preponderance of the evidence).

**B. Plaintiff's Failure to Exhaust**

Plaintiff has averred that he submitted the September 10 and 19, 2014, grievances regarding the assault to the officers making mail rounds while he was in SHU at Clinton. (Dkt. No. 20-2 at 4, 7.) The undisputed record evidence establishes that there is no record of those grievances having been filed at Clinton, Southport, or Five Points, or appealed to CORC. (Dkt. Nos. 16-5 at ¶ 14; 16-7 at ¶ 14; 16-9 at ¶ 14; 16-11 at ¶ 15; 16-12 at 2-323-1 at ¶ 7; 23-2 at 2.) Therefore, the Court finds that Plaintiff failed to exhaust his administrative remedies under the DOCCS IGP before commencing this lawsuit. *See Woodford*, 548 U.S. at 93, 126 S.Ct. 2378; *Id.* §§ 701.8(f) and (g).

**C. Availability of the DOCCS IGP with Respect to Plaintiff's Alleged Assault by Defendants**

**\*6** A prisoner's failure to exhaust does not end a court's exhaustion review. While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S.Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S.Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]") (quotations marks and citations omitted). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S.Ct. at 1859 (quotations and internal citations omitted).

To guide courts in the "availability" analysis, in *Ross*, the Supreme Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. When one of the three circumstances is found, "an inmate's duty to exhaust 'available' remedies does not come into play." *Id.* at 1859. Once a defendant has satisfied the burden of establishing a failure to exhaust, the plaintiff must establish that the IGP was unavailable to him. *See Jones*, 549 U.S. at 216, 127 S.Ct. 910.

The Court finds that the question of availability in this case is governed by the Second Circuit decision in *Williams v. Corr. Officer Priatno*, 829 F.3d 118 (2d Cir. 2016), in which the Court held that the opacity of 7 NYCRR § 708.1(g) rendered the DOCCS IGP procedure unavailable to the plaintiff inmate and found that the plaintiff had exhausted his administrative remedies by giving his grievance to the corrections officer. As in this case, the inmate plaintiff in *Williams* claimed to have drafted a grievance complaining of an assault by corrections officers and given it to a corrections officer for delivery to the IGP office because he was in SHU. *Id.* at 120-21. The plaintiff in *Williams*, like Plaintiff herein, was transferred to another facility before hearing anything regarding the grievance he had given to corrections officers for filing. *Id.* As in this case, it was undisputed in *Williams* that the inmate plaintiff never received a response to the unfiled grievance and did not appeal the grievance to CORC under 7 NYCRR § 701.8(g). *Id.* at 125.

The Second Circuit acknowledged in *Williams* that under *Id.* § 701.8(g), the DOCCS regulation relevant in both *Williams* and this case, an inmate may appeal a grievance "to the next step" if he does not receive a timely response from the Superintendent. *Williams*, 829 F.3d at 124. The Court concluded, however, that:

Even if Williams technically could have appealed his grievance, we conclude that the regulatory scheme providing for that appeal is "so opaque" and "so confusing that ... no reasonable prisoner can use [it]." *Ross*, 136 S.Ct. at 1859 (quoting Tr. of Oral Arg. 23). The regulations simply do not contemplate the situation in which Williams found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance.

**\*7** *Id.* Accepting Williams' allegation that the officer to whom he had given the grievance did not file it, the Court found:

> Under that circumstance, the regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies. On their face, the regulations only contemplate appeals of grievances that were actually filed. For example, if the grievance had never been filed, the superintendent would never have received it and the timeline for her to provide a response within 25 days of "receipt of the grievance" would never have been triggered. NYCRR tit. 7, § 701.8(f). In turn, the textual provision allowing a grievant to appeal to the CORC would never have come into effect. *See Id.* 701.8(g) ("If the Superintendent fails to respond within the required 25 day calendar day time limit the grievant may appeal his/her grievance to CORC.") Accordingly, the regulations give no guidance whatsoever to an inmate whose grievance was never filed.

*Id.* The Court noted in *Williams* that the obscurity of the regulation was compounded by Williams transfer to another facility approximately two weeks after having given the grievance to the corrections officer. *Id.* at 126.

Plaintiff in this case, as in *Williams*, does not rest his claim that he gave two grievances to Clinton corrections officers for filing on a mere conclusory assertion to that effect. *See Hicks v. Adams*, 692 Fed.Appx. 647 (2d Cir. 2017) (contrasting *Williams* in which plaintiff had followed up with the superintendent on the grievance he had given to a corrections officer for filing, with the conclusory assertion by plaintiff in *Hicks* that his appeals were not transmitted by the prison staff without alleging any facts regarding when the appeals were submitted, to whom, and what, if any, steps he took to follow up on the grievance). Plaintiff herein followed up on his September 10, 2014, grievance with an October 24, 2014, letter to Gregory at Clinton

and a subsequent letter to her on November 11, 2014, enclosing the two grievances relating to the assault for filing after being informed by her that no grievances had been filed. (Dkt. No. 20-2 at 11, 15.)

In response to Plaintiff's opposition, Defendants submitted Gregory's November 24, 2014, memorandum returning the three grievances Plaintiff had sent to her for filing on November 11, 2014, including his September 10 and 19, 2014, grievances regarding the assault, and advising him they had to be filed in the facility in which he was then being housed. (Dkt. No. 23-2 at 14.) In her reply declaration, Gregory states that Plaintiff nonetheless never properly submitted any grievance with regard to the assaults. The Court finds that the direction given to Plaintiff to file the grievances at Five Points where he was then held does not render *Williams* inapplicable in this case. Gregory's memorandum regarding the proper place for filing grievances regarding matters that had occurred at another facility does nothing to clarify § 708.1(g) with respect to appealing to CORC from Plaintiff's unfiled and undecided grievances of September 10 and 19, 2014, that he claims were given to corrections officers for filing while he was still at Clinton.

**\*8** Furthermore, under the DOCCS IGP, Plaintiff was required to file his grievance within twenty-one days of the occurrence of the incident being grieved. *See id.* § 701.5(a)(1). The alleged assault on Plaintiff by Defendants occurred on September 10, 2014, rendering his September 10 and 19, 2014, grievances timely. By the time the Plaintiff learned from Gregory's October 30, 2014, memorandum that no grievances had been filed regarding the assault, not only had the twenty-one day deadline expired, but the forty-five day limit on requesting an extension of time to file a grievance based upon mitigating circumstances had expired as well. *See id.* § 701.6(g)(1)(i)(a). There is nothing in the summary judgment record suggesting that had Plaintiff filed the grievances at Five Points after October 30, 2014, they would not have been rejected as untimely under the regulations.

Based upon the foregoing, the Court recommends that motion for summary judgment of Defendants Stotler, Collins, and Doe on the grounds that Plaintiff failed to exhaust his administrative remedies be denied. (Dkt. No. 16).

**WHEREFORE,** it is hereby

**RECOMMENDED** that Defendant's motion for summary judgment on exhaustion grounds (Dkt. No.16) be **DENIED**; and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam) ); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**All Citations**

Slip Copy, 2018 WL 2729263

Footnotes

1    Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

2    Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs.

3    The Court finds that Plaintiff's complaint in this case was adequately verified under 28 U.S.C. § 1746 by use of the language "I declare under penalty of perjury that the foregoing is true and correct." (Dkt. No. 1 at 7.)

4    The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

5    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**End of Document**                                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 2727875
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John HAMLETT, Plaintiff,
v.
Sergeant STOTLER et al., Defendants.

9:17-cv-939 (GLS/TWD)
|
Signed 06/06/2018

**Attorneys and Law Firms**

FOR THE PLAINTIFF: John Hamlett, 08-A-0598, Green Haven Correctional Facility, P.O. Box 4000, Stormville, NY 12582, pro se.

FOR THE DEFENDANTS: HON. BARBARA D. UNDERWOOD, OF COUNSEL: KATIE E. VALDER, Assistant Attorney General, New York Attorney General, The Capitol, Albany, NY 12224.

## ORDER

Gary L. Sharpe, Senior District Judge

**\*1** On April 27, 2018, Magistrate Judge Thérèse Wiley Dancks issued an Order and Report-Recommendation (R&R), which recommends the denial of defendants' motion for summary judgment. (Dkt. No. 26.) Pending before the court is defendants' objection to the R&R.[1] (Dkt. No. 27.)

As stated in their objection, defendants "reassert the arguments set forth in their previously filed motion for summary judgment and subsequent reply." (*Id.* at 1.) The substance of defendants' objection is a rehashing of arguments raised in the briefing considered by Judge Dancks, more specifically, in their reply memorandum of law. Objections of this variety are general and warrant review for clear error only. *See Almonte v. N. Y. State Div. of Parole*, No. Civ. 904CV484, 2006 WL 149049, at \*5-6 (N.D.N.Y. Jan. 18, 2006). After careful consideration of the R&R, the court finds no clear error and adopts the R&R, (Dkt. No. 26), in its entirety.

Accordingly, it is hereby

**ORDERED** that the Order and Report-Recommendation (Dkt. No. 26) is **ADOPTED** in its entirety; and it is further

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that defendants' application for an exhaustion hearing (Dkt. No. 27 at 3) is **GRANTED**; and it is further

**ORDERED** that the exhaustion hearing and associated issues are **REFERRED** to Judge Dancks for the issuance of a Report and Recommendation; and it is further

**ORDERED** that the Clerk provide a copy of this Order to the parties in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2018 WL 2727875

Footnotes

1    While defendants' main objective is to persuade the court to grant their summary judgment motion, they alternatively seek an exhaustion hearing and some affiliated discovery, which the court construes as a new motion. (Dkt. No. 27 at 3.) Even though defendants' summary judgment motion is denied as filed, the alternate relief requested—an exhaustion hearing—is granted and the matter is referred to Judge Dancks for an exhaustion hearing and any briefing she deems necessary to frame the issues before or after such hearing.

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2019 Thomson Reuters. No claim to original U.S. Government Works.    1

KeyCite Yellow Flag - Negative Treatment

Declined to Follow by Torrence v. Pesanti, D.Conn., January 10, 2003

1999 WL 1288679
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Carter HOWARD, 95–A–1559, Plaintiff,

v.

Glenn S. GOORD, Commissioner, Frank Heddly,
Superintendent, Gerald A. Wells, Deputy
Supt. of Security, Dennis Breslin, Deputy
Supt. of Programs, Dr. Jamshid Tehrany, Dr.
Jennifer Mitchell, Head Doctor, Individually
and in Their Official Capacities, Defendants.

No. 98–CV–7471 (FB).
|
Dec. 28, 1999.

**Attorneys and Law Firms**

Carter Howard, Attica Correctional Facility, Attica, New
York, for the Plaintiff, pro se.

Eliot Spitzer, Attorney General of the State of New York,
By: Tiffany M. Foo, Associate Attorney General, New
York, New York, for the Defendants.

*MEMORANDUM AND ORDER*

BLOCK, J.

**\*1** Plaintiff Carter Howard ("Howard"), an inmate in
a New York State correctional facility, brings this civil
rights action *pro se* pursuant to 42 U.S.C. §§ 1983, 1985,
2201 and 2202, alleging that prison officials who allegedly
failed to provide him with adequate medical care and
to protect him from attacks by other inmates violated
his Eighth and Fourteenth Amendment rights. He seeks
damages and injunctive relief, as well as attorney's fees.
Defendants Glenn S. Goord ("Goord"), Frank Heddly
("Heddly"), Gerald A. Wells ("Wells"), Dennis Breslin
("Breslin"), Jamshid Tehrany ("Tehrany") and Jennifer
Mitchell ("Mitchell") are employees of the New York
State Department of Corrections ("DOCS"). They move
pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure to dismiss the complaint for failure to exhaust
administrative remedies and, alternatively, for failure to
state a claim.

BACKGROUND

The following facts are drawn from the complaint:
Beginning in 1995, Howard was incarcerated in the
DOCS Arthur Kill Correctional Facility ("Arthur Kill")
in Staten Island, New York. He suffers from sleep apnea,
a medical condition which makes breathing when lying
down difficult, and makes him snore very loudly. On
numerous occasions, while Howard was sleeping, other
inmates threw items at him and hit him in order to
make him stop snoring. Several times, corrections officers
awakened him to stop his snoring. On other occasions,
Howard fought with inmates who complained about his
snoring. Howard was repeatedly transferred to different
housing units in order to remove him from abusive
inmates, but each time, the inmates in his new unit
complained about his snoring and threw objects at him
during the night.

In April 1995, Howard began to complain to the prison
medical staff about his snoring. In June 1997, Howard
saw a University of Staten Island hospital specialist
who recommended corrective surgery, but required that
Howard lose weight before undergoing surgery. Howard
requested that prison doctors place him in a therapeutic
weight loss program, but they failed to do so.

Since 1995, Howard has made numerous oral and written
complaints to prison officers and officials about his
snoring-related problems with other inmates, and since
1997, about his failure to have surgery and to be
put into a weight loss program. The complaint does
not describe the Arthur Kill grievance process or state
whether Howard used all of the available grievance
procedures; instead, it describes specific examples of
Howard's efforts to obtain relief. For example, he wrote
letters to Goord, the DOCS Commissioner; Heddly, the
Arthur Kill Superintendent; and G. Wells, the Arthur
Kill Deputy of Security. In September 1997, he filed
an administrative grievance against Tehrany, a prison
doctor, for failing to process the paperwork needed to
arrange for the surgery. On September 23, 1997, the
Grievance Committee recommended that he be seen by
the medical staff and sent for outside hospital treatment,
although, for some unexplained reason, Howard appealed

this decision to the Inmate Grievance Program Central Office Review Committee.

**\*2** On September 29, 1997, Lester Wright, the DOCS Chief Medical Officer, responded to Howard's letter to Goord, writing: "You are on a sleep-apnea study program at the local hospital. The recommendation from this study will be reviewed by the facility medical director and the appropriate plan of care will be implemented." Complaint, Exhibit C. On December 9, 1997, Margaret Wyke ("Wyke"), the DOCS Regional Health Service Administrator, wrote to Howard, stating: "Please be advised that the outside consultants at Staten Island University Hospital have determined that you must lose weight before they can consider surgery. You will be called for counseling and education regarding a weight loss program by the health staff at Arthur Kill." Complaint, Exhibit F. On December 25, 1997, Howard wrote to Wyke to advise her of his condition and treatment, and stated: "The purpose of this letter is to alert all administrative body [sic], facility officials, of the potential law suit [sic] if another incident takes place before this minor operation is performed." Complaint, Exhibit F–1. On March 18, 1998. Breslin, a DOCS staff member, wrote to Howard, stating: "I have been advised by the Medical Department that you are as of this point scheduled for an operation to deal with your snoring problem. Nurse Halderman has told me that you have been advised to lose a significant amount of weight in order to relieve the snoring situation. Your failure to comply with this medical advice is prolonging the snoring problem." Complaint, Exhibit G. Howard also wrote to the New York State Education Department to complain about Mitchell, the principal doctor at Arthur Kill.

## DISCUSSION

Under the Prison Litigation Reform Act ("PLRA"), which "Congress adopted with the principal purpose of deterring frivolous prisoner lawsuits and appeals," *Nicholas v. Tucker,* 114 F.3d 17, 20 (2d Cir.1997), a court may, on the motion of a party, dismiss a prisoner's complaint regarding prison conditions because the plaintiff has failed to exhaust his or her administrative remedies, *see* 42 U.S.C. § 1997e(a), or because the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a party who is immune from such relief,[1] *see*

42 U.S.C. § 1997e(c). *See also Harris v. Gunderman,* 30 F.Supp.2d 664, 665 (S.D.N.Y.1999) (granting defendants' motion to dismiss without prejudice for failure to exhaust administrative remedies); *Cruz v. Jordan,* __ F.Supp .2d __, 98–CV–0363, 1999 WL 557519, at \*11 (S.D.N.Y. July 28, 1999) (on defendants' motion to dismiss for failure to exhaust, staying action pending exhaustion of administrative remedies).[2] When a defendant raises a prisoner/plaintiff's failure to comply with the PLRA's exhaustion requirement, the failure is properly assessed as an affirmative defense. *See Jenkins,* 179 F.3d at 28–29 ("Because, under the PLRA, a prisoner must exhaust administrative remedies before filing a § 1983 suit, ... a defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements."). In assessing the applicability of this defense, the Court may be required to evaluate both legal and factual issues:

> **\*3** Whether an administrative remedy was available to a prisoner in a particular prison or prison system, and whether such remedy was applicable to the grievance underlying the prisoner's suit, are not questions of fact. They either are, or inevitably contain, questions of law. Where administrative remedies are created by statute or regulation affecting the governance of prisons, the existence of the administrative remedy is purely a question of law. The answer depends on the meaning of the relevant statute or regulation. Even where a grievance procedure is informally established by the warden of the prison and therefore not ascertainable by examination of statutes and regulations, the existence of the procedure may be a matter of fact, but whether it qualifies as an administrative remedy that must be exhausted under Section 1997e(a) is a question of law. *Id.* Additionally, the Court must consider what, if any, administrative remedies the prisoner/plaintiff pursued as to each of his or her claims.

The party who may benefit from an affirmative defense bears the burden of proof. *See FDIC v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994); *see also Infinity Broadcast Corp. v. Kirkwood,* 150 F.3d 104, 107 (2d Cir.1998). However, the opposing party may defeat the affirmative defense by demonstrating that "there is an absence of evidence to support an essential element of a defense." *Giammettei,* 34 F.3d at 54–55, or may delay the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined. *See Castro*

*v.. United States,* 34 F.3d 106, 112 (2d Cir.1994); *see also Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1535–38 (2d Cir.1997).

If, in assessing an affirmative defense raised by a defendant in a motion to dismiss before trial, the Court must consider matters outside of the complaint, the Court must convert the motion to dismiss to one for summary judgment. *See Blissett v. Coughlin,* 66 F.3d 531, 538 (2d Cir.1995) ("[I]t is incumbent upon defendant to plead, and ultimately develop, [the affirmative] defense during pretrial proceeding so that trial court can determine which claims, if any, may be disposed of by summary judgment, or, at least, which facts material to [the affirmative] defense must be presented to a jury to determine its applicability once case has gone to trial."); *Morelli v. Cedel,* 141 F.3d 39, 45 (2d Cir.1999) ("Consideration of matters outside the pleadings converts the defendant's motion to dismiss into a summary judgment motion."). If the Court converts a motion to dismiss to one for summary judgment, it must endeavor to provide the parties with adequate notice about the conversion and the consequences of summary judgment. *See Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 621 (2d Cir.1999); *c.f. Sawyer v. American Fed. of Gov't Employees, AFL–CIO,* 180 F.3d 31, 34–36 (2d Cir.1999). In particular, a *pro se* party must be advised that all assertions of material fact in the movants' affidavits and other papers will be taken as true by the district court unless the *pro se* litigant contradicts those factual assertions in one or more affidavits made on personal knowledge containing facts that would be admissible in evidence, or by submitting other materials as provided in Rule 56(e) of the Federal Rules of Civil Procedure. *See McPherson v. Coombe,* 174 F.3d 276, 281 (2d Cir.1999). Accordingly, the litigant's affidavits should "raise a genuine issue of fact as to every material element of the claim [and defense] and thereby preserve the case for trial." *Id.* Should issues of genuine material fact be raised, they will be evaluated by a factfinder at trial. *See Vital,* 168 F.3d at 621.

**\*4** Before assessing the merits of the present defendants' exhaustion defense, the Court notes that one purpose of the administrative exhaustion requirement is to help prisons address those prisoners' concerns which are best handled at the administrative level. *See Cruz,* 1999 WL 557519, at \*8 ("[A] requirement that administrative remedies first be exhausted gives the prison an opportunity to halt violative practices and

take ameliorative steps to mitigate damages." (citations omitted)). Such procedures may help avoid extensive litigation. *Id.* at \*4 (noting testimony in PLRA legislative history which stated that "grievance procedures at the prison level could eliminate much litigation at the district court level" (citation omitted)). For example, in this case, it appears that the prison's medical officers were prepared to address the plaintiff's concerns by placing him in a weight-loss program, but for some reason not evident in the present record, failed to do so. While the Court does not express an opinion as to the merits of the plaintiff's case, it does advise the parties that its initial assessment of this action leads it to believe that the plaintiff's concerns can be addressed through the prompt and direct action of prison authorities, and without the full litigation of this action. Accordingly, the Court urges the defendants to assess carefully the underlying medical and protection concerns raised by the plaintiff and determine what, if any, action prison authorities should take before this litigation proceeds further.

Upon the Court's initial review of Howard's complaint, it cannot readily dismiss the complaint on the ground that it is frivolous, malicious, or otherwise without merit; accordingly, the Court concludes that it is most efficacious to evaluate the defendants' exhaustion defense. However, the complaint and the parties' submissions do not explain the nature of the grievance procedures available to Howard, and do not provide sufficient evidence upon which the Court may determine whether Howard exhausted his administrative remedies. Should the parties be unable to resolve this matter among themselves without the further involvement by the Court, the Court will require additional submissions in order to decide the exhaustion issue.

The Court puts the plaintiff on the following specific notice:

> The Court exercises its inherent power to manage this case and converts the defendants' motion to dismiss on the ground of exhaustion to a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This means that the Court may decide this issue without a trial, based on written materials, submitted in support of the motion. THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT OPPOSE THIS MOTION by filing

your own sworn statement or other papers in opposition as required by Rule 56(e). An affidavit is a sworn statement of fact based on personal knowledge that would be admissible in evidence at trial. The full text of Rule 56 is enclosed with this decision.

**\*5** In short, Rule 56 provides that you may NOT oppose summary judgment simply by relying upon the allegations in your complaint. Rather, you must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising issues of fact for trial. Any witness statements, which may include your own statements, must be in the form of affidavits. You may submit affidavits that were prepared specifically in response to the defendants' motion for summary judgment.

Any issue of fact that you wish to raise in opposition to the motion for summary judgment must be supported by affidavits or by other documentary evidence contradicting the facts asserted by the defendant. If you do not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by the defendant, the Court may accept the defendants' factual assertions as true. Judgment may then be entered in defendants' favor without a trial.

### CONCLUSION

The Court orders that: 1) within forty-five days of the date of this order, the defendants are to submit documentary evidence and a memorandum of law as to the nature of the grievance procedures that were available to Howard, and the extent to which the defendants claim he failed to comply with those procedures; and 2) within forty-five days of the date the defendants' submissions are filed, the plaintiff is to respond, in accordance with the express notice set forth above. Pending further evaluation of the exhaustion issue, the remainder of the defendants' motion is held in abeyance.

SO ORDERED.

Rule 56 Summary Judgment.
(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days

from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

(c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

**\*6** (d) Case Not Fully Adjudicated on Motion. If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

(e) Form of Affidavits; Further Testimony; Defense Required, Supporting and and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed

by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

(f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or

depositions to be taken or discovery to be had or may make such other order as is just.

(g) Affidavits Made in Bad Faith. Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 1288679

Footnotes

1   The PLRA allows the Court to dismiss the complaint on any of these grounds without requiring administrative exhaustion. *See* 42 U.S.C. § 1997e(c)(2); *Jenkins v. Haubert,* 179 F.3d 19, 23 (2d Cir.1999).

2   The Court may also dismiss such a complaint on its own motion if the prisoner has failed to exhaust his or her administrative remedies. *See Snider v. Melindez,* 97–2803, __ F.3d __, 1999 WL 1114693, at [*]4 (2d Cir. Dec. 8, 1999) ("In view of Section 1997e(a)'s command ..., we can perceive no reason why a court should be prohibited from dismissing actions in violation of this mandate on its own motion."). If the Court moves to dismiss, it would likely give the prisoner/plaintiff an opportunity to respond. *See Bazrowx v. Scott,* 136 F.3d 1053, 1054–55 (5th Cir.1998) (a district court erred in failing to give plaintiff notice of the court's intention to dismiss his suit pursuant to 42 U.S.C. § 1997e(c), but error was harmless because dismissal was without prejudice); *see also Lugo v. Keane,* 15 F.3d 29, 30–32 (2d Cir.1994) (as a general rule, plaintiff must be given notice of court's motion to dismiss).

Case 9:16-cv-01174-NAM-DEP    Document 123    Filed 05/24/19    Page 74 of 107
Murray v. Palmer, Not Reported in F.Supp.2d (2010)
2010 WL 1235591

KeyCite Yellow Flag - Negative Treatment
Distinguished by Arnett v. Shojaie, C.D.Cal., November 8, 2011
2010 WL 1235591
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.

James MURRAY, Plaintiff,
v.
R. PALMER; S. Griffin; M. Terry;
F. Englese; Sergeant Edwards; K.
Bump; and K.H. Smith, Defendants.

No. 9:03-CV-1010 (GTS/GHL).
|
March 31, 2010.

**Attorneys and Law Firms**

James Murray, Malone, NY, pro se.

Bosman Law Office, AJ Bosman, Esq., of Counsel, Rome, NY, for Plaintiff.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Timothy Mulvey, Esq., James Seaman, Esq., Assistant Attorneys General, of Counsel, Albany, NY, for Defendants.

*DECISION and ORDER*

Hon. GLENN T. SUDDABY, District Judge.

**\*1** The trial in this prisoner civil rights action, filed *pro se* by James Murray ("Plaintiff") pursuant to 42 U.S.C. § 1983, began with an evidentiary hearing before the undersigned on March 1, 2010, regarding the affirmative defense of seven employees of the New York State Department of Correctional Services-R. Palmer, S. Griffin, M. Terry, F. Englese, Sergeant Edwards, K. Bump, and K.H. Smith ("Defendants")-that Plaintiff failed to exhaust his available administrative remedies, as required by the Prison Litigation Reform Act, before filing this action on August 14, 2003. At the hearing, documentary evidence was admitted, and testimony

was taken of Plaintiff as well as Defendants' witnesses (Darin Williams, Sally Reams, and Jeffery Hale), whom Plaintiff was able to cross-examine through *pro bono* trial counsel. At the conclusion of the hearing, the undersigned indicated that a written decision would follow. This is that written decision. For the reasons stated below, Plaintiff's Second Amended Complaint is dismissed because of his failure to exhaust his available administrative remedies.

**I. RELEVANT LEGAL STANDARD**

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U .S.C. § 1997e. The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle,* 534 U.S. 516, 524-25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In this regard, exhaustion serves two major purposes. First, it protects "administrative agency authority" by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Woodford v. Ngo,* 548 U.S. 81, 89, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b) "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial review." *Woodford,* 548 U .S. at 89. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532.

In accordance with the PLRA, the New York State Department of Correctional Services ("DOCS") has made available a well-established inmate grievance program. 7 N.Y.C.R.R. § 701.7. Generally, the DOCS Inmate Grievance Program ("IGP") involves the following three-step procedure for the filing of grievances. 7 N.Y.C.R.R.

2010 WL 1235591

§§ 701.5, 701.6(g), 701.7. [1] *First,* an inmate must file a complaint with the facility's IGP clerk within a certain number of days of the alleged occurrence. [2] If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. A representative of the facility's inmate grievance resolution committee ("IGRC") has a certain number of days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within a certain number of days of receipt of the grievance, and issues a written decision within a certain number of days of the conclusion of the hearing. *Second,* a grievant may appeal the IGRC decision to the facility's superintendent within a certain number of days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within a certain number of days of receipt of the grievant's appeal. *Third,* a grievant may appeal to the central office review committee ("CORC") within a certain number of days of receipt of the superintendent's written decision. CORC is to render a written decision within a certain number of days of receipt of the appeal.

**\*2** Moreover, there is an expedited process for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees. 7 N.Y.C.R.R. § 701.8. In the event the inmate seeks expedited review, he or she may report the misconduct to the employee's supervisor. The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the superintendent for review. Under the regulations, the superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house," by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations. An appeal of the adverse decision of the superintendent may be taken to the CORC as in the regular grievance procedure. A similar "special" procedure is provided for claims of discrimination against an inmate. 7 N.Y.C.R.R. § 701.9.

It is important to note that these procedural requirements contain several safeguards. For example, if an inmate could not file such a complaint within the required time period after the alleged occurrence, he or she could apply to the facility's IGP Supervisor for an exception to the time limit based on mitigating circumstances. If that application was denied, the inmate could file a complaint complaining that the application was wrongfully denied. [3] Moreover, any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can-and must-be appealed to the next level, including CORC, to complete the grievance process. [4] There appears to be a conflict in case law regarding whether the IGRC's nonresponse must be appealed to the superintendent where the plaintiff's grievance was never assigned a grievance number. [5] After carefully reviewing this case law, the Court finds that the weight of authority appears to answer this question in the affirmative. [6] The Court notes that, if the plaintiff adequately describes, in his appeal to the superintendent, the substance of his grievance (or if the plaintiff attaches, to his appeal, a copy of his grievance), it would appear that there is something for the superintendent to review.

It is also important to note that DOCS has a *separate and distinct* administrative appeal process for inmate misbehavior hearings:

    A. For Tier III superintendent hearings, the appeal is to the Commissioner's designee, Donald Selsky, D.O.C.S. Director of Special Housing/Inmate Disciplinary Program, pursuant to 8 N.Y.C.R.R. § 254.8;

    B. For Tier II disciplinary hearings, the appeal is to the facility superintendent pursuant to 7 N.Y.C.R.R. § 253.8; and

    C. For Tier I violation hearings, the appeal is to the facility superintendent or a designee pursuant to 7 N.Y.C.R.R. § 252.6.

**\*3** "An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered nongrievable." 7 N.Y.C.R.R. § 701.3(e)(1). Similarly, "an individual decision or disposition resulting from a disciplinary proceeding ... is not grievable." 7 N.Y.C.R.R. § 701.3(e)(2). However, "[t]he policies, rules, and procedures of any program or procedure, including those above, are grievable." 7 N.Y.C.R.R. § 701.3(e)(3); *see also* N.Y. Dep't Corr. Serv. Directive No. 4040 at III.E.

Case 9:16-cv-01174-NAM-DEP    Document 123    Filed 05/24/19    Page 76 of 107
Murray v. Palmer, Not Reported in F.Supp.2d (2010)
2010 WL 1235591

Generally, if a prisoner has failed to follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies. *Ruggiero v. County of Orange,* 467 F.3d 170, 175 (2d Cir.2006) (citing *Porter,* 534 U.S. at 524). However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004), *accord, Ruggiero,* 467 F.3d at 175. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill,* 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* [citations omitted]. Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* [citations and internal quotations omitted].

With regard to this third inquiry, the Court notes that, *under certain circumstances,* an inmate may exhaust his administrative remedies by raising his claim during a related *disciplinary proceeding. Giano v. Goord,* 380 F.3d 670, 678-79 (2d Cir.2004); *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004).[7] However, in essence, the circumstances in question include instances in which (1) the inmate reasonably believed that his "only available remedy" was to raise his claim as part of a tier disciplinary hearing,[8] *and* (2) the inmate articulated and pursued his claim in the disciplinary proceeding in a manner that afforded prison officials the time and opportunity to thoroughly investigate that claim.[9] Some district courts have found the first requirement not present where (a) there was nothing objectively confusing about the DOCS regulations governing the grievability of his claim,[10] (b) the inmate was specifically informed that the claim in question was grievable,[11] (c) the inmate separately

pursued the proper grievance process by filing a grievance with the IGRC,[12] (d) by initially alleging that he did appeal his claim to CORC (albeit without proof), the inmate has indicated that, during the time in question, he understood the correct procedure for exhaustion,[13] and/or (e) before and after the incident in question, the inmate pursued similar claims through filing a grievance with the IGRC.[14] Other district courts have found the second requirement not present where (a) the inmate's mention of his claim during the disciplinary hearing was so insubstantial that prison officials did not subsequently investigate that claim,[15] and/or (b) the inmate did not appeal his disciplinary hearing conviction.[16]

**\*4** Finally, two points bear mentioning regarding exhaustion. First, given that non-exhaustion is an affirmative defense, the defendant bears the burden of showing that a prisoner has failed to exhaust his available administrative remedies. *See, e.g., Sease v. Phillips,* 06-CV-3663, 2008 WL 2901966, \*4 (S.D.N.Y. July 25, 2008). However, once a defendant has adduced reliable evidence that administrative remedies were available to Plaintiff and that Plaintiff nevertheless failed to exhaust those administrative remedies, Plaintiff must then "counter" Defendants' assertion by showing exhaustion, unavailability, estoppel, or "special circumstances."[17]

Second, the Court recognizes that there is case law from within the Second Circuit supporting the view that the exhaustion issue is one of fact, which should be determined by a jury, rather than by the Court.[18] However, there is also case law from within the Second Circuit supporting the view that the exhaustion issue is one of law, which should be determined by the Court, rather than by a jury.[19] After carefully reviewing the case law, the Court finds that the latter case law-which includes cases from the Second Circuit and this District-outweighs the former case law.[20] (The Court notes that the latter case law includes cases from the Second Circuit and this District.)[21] More importantly, the Court finds that the latter cases are better reasoned than are the former cases. In particular, the Court relies on the reasons articulated by the Second Circuit in 1999: "Where administrative remedies are created by statute or regulation affecting the governance of prisons, ... the answer depends on the meaning of the relevant statute or regulation." *Snider v. Melindez,* 199 F.3d 108, 113-14 (2d Cir.1999). The Court relies also

on the several reasons articulated by Judge Richard A. Posner in a recent Seventh Circuit decision: most notably, the fact that the exhaustion-of-administrative-remedies inquiry does not address the merits of, or deadlines governing, the plaintiff's claim but an issue of "judicial traffic control" (i.e., what forum a dispute is to be resolved in), which is never an issue for a jury but always an issue for a judge. *See Pavey v. Conley,* 544 F.3d 739, 740-42 (7th Cir.2008) (en banc), *cert. denied,* --- U.S. ----, 129 S.Ct. 1620, 173 L.Ed.2d 995 (2009). The Court notes that the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits appear to agree with the ultimate conclusion of the Second and Seventh Circuits that the exhaustion issue is properly decided by a judge, not a jury. [22]

## II. ANALYSIS

As an initial matter, Plaintiff argues that he exhausted his administrative remedies regarding the claims at issue in this action, by filing a grievance regarding those claims, and then appealing the non-response to that grievance all the way to CORC. Because the Court rejects this argument based on the evidence adduced at the hearing, the Court proceeds to an analysis of the three-step exhaustion inquiry established by the Second Circuit.

### A. Availability of Administrative Remedies

**\*5** New York prison inmates are subject to an Inmate Grievance Program established by DOCS and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson,* 96-CV-5396, 2004 WL 324898, at \*4 (S.D.N.Y. Feb.20, 2004) (citing *Mojias v. Johnson,* 351 F.3d 606 (2d Cir.2003), and *Snider v. Melindez,* 199 F.3d 108, 112-13 [2d Cir.1999] ). There are different circumstances under which the grievance procedure is deemed not to have been available to an inmate plaintiff. *Hemphill,* 380 F.3d at 687-88. For example, courts have found unavailability "where plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative remedies." *Hargrove v. Riley,* 04-CV-4587, 2007 WL 389003, at \*8 (E.D.N.Y. Jan.31, 2007) (internal citations omitted). When testing the availability of administrative remedies in the face of claims that undue influence from prison workers has caused a plaintiff inmate to forego the formal grievance process, courts employ an objective test, examining whether "a similarly situated individual of ordinary firmness [would]

have deemed them available." *Hemphill,* 380F.3d at 688 (quotations and citations omitted); *see Hargrove,* 2007 WL 389003, at \*8.

Here, after carefully considering the evidence submitted at the hearing in this action on March 1, 2010, the Court finds that administrative remedies were "available" to Plaintiff during the time in question. The Court makes this finding for the following four reasons.

First, in his sworn Complaint (which has the force and effect of an affidavit), Plaintiff stated, "Yes," in response to the question, "Is there a prisoner grievance procedure at this facility ." (Dkt. No. 1, ¶ 4.a.) [23] Second, both Darin Williams (the corrections officer in charge of the special housing unit during the relevant time period) and Sally Reams (the Inmate grievance program supervisor during the relevant time period) testified credibly, at the exhaustion hearing, that there was a working grievance program at Great Meadow Correctional Facility during the time in question. (Hearing Tr. at 10, 12, 14-21, 40-54.) Third, Plaintiff testified, at the exhaustion hearing that, during this approximate time period (the August to November of 2000), he filed at least three other grievances Great Meadow Correctional Facility, to which he received responses from the inmate grievance clerk, the Superintendent, and CORC. (*Id.* at 154, 157-58, 169-70; *see also* Hearing Exs. D-4, D-5, P-8, P-13, P-14.) [24] Fourth, the Court finds the relevant portions of Plaintiff's hearing testimony regarding the grievance at issue in this action to be incredible due to various omissions and inconsistencies in that testimony, and his demeanor during the hearing. (*Id.* at 127-34.) [25]

### B. Estoppel

After carefully considering the evidence submitted at the hearing in this action on March 1, 2010, the Court finds that Defendants did not forfeit the affirmative defense of non-exhaustion by failing to raise or preserve it, or by taking actions that inhibited Plaintiff's exhaustion of remedies. For example, Defendants' Answer timely asserted this affirmative defense. (Dkt. No. 35, ¶ 17.) Moreover, Plaintiff failed to offer any credible evidence at the hearing that *Defendant* s in any way interfered with Plaintiff's ability to file grievances during the time in question. (Hearing Tr. at 127-34, 157-58, 169-70.) Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to

exhaust administrative remedies based on the actions (or inactions) of other individuals. [26]

**C. Special Circumstances**

**\*6** There are a variety of special circumstances that may excuse a prisoner's failure to exhaust his available administrative remedies, including (but not limited to) the following:

(1) The facility's "failure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals-which effectively rendered the grievance appeal process unavailable to him." *Sandlin v. Poole,* 575 F.Supp.2d 484, 488 (W.D.N.Y.2008) (noting that "[s]uch facts support a finding that defendants are estopped from relying on the exhaustion defense, as well as "special circumstances" excusing plaintiff's failure to exhaust");

(2) Other individuals' "threats [to the plaintiff] of physical retaliation and reasonable misinterpretation of the statutory requirements of the appeals process." *Clarke v. Thornton,* 515 F.Supp.2d 435, 439 (S.D.N.Y.2007) (noting also that "[a] correctional facility's failure to make forms or administrative opinions "available" to the prisoner does not relieve the inmate from this burden."); and

(3) When plaintiff tries "to exhaust prison grievance procedures[, and] although each of his efforts, alone, may not have fully exhausted, together his efforts sufficiently informed prison officials of his grievance and led to a thorough investigation of the grievance." *Hairston v. LaMarche,* 05-CV-6642, 2006 WL 2309592, at *8 (S.D.N.Y. Aug.10, 2006).

After carefully considering the issue, the Court finds that there exists, in this action, no "special circumstances" justifying Plaintiff's failure to comply with the administrative procedural requirements. Construed with the utmost of special leniency, Plaintiff's hearing testimony, and his counsel's cross-examination of Defendants' witnesses, raise the specter of two excuses for not having exhausted his available administrative remedies before he (allegedly) mailed his Complaint in

this action on August 14, 2003:(1) that exhaustion was not possible because of the administrative procedures that DOCS has implemented regarding inmate grievances; and/or (2) that an unspecified number of unidentified corrections officers (who are not Defendants in this action) somehow interfered with the delivery of his grievance and appeals. For example, Plaintiff testified at the exhaustion hearing that he handed his grievance and appeals to various corrections officers making rounds where he was being housed, and that, if his grievance and/or appeals were never received, it must have been because his letters were not properly delivered. (Hearing Tr. at 126-36.)

With regard to these excuses, the Court finds that, while these excuses could constitute special circumstances justifying an inmate's failure to exhaust his available administrative remedies in certain situations, [27] these excuses are not available to Plaintiff in the current action because, as stated in Part II.A. of this Decision and Order, the credible testimony before the Court indicates that Plaintiff did not hand his grievance and appeals to various corrections officers with regard to the claims in question. *See, supra,* Part II.A. of this Decision and Order. [28]

**\*7** For all these reasons, the Court finds that Plaintiff's proffered excuse does not constitute a special circumstance justifying his failure to exhaust his available administrative remedies before filing this action.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 10) is ***DISMISSED* in its entirety without prejudice** for failure to exhaust his available administrative remedies before filing this action, pursuant to the PLRA; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment for Defendants and close the file in this action.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 1235591

Footnotes

1  *See also White v. The State of New York,* 00-CV-3434, 2002 U . S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002).

2  The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

3  *Groves v. Knight,* 05-CV-0183, Decision and Order at 3 (N.D.N.Y. filed Aug. 4, 2009) (Suddaby, J.).

4  7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York,* 198 F.Supp.2d 546, 549 (S.D.N.Y.2002), *vacated and remanded on other grounds,* 380 F.3d 680 (2d Cir.2004); *see, e.g* ., DOCS Directive 4040 dated 8/22/03, ¶ VI.G. ("Absent [a time limit extension granted by the grievant], matters not decided within the time limits may be appealed to the next step."); *Pacheco v. Drown,* 06-CV-0020, 2010 WL 144400, at *19 & n. 21 (N.D.N.Y. Jan.11, 2010) (Suddaby, J.) ("It is important to note that any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process."), *accord, Torres v. Caron,* 08-CV-0416, 2009 WL 5216956, at *5 & n. 28 (N.D.N.Y. Dec.30, 2009) (Mordue, C.J.), *Benitez v. Hamm,* 04-CV-1159, 2009 WL 3486379, at *13 & n. 34 (N.D.N.Y. Oct.21, 2009) (Mordue, C.J.), *Ross v. Wood,* 05-CV-1112, 2009 WL 3199539, at *11 & n. 34 (N.D.N.Y. Sept.30, 2009) (Scullin, J.), *Sheils v. Brannen,* 05-CV-0135, 2008 WL 4371776, at *6 & n. 24 (N.D.N.Y. Sept.18, 2008) (Kahn, J.), *Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *15 & n. 46 (N.D.N.Y. June 20, 2008) (Hurd, J.), *McCloud v. Tureglio,* 07-CV-0650, 2008 WL 17772305, at *10 & n. 25 (N.D.N.Y. Apr. 15, 2008) (Mordue, C.J.), *Shaheen v. McIntyre,* 05-CV-0173, 2007 WL 3274835, at *14 & n. 114 (N.D.N.Y. Nov.5, 2007) (McAvoy, J.); *Nimmons v. Silver,* 03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.); *Gill v. Frawley,* 02-CV-1380, 2006 WL 1742738, at *11 & n. 66 (N.D.N.Y. June 22, 2006) (McAvoy, J.) ("[A]n inmate's mere attempt to file a grievance (which is subsequently lost or destroyed by a prison official) is not, in and of itself, a reasonable effort to exhaust his administrative remedies since the inmate may still appeal the loss or destruction of that grievance."); *Walters v. Carpenter,* 02-CV-0664, 2004 WL 1403301, at *3 (S.D.N.Y. June 22, 2004) ("[M]atters not decided within the prescribed time limits must be appealed to the next level of review."); *Croswell v. McCoy,* 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him.").

5  *Compare Johnson v. Tedford,* 04-CV-0632, 616 F.Supp.2d 321, 326 (N.D.N.Y.2007) (Sharpe, J.) ("[W]hen a prisoner asserts a grievance to which there is no response, *and it is not recorded or assigned a grievance number,* administrative remedies may be completely exhausted, as there is nothing on record for the next administrative level to review.") [emphasis in original, and citations omitted] *with Waters v. Schneider,* 01-CV-5217, 2002 WL 727025, at *2 (S.D.N.Y. Apr.23, 2002) (finding that, in order to exhaust his available administrative remedies, plaintiff had to file an appeal with the superintendent from the IGRC's non-response to his grievance, of which no record existed).

6  *See, e.g., Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *16, 18 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (finding that, in order to exhaust his available administrative remedies with regard to his grievance of August 30, 2000, plaintiff had to file an appeal with the superintendent from the IGRC's non-response to that grievance, which included a failure to acknowledge the receipt of the grievance and assign it a number); *Midalgo v. Bass,* 03-CV-1128, 2006 WL 2795332, at *7 (N.D.N.Y. Sept.26, 2006) (Mordue, C.J., adopting Report-Recommendation of Treece, M.J.) (observing that plaintiff was "requir[ed]" to seek an appeal to the superintendent, even though he never received a response to his grievance of April 26, 2003, which was never assigned a grievance number); *Collins v. Cunningham,* 06-CV-0420, 2009 WL 2163214, at *3, 6 (W.D.N.Y. July 20, 2009) (rejecting plaintiff's argument that his administrative remedies were not available to him where his grievance of March 20, 2004, was not assigned a grievance number); *Veloz v. New York,* 339 F.Supp.2d 505, 515-16 (S.D.N.Y.2004) (rejecting inmate's argument that the prison's grievance procedure had been rendered unavailable to him by the practice of prison officials' losing or destroying his grievances, because, *inter alia,* "there was no evidence whatsoever that any of [plaintiff's] grievances were filed with a grievance clerk," and he should have "appeal[ed] these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming"); *cf. Hernandez v. Coffey,* 582 F.3d 303, 305, 309, n. 3 (2d Cir.2009) ("Our ruling in no way suggests that we agree with Hernandez's arguments regarding exhaustion or justification for failure to exhaust [which included an argument that the Inmate Grievance Program was not available to him because, when

Murray v. Palmer, Not Reported in F.Supp.2d (2010)

2010 WL 1235591

he filed a grievance at the first stage of the Program, he received no response and his grievance was not assigned a grievance number].").

7    The Court recognizes that the Supreme Court's decision in *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), may have changed the law regarding possible exceptions to the exhaustion requirement (and thus the possibility that exhaustion might occur through the disciplinary process). Specifically, in *Woodford,* the Supreme Court held that the PLRA required "proper" exhaustion as a prerequisite to filing a section 1983 action in federal court. *Woodford,* 548 U.S. at 93. "Proper" exhaustion means that the inmate must complete the administrative review process *in accordance with the applicable procedural rules,* as a prerequisite to bringing suit in federal court. *Id.* at 88-103 (emphasis added). It is unclear whether *Woodford* has overruled any decisions that recognize "exceptions" to the exhaustion requirement. Out of special solicitude to Plaintiff, the Court will assume that *Woodford* has not overruled the Second Circuit's *Giano-Testman* line of cases.

8    *Giano,* 380 F.3d at 678 ("[W]hile Giano was required to exhaust available administrative remedies before filing suit, his failure to do so was justified by his reasonable belief that DOCS regulations foreclosed such recourse."); *Testman,* 380 F.3d at 696-98 (remanding case so that district court could consider, *inter alia,* whether prisoner was justified in believing that his complaints in the disciplinary appeal procedurally exhausted his administrative remedies because the prison's remedial system was confusing).

9    *Testman,* 380 F.3d at 696-98 (remanding case so that district court could consider, *inter alia.* whether prisoner's submissions in the disciplinary appeals process exhausted his remedies "in a substantive sense" by "afford[ing] corrections officials time and opportunity to address complaints internally"); *Chavis v. Goord,* 00-CV-1418, 2007 WL 2903950, at *9 (N.D.N.Y. Oct.1, 2007) (Kahn, J.) ("[T]o be considered proper, exhaustion must occur in both a substantive sense, meaning that prison officials are somehow placed on notice of an inmate's complaint, and procedurally, in that it must be presented within the framework of some established procedure that would permit both investigation and, if appropriate, remediation.") [citation omitted]. The Court joins the above-described two requirements in the conjunctive because the Second Circuit has recognized that mere notice to prison officials through informal channels, without more, does not suffice to satisfy the PLRA procedural exhaustion requirement. *See Macias v. Zenk,* No. 04-6131, 495 F.3d 37, at *43-44 (2d Cir.2007) (recognizing that *Woodford v. Ngo,* 548 U.S. 81 [2006], overruled *Braham v. Casey,* 425 F.3d 177 [2d Cir.2005], to the extent that *Braham* held that "informal complaints" would suffice to exhaust a claim).

10   *See, e.g., Reynoso v. Swezey,* 423 F.Supp.2d 73, 75 (W.D.N.Y.2006), *aff'd,* 238 F. App'x 660 (2d Cir.2007) (unpublished order), *cert. denied,* 552 U.S. 1207, 128 S.Ct. 1278, 170 L.Ed.2d 109 (2008); *Holland v. James,* 05-CV-5346, 2009 WL 691946, at *3 (S.D.N.Y. March 6, 2009); *Winston v. Woodward,* 05-CV-3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008); *cf. Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *5 & n. 23 (N.D.N.Y. July 11, 2007) (McAvoy, J.) (reciting this point of law in context of failure to appeal grievance determination to CORC).

11   *See, e.g., Johnson v. Barney,* 04-CV-10204, 2007 WL 2597666, at *2 (S.D.N.Y. Aug.30, 2007); *Reynoso,* 423 F.Supp.2d at 75-76.

12   *See, e.g., Reynoso,* 423 F.Supp.2d at 75 ("There is no evidence that plaintiff was confused or misled about the proper method for raising his claims. In fact, the record shows exactly the opposite: plaintiff did file a grievance about the incident. He simply failed to appeal the denial of that grievance to CORC."); *Tapp v. Kitchen,* 02-CV-6658, 2004 WL 2403827, at *9 (W.D.N.Y. Oct.26, 2004) ("In the instant case, however, plaintiff does not and cannot claim to have believed that his only available remedy was to raise his complaint as part of his disciplinary hearing, since he also filed a grievance with the Inspector General, and also claims to have filed both an inmate grievance and a separate complaint with the facility superintendent."); *cf. Muniz,* 2007 WL 2027912, at *5 & n. 23 ("Plaintiff's Complaint alleges facts indicating that he believed it necessary to file a grievance with the Gouverneur C.F. IGRC and to appeal the denial of that grievance to the Gouverneur C.F. Superintendent. Why would he not also believe it necessary to take the next step in the exhaustion process and appeal the Superintendent's decision to CORC?").

13   *See, e.g., Petrusch v. Oliloushi,* 03-CV-6369, 2005 WL 2420352, at *5 (W.D.N.Y. Sept.30, 2005) ("[A]s to his grievance, which is the subject of this lawsuit, plaintiff does not appear to be contending that he believed the Superintendent's denial constituted exhaustion, since by initially claiming that he did appeal to CORC, albeit without proof, he has demonstrated his knowledge of the correct procedure for exhaustion.").

14   *See, e.g., Benjamin v. Comm'r N.Y. State DOCS,* 02-CV-1703, 2007 WL 2319126, at *14 (S.D.N.Y. Aug.10, 2007) ("Benjamin cannot claim that he believed that appealing his disciplinary proceeding was the only available remedy at his disposal in light of the numerous grievances he has filed during his incarceration at Green Haven [both before and after the incident in question].."), *vacated in part on other grounds,* No. 07-3845, 293 F. App'x 69 (2d Cir.2008).

Murray v. Palmer, Not Reported in F.Supp.2d (2010)
Case 9:16-cv-01174-NAM-DEP    Document 123    Filed 05/24/19    Page 81 of 107

2010 WL 1235591

15  *See, e.g., Chavis,* 2007 WL 2903950, at *9 ("The focus of a disciplinary hearing is upon the conduct of the inmate, and not that of prison officials.... While the mention of a constitutional claim during plaintiff's disciplinary hearing could potentially have satisfied his substantive exhaustion requirement by virtue of his having notified prison officials of the nature of his claims, he did not fulfill his procedural exhaustion requirement [under the circumstances due to his] ... mere utterance of his claims during the course of a disciplinary hearing .... [T]here is nothing in the record to suggest that when the issues of interference with plaintiff's religious free exercise rights or alleged retaliation for having voiced his concerns were in any way investigated by prison officials.") [citations omitted].

16  *See, e.g., Colon v. Furlani,* 07-CV-6022, 2008 WL 5000521, at *2 (W.D.N.Y. Nov.19, 2008) ("Colon was found guilty of harassment based on a letter that he wrote to defendant Bordinaro, concerning some of the events giving rise to his failure-to-protect claim, but it does not appear that he appealed that disposition.... While under some circumstances an inmate may be able to satisfy the exhaustion requirement by appealing from a disciplinary hearing decision ..., plaintiff did not do so here, and this claim is therefore barred under the PLRA.") [citations omitted]; *Cassano v. Powers,* 02-CV-6639, 2005 WL 1926013, at *5 (W.D.N.Y. Aug.10, 2005) ("[E]ven assuming plaintiff believed that his proper recourse was to raise [his] complaint at his disciplinary hearing, rather than using the Inmate Grievance Program, he did not exhaust that process. That is, plaintiff has not provided any evidence that he appealed his Tier III hearing conviction. Since plaintiff did not pursue even the disciplinary appeal process, he can not have made submissions in the disciplinary process that were sufficient, in a substantive sense, to exhaust his remedies under § 1997e(a).") [internal quotation marks and citation omitted].

17  *See Hemphill,* 380 F.3d at 686 (describing the three-part inquiry appropriate in cases where a prisoner plaintiff plausibly seeks to "counter" defendants' contention that the prisoner failed to exhaust his available administrative remedies under the PLRA); *Verley v. Wright,* 02-CV-1182, 2007 WL 2822199, at *8 (S.D.N.Y. Sept.27, 2007) ("[P]laintiff has failed to demonstrate that the administrative remedies were not, in fact, 'actually available to him.' "); *Winston v. Woodward,* 05-CV-3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) (finding that the plaintiff "failed to meet his burden under *Hemphill* of demonstrating 'special circumstances' "); *see also Ramirez v. Martinez,* 04-CV-1034, 2009 WL 2496647, at *4 (M.D.Pa. Aug.14, 2009) ("In order to effectively oppose defendants' exhaustion argument, the plaintiff has to make a showing in regard to each of his claims."); *Washington v. Proffit,* 04-CV-0671, 2005 WL 1176587, at *1 (W.D.Va. May 17, 2005) ("[I]t is plaintiff's duty, at an evidentiary hearing, "to establish by a preponderance of the evidence that he had exhausted his administrative remedies or that any defendant had hindered or prevented him from doing so within the period fixed by the Jail's procedures for filing a grievance.").

18  *See, e.g., Lunney v. Brureton,* 04-CV-2438, 2007 WL 1544629, at *10 n. 4 (S.D.N.Y. May 29, 2007) ("There is certainly case law that supports the view that exhaustion should be determined by the Court rather than by a jury. As the Supreme Court has recently affirmed, however, exhaustion is an 'affirmative defense,' much like a statute of limitations defense. Where there are disputed factual questions regarding an affirmative defense such as a statute of limitations defense, the Second Circuit has stated that 'issues of fact as to the application of that defense must be submitted to a jury.' Thus, it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court."); *Finch v. Servello,* 06-CV-1448, 2008 WL 4527758, at *8 n. 5 (N.D.N.Y. Sept.29, 2008) (McAvoy, J.) (citing *Lunney* and noting that "it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court").

19  *See, e.g., Harrison v. Goord,* 07-CV-1806, 2009 WL 1605770, at *7 n. 7 (S.D.N.Y. June 9, 2009) (recognizing that "[t]here is authority ... for the position that where questions of fact exist as to whether a plaintiff has exhausted administrative remedies, such fact questions are for the Court, rather than a jury, to decide ...."); *Amador v. Superintend. of Dept. of Corr. Servs.,* 03-CV-0650, 2007 WL 4326747, at *5 n. 7 (S.D.N.Y. Dec.4, 2007) ("It is unclear whether factual disputes regarding the exhaustion defense should ultimately be decided by the court or by a jury.... [T]here is ... case law ... supporting the view that exhaustion should be determined by the court and not a jury."), *appeal pending,* No. 08-2079-pr (2d Cir. argued July 15, 2009).

20  *See, e.g., Mastroianni v. Reilly,* 602 F.Supp.2d 425, 438 (E.D.N.Y.2009) (noting that the magistrate judge held an evidentiary hearing "on the issue of exhaustion"); *Sease v. Phillips,* 06-CV-3663, 2008 WL 2901966, *3 n. 2 (S.D.N.Y. July 25, 2008) (finding that "the better approach is for the judge, and not the jury, to decide any contested issues of fact relating to the defense of failure to exhaust administrative remedies."); *Amador,* 2007 WL 4326747, at *5 n. 7 ("[T]here is ... case law, which in my view is more persuasive and on point, supporting the view that exhaustion should be determined by the court and not a jury. I find it proper that this issue be decided by the court."); *Enigwe v. Zenk,* 03-CV-0854, 2006 WL 2654985, at *4 (E.D.N.Y. Sept.15, 2006) (finding that, at the summary judgment "stage of the proceedings, a genuine question of fact exists with respect to whether [plaintiff] should be excused from exhausting his administrative remedies with regard to claims relating to his confinement at MDC Brooklyn," and therefore "direct[ing] that a hearing

be held" before a judge, to resolve this issue); *Dukes v. S.H.U. C.O. John Doe # 1,* 03-CV-4639, 2006 WL 1628487, at *6 (S.D.N.Y. June 12, 2006) (ordering an "evidentiary hearing [before a judge] on the issue of whether prison officials failed to assign grievance numbers to [plaintiff]'s grievances and, if so, whether that rendered further administrative remedies unavailable, estopped the Defendants from asserting non-exhaustion, or justified [plaintiff]'s failure to appeal to the CORC"); *Mingues v. Nelson,* 96-CV-5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb.20, 2004) ("The Court could have *sua sponte* dismiss[ed] this action as the record is unmistakeably clear that an appropriate administrative procedure was available to him, that he was required to exhaust his administrative remedies, and that he failed to do so as required by the PLRA.... In this case, plaintiff has been afforded notice and given an opportunity to respond to the exhaustion issue and his failure remains clear."); *Roland v. Murphy,* 289 F.Supp.2d 321, 323 (E.D.N.Y.2003) "[W]hether the plaintiff has exhausted his administrative remedies is a question for the Court to decide as a matter of law." [internal quotation marks and citation omitted]; *Evans v. Jonathan,* 253 F.Supp.2d 505, 509 (W.D.N.Y.2003) ( "[W]hether the plaintiff has exhausted his administrative remedies is a question for the Court to decide as a matter of law.").

21    *See, e.g., Snider v. Melindez,* 199 F.3d 108, 113-14 (2d Cir.1999) ("Whether an administrative remedy was available to a prisoner in a particular prison or prison system, and whether such remedy was applicable to the grievance underlying the prisoner's suit, are not questions of fact. They either are, or inevitably contain, questions of law. Where administrative remedies are created by statute or regulation affecting the governance of prisons, the existence of the administrative remedy is purely a question of law. The answer depends on the meaning of the relevant statute or regulation."), *accord, Mojias v. Johnson,* 351 F.3d 606, 608-11 (2d Cir.2003) (citing relevant language from *Snider v. Melindez,* and later stating that a district court could *sua sponte* dismiss a prisoner's civil rights complaint for failure to exhaust his available administrative remedies if it gave him notice and an opportunity to be heard); *DeBlasio v. Moriarty,* 05-CV-1143, Minute Entry (N.D.N.Y. filed Dec. 9, 2008) (McCurn, J.) (indicating that judge held pre-trial evidentiary hearing on whether plaintiff had exhausted administrative remedies before filing action); *Pierre v. County of Broome,* 05-CV-0332, 2007 WL 625978, at *1 n. 1 (N.D.N.Y. Feb.23, 2007) (McAvoy, J.) (noting that "[t]he court held an evidentiary hearing on October 25, 2006 concerning the issue of whether Plaintiff had exhausted administrative remedies"); *Hill v. Chanalor,* 419 F.Supp.2d 255, 257-59 (N.D.N.Y. March 8, 2006) (Kahn, J.) (*sua sponte* dismissing a prisoner's civil rights complaint, pretrial, for failure to exhaust his available administrative remedies after it gave him notice and an opportunity to be heard); *Raines v. Pickman,* 103 F.Supp.2d 552, 555 (N.D.N.Y.2000) (Mordue, J.) ("[I]n order for the Court to dismiss for failing to exhaust administrative remedies, the Court must be shown that such a remedy exists for an inmate beating in the grievance context. This is an issue of law for the Court to determine.").

22    *See Casanova v. Dubois,* 289 F.3d 142, 147 (1st Cir.2002); *Hill v. Smith,* 186 F. App'x 271, 273-74 (3d Cir.2006); *Mitchell v. Horn,* 318 F.3d 523, 529 (3d Cir.2003); *Anderson v. XYZ Corr. Health Servs., Inc.,* 407 F.3d 674, 682-83 (4th Cir.2005); *Dillon v. Rogers,* No. 08-30419, 2010 WL 378306, at *7 (5th Cir. Feb.4, 2010); *Taylor v. U.S.,* 161 F. App'x 483, 486 (6th Cir.2005); *Larkins v. Wilkinson,* 172 F.3d 48, at *1 (6th Cir.1998); *Husley v. Belken,* 57 F. App'x 281, 281 (8th Cir.2003); *Ponder v. Wackenhut Corr. Corp.,* 23 F. App'x 631, 631-32 (8th Cir.2002); *Wyatt v. Terhune,* 315 F.3d 1108, 1119-20 (9th Cir.2003), *cert. denied,* 540 U.S. 810 (2003); *Freeman v. Watkins,* 479 F.3d 1257, 1260 (10th Cir.2007); *Alloway v. Ward,* 188 F. App'x 663, 666 (6th Cir.2006); *Bryant v. Rich,* 530 F.3d 1368, 1373-76 (11th Cir.), *cert. denied,* --- U.S. ----, 129 S.Ct. 733, 172 L.Ed.2d 734 (2008).

23    The Court notes that, in his Complaint, Plaintiff also swore that his "grievance was denied." (Dkt. No. 1, ¶ 4.b.ii.) However, during the exhaustion hearing, Plaintiff testified that he never received a response to his grievance from any member of DOCS.

24    In addition, the documentary evidence adduced at the hearing establishes that, in actuality, Plaintiff filed ten other grievances during this time period (and several appeals from the denials of those grievances). The first of these grievances (Grievance Number GM-30651-00), filed on August 25, 2000, regarded Plaintiff's request for medications. (Hearing Exs. D-4, D-5.) The second of these grievances (Grievance Number GM-30691-00), filed on September 1, 2000, regarded Plaintiff's request for copies. (Hearing Ex. D-4.) The third of these grievances (Grievance Number GM-30729-00), filed on September 11, 2000, regarded the use of full restraints against Plaintiff. (*Id.; see also* Hearing Ex. P-14.) The fourth of these grievances, filed on October 19, 2000 (Grievance Number GM-30901-00), regarded Plaintiff's request for the repair of his cell sink. (Hearing Exs. D-4, D-5.) The fifth of these grievances (Grievance Number GM-30901-00), also filed on October 19, 2000, regarded Plaintiff's request for the clean up of his cell. (Hearing Ex. D-4.) The sixth of these grievances (Grievance Number GM-31040-00), filed on November 17, 2000, regarded the review of records. (*Id.*) The seventh of these grievances (Grievance Number GM-31041-00), also filed on November 17, 2000, regarded Plaintiff's request for medical attention. (*Id.; see also* Hearing Ex. P-13) The eighth of these grievances (Grievance Number GM-31048-00), filed on November 20, 2000, regarded the rotation of books. (Hearing Ex. D-14) The ninth of these grievances (Grievance

Number GM-31040-00), filed on November 27, 2000, regarded the review of records (and was consolidated with his earlier grievance on the same subject). (*Id.*) The tenth of these grievances (Grievance Number GM-31070-00), filed on November 27, 2000, regarded Plaintiff's eyeglasses. (*Id.*)

25    For example, Plaintiff was unable to identify the corrections officers to whom he handed his grievance and appeals for mailing. (*Id.* at 127-34.) Moreover, Plaintiff did not convincingly explain why the grievance and appeals at issue in this action did not make it through the mailing process, while his numerous other grievances and appeals did make it through the mailing process. (*Id.* at 154-171.) In addition, Plaintiff acknowledged that it was his belief, during this time period, that an inmate was not required to exhaust his administrative remedies in matters involving the use of excessive force; yet, according to Plaintiff, he decided to exhaust his administrative remedies on his excessive force claim anyway. (*Id.* at 148-49.)

26    *See Ruggiero v. County of Orange,* 467 F.3d 170, 178 (2d Cir.2006) (holding that defendants were not estopped from asserting the affirmative defense of non-exhaustion where the conduct plaintiff alleged kept him from filing a grievance-that he was not given the manual on how to grieve-was not attributable to the defendants and plaintiff "point[ed] to no affirmative act by prison officials that would have prevented him from pursuing administrative remedies"); *Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *19 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) ("I have found no evidence sufficient to create a genuine issue of triable fact on the issue of whether Defendants, *through their own actions,* have inhibited Plaintiff exhaustion of remedies so as to estop one or more Defendants from raising Plaintiff's failure to exhaust as a defense.") [emphasis in original]; *Shaheen v. McIntyre,* 05-CV-0173, 2007 WL 3274835, at *16 (N.D.N.Y. Nov.5, 2007) (McAvoy, J. adopting Report-Recommendation of Lowe, M.J.) (finding defendants not estopped from raising Plaintiff's non-exhaustion as a defense based on plaintiff's allegation "that [he] was inhibited (through non-responsiveness) by [ ] unnamed officials at Coxsackie C.F.'s Inmate Grievance Program (or perhaps the Grievance Review Committee), and Coxsackie C.F. Deputy Superintendent of Security Graham" because plaintiff's complaint and "opposition papers ... fail to contain any evidence placing blame on Defendants for the (alleged) failure to address his grievances and complaint letters"); *Smith v. Woods,* 03-CV-0480, 2006 WL 1133247, at *16 (N.D.N.Y. Apr.24, 2006) (Hurd, J. adopting Report-Recommendation of Lowe, M.J.) (finding that defendants are not estopped from relying on the defense of non-exhaustion because "no evidence (or even an argument) exists that any Defendant ... inhibit[ed] Plaintiff's exhaustion of remedies; Plaintiff merely argues that a non-party to this action (the IGRC Supervisor) advised him that his allegedly defective bunk bed was not a grievable matter."); *cf. Warren v. Purcell,* 03-CV-8736, 2004 WL 1970642, at *6 (S.D.N.Y. Sept.3, 2004) (finding that conflicting statements [offered by a non-party]-that the prisoner needed to refile [his grievance] and that the prisoner should await the results of DOCS's investigation-estopped the defendants from relying on the defense on non-exhaustion, or "[a]lternatively, ... provided ... a 'special circumstance' under which the plaintiff's failure to pursue the appellate procedures specified in the IGP was amply justified."); *Brown v. Koenigsmann,* 01-CV-10013, 2005 WL 1925649, at *1-2 (S.D.N.Y. Aug.10, 2005) ("Plaintiff does not assert that Dr. Koeingsmann personally was responsible for [the failure of anyone from the Inmate Grievance Program to address plaintiff's appeal]. [However,] *Ziemba [v. Wezner,* 366 F.3d 161 (2d Cir.2004) ] does not require a showing that Dr. Koenigsmann is personally responsible for plaintiff's failure to complete exhaustion [in order for Dr. Koenigsmann to be estopped from asserting the affirmative defense of failure to exhaust administrative remedies], as long as someone employed by DOCS is. If that reading of Ziemba is incorrect, however, ... then the circumstances here must be regarded as special, and as justifying the incompleteness of exhaustion, since a decision by CORC is hardly something plaintiff could have accomplished on his own.").

27    *See, e.g., Sandlin v. Poole,* 575 F.Supp.2d 484, 488 (W.D.N.Y.2008) (noting that "refusal to accept or forward plaintiff's appeals ... effectively render[s] the grievance appeal process unavailable to him").

28    The Court notes that, even if Plaintiff did (as he testified) hand to a corrections officer for mailing a letter to the Superintendent on September 13, 2000, appealing from the IGRC's failure to decide his grievance of August 22, 2000, within nine working days (i.e., by September 5, 2000), it appears that such an appeal would have been filed two days too late under DOCS Directive 4040, which requires that appeal to be filed within four working days of the IGRC's failure to decide his grievance (i.e., by September 11, 2000). (*See* Hearing Tr. 127-34; Hearing Ex. P-1, at 5-7 [attaching ¶¶ V.A, V.B. of DOCS Directive 4040, dated 6/8/98].)

---

**End of Document**    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 4326762
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jeffrey A. NELSON, Plaintiff,

v.

Bruce PLUMLEY, et al., Defendants.

No. 9:12–CV–422.
|
Signed July 14, 2015.

**Attorneys and Law Firms**

Keach Law Offices, One Pine West Plaza, Elmer R. Keach, Iii., Esq ., Maria K. Dyson, Esq., of Counsel, Albany, NY, for Plaintiff.

Hon. Eric T. Schneiderman, New York State Attorney General, The Capitol, Gregory J. Rodriguez, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

## DECISION & ORDER

THOMAS J. McAVOY, District Judge.

**\*1** This civil rights action pursuant to 42 U.S.C. § 1983 alleges violations of Plaintiffs constitutional rights as a New York State prison inmate. The action was referred to the Hon. David E. Peebles, United States Magistrate Judge, for a Report–Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). After previous motion practice, the Plaintiff's remaining claim is an excessive force claim against Defendants Berggren and Galani.

The Report–Recommendation, dated May 14, 2015, recommended that the Court find that Plaintiffs claims are not barred by the Prison Litigation Reform Act ("PLRA") based on a failure to exhaust administrative remedies, and that the matter be set down for trial. *See* dkt. # 83.

The Defendants filed timely objections to the Report–Recommendation. [1] When objections to a magistrate judge's Report–Recommendation are lodged, the Court makes a *"de novo* determination of those portions of the

report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b) (1). After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Having reviewed the record *de novo* and having considered the issues raised in the Defendants' objections, this Court has determined to accept and adopt the recommendation of Magistrate Judge Peebles for the reasons stated in the ReportRecommendation.

It is therefore

**ORDERED** that the Defendants' objections to the Report–Recommendation of Magistrate Jude Peebles, dkt. # 85, are hereby OVERRULED. The ReportRecommendation, dkt. # 83, is hereby ADOPTED, and:

1. The Court finds that the Plaintiff's excessive force claim is not barred by the PLRA based upon Plaintiff's exhaustion of available administrative remedies before commencing suit; and

2. The Court will set the matter down for trial by separate order.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

DAVID E. PEEBLES, United States Magistrate Judge.

This is a civil rights action brought by *pro se* plaintiff Jeffrey A. Nelson, a New York State prison inmate, pursuant to 42 U.S.C. § 1983, alleging that he was deprived of his civil rights by individuals employed at the prison facility in which he was confined at the relevant times. As a result of intervening motion practice, the only remaining cause of action pending stems from plaintiffs allegations that he was assaulted by the two remaining defendants, both of whom are corrections officers.

Among the issues raised in a recent summary judgment motion filed by defendants was whether plaintiff satisfied the requirement that he exhaust available administrative

remedies before commencing suit. Following a referral of the matter to me for consideration, I conducted an evidentiary hearing to address the question. Based upon the evidence adduced at that hearing, I conclude that plaintiff failed to exhaust available administrative remedies before commencing this action and recommend that he be excused from the exhaustion requirement. The following represent my recommended findings of fact and conclusions of law.

## I. *BACKGROUND*

**\*2** Plaintiff is a prison inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1 at 1. Although he is now confined elsewhere, at the time of the alleged assault that forms the basis of his remaining claim, Nelson was incarcerated in the Clinton Correctional Facility ("Clinton"), located in Dannemora, New York. *Id.* at 1, 4. Plaintiff alleges that on January 3, 2012, he was assaulted by defendants Bruce Plumley and Jeffrey Spear, both of whom are corrections officers at Clinton, without provocation, and that, as a result of the incident, he lost consciousness and suffered a concussion and a laceration near his right eye requiring stitches. [1] *Id.* at 4–7.

A New York State prison inmate who wishes to lodge complaints regarding prison conditions may do so by submitting a grievance to prison officials in accordance with the Inmate Grievance Program ("IGP") established by the DOCCS. The filing of internal grievances through the IGP is governed by DOCCS Directive No. 4040 and codified at 7 N.Y.C.R.R. Part 701. Exhs. P–38, D–1. The IGP is comprised of three steps. 7 N.Y.C.R.R. § 701.5; *Mingues v. Nelson,* No. 96–CV–5396, 2004 WL 234898, at \*4 (S.D.N.Y. Feb. 20, 2004). Ordinarily, an inmate must first submit "a complaint," or grievance, to the facility's IGP clerk within twenty-one days of the alleged occurrence giving rise to his complaint. [2] 7 N.Y.C.R.R. § 701.5(a). Relief from the twenty-one day time limit may be granted by the IGP supervisor based upon mitigating circumstances, provided, however, that "[a]n exception to the time limit may not be granted if the request was made more than 45 days after an alleged occurrence." *Id.* at 701.6(g)(1)(i)(a).

Once a grievance is lodged, the facility's Inmate Grievance Resolution Committee ("IGRC") is allotted up to sixteen

days to informally resolve the matter. 7 N.Y.C.R.R. § 701.5(b)(1). In the absence of such an informal resolution, the full IGRC must conduct a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2)(i). In the event a hearing is conducted, a decision must be provided to the grievant within two working days after the hearing is closed. *Id.* at § 701.5(b)(3)(i).

If dissatisfied with the IGRC's decision, a grievant may appeal to the facility superintendent within seven days after its receipt. 7 N.Y.C.R.R. § 701.5(c)(1). Unless the grievance involves the alteration or revision of a DOCCS policy or directive, the superintendent must then render a decision on the grievance appeal and transmit his decision to the inmate within twenty calendar days from the date the appeal is received. *Id.* at § 701.5(c)(3) (i)-(ii).

The third and final step of the IGP embodied in DOCCS Directive No. 4040 is an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be submitted within seven days after receipt of the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d) (1)(i). Once an appeal is taken, the CORC has thirty days within which to render its decision. *Id.* at § 701.5(d)(2)(ii).

**\*3** The IGP provides for expedited processing of grievances related to allegations of inmate harassment by DOCCS officials. 7 N.Y.C.R.R. § 701.8. Such grievances alleging harassment, including those alleging that an inmate has been assaulted by a staff member, are forwarded directly to the superintendent of the facility. 7 N.Y.C.R .R. § 701.8(c). The superintendent must render a decision within twenty-five days of receipt of the grievance. *Id.* at § 701.8(f). If the superintendent fails to respond within the required time, the inmate may then appeal to the CORC. *Id.* at § 701.8(g). An appeal of the superintendent's determination must be taken by the inmate to the CORC within seven days of receipt of the superintendent's response. *Id.* at § 701.8(h).

Plaintiff was confined in a special housing unit ("SHU") cell at Clinton immediately following the alleged assault by defendants Plumley and Spear. Dkt. No. 75 at 124. Addressing the procedure for the filing of grievances by SHU inmates, the IGP provides that, "[w]here available, SHU inmates shall use centrally located IGP deposit boxes to send grievance forms and IGP correspondence to the IGP office." 7 N.Y.C.R.R. § 701.7(b). The deposit boxes are required to remain locked, only certain individuals

2015 WL 4326762

may have access to them, and they must be emptied at least twice weekly. *Id.* IGRC representatives are also required to make regular rounds, including, at least once weekly, throughout a facility SHU to permit inmates to access the IGP. *Id.* at § 701.7(c).

In practice, the procedure at Clinton for the filing of grievances by SHU inmates does not strictly follow the protocol specified in Directive No. 4040. Instead, SHU inmates at that facility are required to submit their grievances through the prison mail system. [3] Dkt. No. 75 at 150. An inmate in the Clinton SHU must place his grievance in the mailbox used to collect all correspondence. *Id.* From there, the grievance is forwarded to the facility mailroom, where it is sorted and forwarded to the IGP supervisor's office. *Id.* at 150–51. In addition to use of the mail system, an inmate confined in the SHU can also hand a grievance to the grievance sergeant during one of his or her regular rounds among the facility's housing units. *Id.* at 151.

Plaintiff claims that on January 9, 2012, he authored a handwritten grievance complaining that he was assaulted by two corrections officers, who are not named in the document, and requesting that he "be provided with mental health treatment without torture[.]" Dkt. No. 75 at 14–15; Exh. P–7. According to plaintiff, he prepared a second handwritten grievance on January 10 or 11, 2012, in which he again complained of the alleged assault, and, in this grievance, named defendants Spear and Plumley as the offending officers. Dkt. No. 75 at 15–16; Exh. P–8. Both of those grievances, referred to in this report as "the January grievances," were prepared on plain paper, rather than utilizing the standard grievance form available to inmates. [4] Exhs. P–7, P–8. Plaintiff testified that he sent the January grievances through the prison mail system to Clinton IGP personnel and that an unidentified DOCCS corrections officer picked them up from his cell on January 12, 2012. Dkt. No. 75 at 15–16. According to prison personnel, however, neither of the grievances was ever received by the IGP supervisor or any other authorized IGP representative at Clinton. *Id.* at 36–37; Exh. P–21.

**\*4** In addition to the January grievances that he claims to have submitted, plaintiff sent written complaints concerning the alleged assault on January 3, 2012 to several agencies, including (1) a letter to the DOCCS Inspector General ("IG"), dated January 8, 2012, Exh. P–40; (2) a letter to the New York State Commissioner

of Corrections, dated January 8, 2012, Exh. P–4; (3) a letter to the New York State Commission on Quality Care, dated January 9, 2012, Exh. P–5; (4) a letter, dated January 9, 2012, to the Legal Aid Society; [5] and (5) a letter, dated January 9, 2012, to "Dr. C. Calley," identified by plaintiff as a "doctor practitioner" at Clinton, Exh. P–6. Dkt. No. 75 at 16–20. [6] It appears that all of those letters were received by the intended recipients. Exhs. P–9, P–10, P–12, P–14. Plaintiff received responses to his letters from the Legal Aid Society, dated January 19, 2012, Exh. P–10; the New York Commission of Correction, dated January 25, 2012, Exh. P–12; the Commission on Quality of Care and Advocacy for Person with Disabilities, dated January 31, 2012, Exh. P–14; and C. Calley who appears to be a nurse practitioner rather than a physician, dated January 17, 2012, Exh. P–9.

On January 20, 2012, plaintiff wrote to Thomas LaValley, the superintendent at Clinton, complaining that the hearing officer presiding over his disciplinary hearing, which occurred following the issuance of misbehavior reports to plaintiff regarding the incident on January 3, 2012, was "not administering the hearing in a fair manner." Exh. P–11; Dkt. No. 75 at 20–21. There was no reference in that letter to the January grievances. *See generally* Exh. P–11.

Plaintiff wrote to the IGP Supervisor at Clinton on January 27, 2012, enclosing a grievance alleging the deprivation of procedural due process in connection with the disciplinary hearing. Dkt. No. 75 at 27–28; Exh. P–13. The grievance was processed and assigned Grievance No. CL–61889–12. Exh. P–13. In the cover letter accompanying his grievance, Nelson requested the status of "[his] other two (2) grievance[s] dated 1–9–2012, and 1–10–2012[.]" Exh. P–13.

On February 7, 2012, Nelson wrote to the IGRC at Clinton enclosing a grievance appeal and again inquiring about the January grievances. [7] Dkt. No. 75 at 23; Exh. P–15. *Id.* In response, Christine Gregory, the IGP Supervisor at Clinton, sent plaintiff a written memorandum, dated February 8, 2012, explaining the basis for the dismissal of CL–61889–12. Exh. P–17. Gregory, however, made no reference to plaintiff's request for the status of the January grievances. *See id.*

In a subsequent written communication to Clinton IGP Supervisor Gregory, dated February 10, 2012, plaintiff again inquired concerning the status of the January grievances. Dkt. No. 75 at 29–30; Exhs. P–18; D–11. Plaintiff followed that communication with a letter, dated February 14, 2012, to Clinton Superintendent LaValley containing the same inquiry. Dkt. No. 75 at 30–31; Exhs. P–19; D–13.

**\*5** On or about February 14, 2012, plaintiff was transferred from Clinton to the Upstate Correctional Facility, located in Malone, New York.[8] Dkt. No. 75 at 33; Exh. P–37. On February 15, 2012, Clinton IGP Supervisor Gregory sent plaintiff a letter in response to his correspondence dated February 10, 2012, advising that there was no record of any grievances filed by the him at Clinton with dates of either January 9, 2012 or January 10, 2012. Dkt. No. 75 at 36–37, 159–160; Exhs. P–21, D–12. The letter advised plaintiff that, because he was no longer confined at Clinton, he should direct any further complaints to the inmate grievance office at Upstate.[9] *Id.*

On February 16, 2012, plaintiff submitted two grievances to the IGP Supervisor at Upstate, one requesting proper mental health treatment, and the other complaining of the assault of January 3, 2012.[10] Dkt. No. 75 at 41–46. Exhs. P–22, D–2. In his cover letter to the grievance supervisor, Nelson stated that the two grievances were previously filed at Clinton "[b]ut that prison [sic] made the remedy unavailable by obstructing access to the grievance process." Exhs. P–22, D–2. The letter went on to add "I will [sic] also like to appeal to C.O.R.C. for lack of implementation as a mitigating circumstance." *Id.* Those two grievances were returned to plaintiff from Upstate IGP Supervisor Brandi White—now Brandi Collyer—informing him that they were being rejected as having been filed beyond the twenty-one calendar day limitation set forth in the 7 N.Y.C.R.R. § 701.5(a)(1). Dkt. No. 75 at 46–47; Exhs. P–23; D–4. Plaintiff was also advised that he could "pursue a complaint that an exception to the time limit was denied by filing a separate grievance." *Id.*

After receiving the communication from Upstate IGP Supervisor White, Nelson submitted a handwritten communication, dated February 17, 2012, enclosing a grievance prepared on plain paper, complaining of obstruction at Clinton and requesting an extension of time to file a grievance concerning the assault. Dkt.

No. 75 at 48–50; Exhs. P–24; D–6. In his cover letter, plaintiff added, "May i[sic] also exhaust and exercise all administrative appeal remedies to the Central Office Review Committee—C.O.R.C.?" Exhs. P–24; D–6. Plaintiff mailed his grievance on the following day, February 18, 2012. Dkt. No. 75 at 50.

Plaintiffs grievance submitted on February 18, 2012, was returned to him on February 22, 2012, by Upstate IGP Supervisor White. Dkt. No. 75 at 51; Exhs. P–26, D–5; Collyer Dep. at 25–26. In so doing, White concluded that plaintiff's request for an extension of time to file his grievance was untimely "as it [wa]s beyond the 45 day time limit" pursuant to 7 N.Y.C.R.R. § 701.6(g). Exhs. P–26, D–5. After receiving notice of the rejection, plaintiff submitted another grievance on February 22, 2012, arguing that his request to file outside the time limits based on mitigating circumstances was timely.[11] Exh. P–27. That grievance was assigned Grievance No. UST–48567–12, and denied by the IGRC on March 6, 2012. Dkt. No. 75 at 58; Exh. P–30. In its response, the IGRC denied the grievance noting that, according to Clinton IGP Supervisor Gregory, there were no open grievances on file for plaintiff, and that, while he had attempted to file the grievances at Upstate, they were submitted beyond the forty-five day limit under 7 N.Y.C.R.R. § 701.6(g). Exh. P–30.

**\*6** On March 6, 2012, plaintiff appealed the IGRC's denial of his grievance to the superintendent at Upstate. Dkt. No. 75 at 58; Exh. P–30. Plaintiffs appeal was denied by Superintendent Rock on March 15, 2012. Exh. 32. Plaintiff appealed that determination to the CORC March 19, 2012. *Id.* The superintendent's determination was affirmed by the CORC on August 1, 2012. Exh. P–36.

On March 22, 2013, plaintiff wrote to Clinton Superintendent LaValley enclosing carbon copies of his January grievances and asking him to issue a decision regarding those complaints. Exh. P–33. By memorandum dated March 26, 2012, Superintendent LaValley informed plaintiff that his communication had been referred to Clinton IGP Supervisor Gregory "for review and appropriate action." Exh. P–34. Gregory subsequently responded to the plaintiff on April 9, 2012, reiterating that there were no grievances on file at Clinton with written dates of January 9, 2012 or January 10, 2012, and directing him to submit complaints to the IGP office at his present facility. Exh. P–35. Gregory also returned his

correspondence, informing him that his complaints filed at Clinton would not be processed. *Id.*

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on or about March 8, 2012. Dkt. No. 1. His complaint, which asserted multiple claims against various DOCCS employees, was met with the filing of a motion to dismiss. Dkt. No. 25. Senior District Judge Thomas J. McAvoy issued a decision on March 18, 2013, granting in part the defendants' motion and significantly narrowing the claims. Dkt. Nos. 32, 34. Following the close of discovery, defendants filed a motion for summary judgment, which resulted in another decision by Judge McAvoy dismissing some of plaintiffs other claims. Dkt. Nos. 49, 59, 61. The action now involves only an excessive force cause of action against defendants Plumley and Spear, and the matter was referred to me for the purpose of conducting an evidentiary hearing pursuant to *Messa v. Goord,* 652 F.3d 305 (2d Cir.2011), to address whether plaintiff is precluded from pursuing the remaining claim based upon his failure to exhaust available administrative remedies before filing suit. Dkt. Nos. 59, 61. Following appointment of counsel, an evidentiary hearing was conducted on February 18, 2015. [12] Text Minute Entry Dated Feb. 18, 2015.

## III. *DISCUSSION*

Among the restrictions on inmate litigation introduced through enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), is a section that provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. at 81, 84 (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). In the event an inmate plaintiff commences an action in federal court prior to fully exhausting his administrative remedies, his unexhausted claims are subject to dismissal. *Pettus v. McCoy,* No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 93.

*7 As was discussed above, inmates confined by the DOCCS seeking to lodge complaints regarding prison conditions are afforded access to a comprehensive DOCCS grievance procedure, comprised of three steps, all of which must be satisfied to properly exhaust available administrative remedies. 7 N.Y.C.R.R. § 701.5; *Mingues v. Nelson,* No. 96–CV–5396, 2004 WL 234898, at *4 (S.D.N.Y. Feb. 20, 2004). As explained above, the three steps of the IGP include the filing of the grievance with the IGRC, an appeal to the facility superintendent, and a further appeal to the DOCCS CORC. [13] *See generally* 7 N.Y.C.R.R. § 701.5; *Murray v. Palmer,* No. 03–CV–1010, 2010 WL 1235591, at *2 (N.D.N.Y. Mar. 31,2010) (Hurd, J., *adopting report and recommendation by* Lowe, M. J.).

In this case, plaintiff contends that the January grievances, dated January 9, 2012 and January 10, 2012, were prepared and delivered to prison officials but were not processed. Defendants, by contrast, deny receiving those grievances. Before addressing these conflicting accounts, the court must decide who, as between plaintiff and defendants, bears the burden of proof with respect to the exhaustion doctrine.

As an affirmative defense, *Jones v. Bock,* 549 U.S. 199, 216 (2007), the party asserting failure to exhaust administrative remedies typically bears the ultimate burden of proving its essential elements by a preponderance of the evidence. [14] *Soria v. Girdich,* No. 04–CV–0727, 2007 WL 4790807, at *2 (N.D.N .Y. Dec. 6, 2007) (DiBianco, M.J.) (citing *McCoy v. Goord,* 255 F.Supp.2d 233, 247 (S.D.N.Y.2003)); *McEachin v. Selsky,* No. 04–CV–0083, 2005 WL 2128851, at *4 (N.D.N.Y. Aug. 30, 2005) (Scullin, J.) (citing *Howard v. Goord,* No. 98–CV–7471, 1999 WL 1288679, *3 (E.D.N.Y. Dec. 28, 1999)), *aff'd in part, vacated in part,* 225 F. App'x 36 (2d Cir.2007). The issue is somewhat complicated, however, by consideration of the three-part analysis mandated by the *Hemphill* trilogy and related cases because that iine of cases incorporates concepts such as estoppel, for example that typically require the party asserting them to bear the ultimate burden of proof. [15] *See, e.g., Abbas v. Dixon,* 480 F.3d 636, 642 (2d Cir.2007) ("The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel [.]"); *In re Heflin,* 464 B.R. 545, 554 (D.Conn.2011) ("The burden of

providing every element of an estoppel is upon the party seeking to set up the estoppel.") (citing *Comm'r v. Union Pac. R. R. Co.,* 86 F.2d 637, 640 (2d Cir.1936)).

Complicating matters further is that several courts have held that, once a defendant satisfies the burden of demonstrating that an inmate has failed to exhaust administrative remedies, it then becomes incumbent upon the plaintiff to counter with a showing of unavailability, estoppel, or special circumstances. *See, e.g., Murray,* 2010 WL 1235591, at * 4 & n. 17; *see also Calloway v. Grimshaw,* No. 09–CV–1354, 2011 WL 4345299, at *5 & n. 5 (N.D.N.Y. Aug. 10, 2011) (Lowe, M.J.) (citing cases), *report and recommendation adopted* by 2011 WL 4345296 (N.D.N.Y. Sep. 15, 2011) (McAvoy, J.); *Cohn v. KeySpan Corp.,* 713 F.Supp.2d 143, 155 (E .D.N.Y.2010) (finding that, in the employment discrimination context, defendants bear the burden of establishing the affirmative defense of failure to timely exhaust his administrative remedies, but once defendants have done so, the plaintiff must plead and prove facts supporting equitable avoidance of the defense). Those decisions, while referencing the burden of proof applicable to an affirmative defense, seem to primarily address an inmate's burden of *production,* or of going forward, to show facts that would form the basis for finding of unavailability, estoppel, or special circumstances, rather than speaking to the ultimate burden of *persuasion.*

**\*8** I have been unable to uncover any cases squarely holding that a defendant bears the ultimate burden of proof with respect to all elements of a *Hemphill* inquiry. In the final analysis, however, *Hemphill* addresses all of the elements a court is required to consider when analyzing an exhaustion defense. *See Macias,* 495 F.3d at 41 ("In *Hemphill* we 'read together' [a series of cases] and formulated a three-part *test* [.]" (emphasis added)). I therefore find that, while the burden of production may shift to the plaintiff when a court undertakes a *Hemphill* analysis, the ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendants. *See Puga v. Choto,* No. 11–CV–0070, 2014 WL 675824, at *5 (N.D.N.Y. Feb. 21, 2014) (McAvoy, J., *adopting report and recommendation by* Hummel, M.J.) ("In following the *Hemphill* analysis, the burden of proof rests with defendants while plaintiff bears the burden of production as to estoppel and special circumstances."); *Soria,* 2007 WL 4790807, at *2 ("[A]s with other affirmative defenses, the defendant has the

burden of proof to show that plaintiff failed to exhaust his administrative remedies."); *but see Perry v. Rupert,* No. 10–CV–1033, 2013 WL 6816795, at *4 (N.D.N.Y. Dec. 20, 2013) (Kahn, J ., *adopting report and recommendation by* Dancks, M.J.) ("Upon raising th[e exhaustion] defense, the burden of proof shifts to the plaintiff to show that his case falls under at least one of the exceptions accepted by the Second Circuit under the *Hemphill* test."); *accord, Mateo v. Bristow,* No. 12–CV–5052, 2014 WL 4631569, at *8 (S.D.N.Y. Sept. 17, 2014).

It is uncontradicted that the January grievances concerning the alleged assault by defendants Plumley and Spear were never processed by Clinton IGP Supervisor Gregory and, accordingly, never forwarded to the superintendent and on to the CORC on appeal. Defendants have therefore proven, by a preponderance of the evidence, that plaintiff failed to exhaust all administrative remedies before commencing suit.

The inquiry now turns to whether any of the three *Hemphill* considerations apply in this case excusing plaintiff's failure to exhaust. The Second Circuit's decisions in the *Hemphill* trilogy instruct that before dismissing an action as a result of a plaintiff's failure to exhaust, the court must determine whether (1) administrative remedies were available to the plaintiff at the relevant times; (2) the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise it or through their own actions preventing plaintiff's exhaustion of remedies, they should be estopped from asserting to exhaust as a defense; or (3) special circumstances exist justifying the plaintiff's failure to comply with the applicable administrative procedure requirements. *Macias v. Zenk,* 495 F.3d 37, 41 (2d Cir.2007); *Hemphill,* 380 F.3d at 686.

Examining the first *Hemphill* consideration, I conclude that the grievance process was not available to the plaintiff at the relevant times. Although, as discussed above, the DOCCS made "available" to plaintiff the IGP, which allowed him to file regular grievances and those alleging staff misconduct, the mere existence of the IGP "does not end the inquiry into availability." *Hemphill,* 380 F.3d at 687. Here, plaintiff credibly testified that on January 12, 2012, he attempted to mail the January grievances concerning defendants' alleged assault by having a corrections officer pick them up while he was confined in the SHU at Clinton. Dkt. No. 75 at 34– 35. While Clinton IGP Supervisor Gregory testified that

she never received those grievances, there is no record evidence that explains or suggests why they were not processed or what happened to them after they were retrieved by the unidentified DOCCS corrections officer. *Id.* at 159. Defendants have offered no reason why plaintiff would fabricate the grievances *post hoc,* nor do they provide any reason for why plaintiff would be reluctant to prepare and forward a grievance for processing. At the time he claims to have mailed the grievances, plaintiff sent several letters to various DOCCS officials complaining of the assault, demonstrating that he did not fear retribution for complaining concerning the incident. Dkt. No. 75 at 17–20; Exhs. P–4, P–5, P–6, P–11, P–40. Moreover, by his own admission, plaintiff is no stranger to the grievance process and does not appear to have hesitated in lodging complaints concerning this and other matters, both utilizing the IGP and through other avenues. Indeed, the record reflects that plaintiff is a seasoned grievant well-versed in the grievance process made available by the DOCCS, having filed twenty-five appeals to the CORC over the course of his incarceration. Exh. D–27.

**\*9** In the absence of any evidence that would explain what happened to plaintiffs January grievances, and in light of plaintiff's credible testimony, I find that the IGP was effectively rendered unavailable to plaintiff when his grievances were lost after a corrections officer picked them up from his SHU cell. When plaintiff did not receive a response from an IGP representative by way of a grievance number or hearing date, he sent letters to multiple people requesting the status of the grievances. Dkt. No. 75 at 27, 30–31; Exhs. P–13, P–18, P–19. Although plaintiff sent a letter to the IGRC as early as January 27, 2012, regarding the status of the grievances, he did not receive a response from anyone until February 15, 2012, after he had been transferred to Upstate. Exh. P–21. In that response, Clinton IGP Supervisor Gregory instructed plaintiff to file any further complaints to the grievance office at Upstate. *Id.* Heeding that advice, plaintiff then immediately attempted to re-file his two grievances at Upstate on February 16, 2012. Dkt. No. 75 at 41–41; Exh. P–22. Plaintiff's efforts to file his grievances were thwarted by Upstate IGP Supervisor White, however, when, in response to his first letter dated February 16, 2012, she rejected the filing of the grievances because they were outside the twenty-one day period pursuant to 7 N.Y.C.R.R. § 701.5(a)(1). Exh. P–23. Because White advised in that letter that he may "pursue a complaint that an exception to the

time limit was denied by filing a separate grievance," plaintiff immediately sent another grievance in accordance with that instruction. Exh. P–24. Upstate IGP Supervisor White then rejected this grievance, too, as beyond the forty-five day period to request an extension of time to file a grievance pursuant to 7 N.Y.C.R.R. § 701.6. Exh. P–26. White's responses are particularly frustrating in light of plaintiff's communication to her that he wished to appeal his grievances [16] and given that, at the time White responded to plaintiff, she had communicated with Clinton IGP Supervisor Gregory regarding plaintiff and was aware he had attempted to file the January grievances within the time period governed by DOCCS Directive No. 4040. Exhs. P–20, D–3. Moreover, plaintiffs initial communication to Upstate IGP Supervisor White, in which he attempted to re-file his grievances, he alleged that his efforts to file at Clinton were thwarted and the IGP rendered unavailable by prison officials. Exh. P–22; Collyer Dep. at 74. Because plaintiff filed this first communication within the forty-five day period for requesting an extension of time to file a grievance, White could have, but did not, construe it as a request for such an extension. Collyer Dep. at 69–70. In light of all of this evidence, I find that, notwithstanding plaintiffs repeated attempts to pursue his grievances regarding the alleged assault by defendants Plumley and Spear, the record reflects that the conduct of DOCCS officials rendered the IGP unavailable to plaintiff.

**\*10** For essentially the same reasons recited above, I conclude that plaintiff has demonstrated the existence of special circumstances, the third basis under the *Hemphill* trilogy, for excusing a failure to exhaust 962534, at \*4 (N.D.N.Y. Mar. 11, 2003) (Sharpe, M .J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA.") In this case, plaintiff attempted to do precisely what those cases have advised by requesting to appeal a non-response to the next level. administrative remedies. [17] Plaintiff attempted, without success, to file timely grievances concerning the alleged assault by defendants Plumley and Spear and thereafter was persistent in seeking information concerning the status of those grievances and communicating his desire to have the grievances processed and appeal any denials to the CORC. There is no evidence in the record that the absence of any grievances at Clinton regarding the incident is attributable to plaintiff, and it is readily apparent that

plaintiff's persistent efforts to follow-up, re-file, and appeal the grievances were frustrated by DOCCS officials. These circumstances suffice to satisfy the third *Hemphill* consideration. *See, e.g .,* *Murray,* 2010 WL 1235591, at *6 (finding an allegation "that an unspecified number of unidentified corrections officers (who are not [named-defendants] ) somehow interfered with the delivery of [the plaintiffs] grievance and appeals ... could constitute special circumstances justifying an inmate's failure to exhaust his available administrative remedies in certain situations"); *Sandin v. Poole,* 575 F.Supp.2d 484, 488 (W.D.N.Y.2008) (finding that the plaintiffs allegation that a prison official's "refusal to accept or forward plaintiff's appeals ... effectively rendered the grievance process unavailable to [the plaintiff]" and would also constitute special circumstances).

In sum, based upon the unique circumstances of this case, and without detracting from the importance of satisfying the PLRA's exhaustion obligation and fulfilling the procedural requirements of the DOCCS IGP, I recommend that the court find the IGP was not available to plaintiff and special circumstances exist to excuse him from the exhaustion requirement.

IV. *SUMMARY AND RECOMMENDATION*
Plaintiff testified credibly that on January 12, 2012, he placed into the prison mail system two grievances, dated January 9, 2012 and January 10, 2012, complaining of the alleged assault by defendants on January 3, 2012. Those grievances, however, were never processed despite repeated inquiries by Nelson concerning their status and his request that he be permitted to appeal the results of those grievances. In addition, a subsequent submission,

which could have been construed as a timely request for the filing of a late grievance due to mitigating circumstances, including obstruction by prison officials, was summarily rejected. I therefore recommend that the court find the IGP was not available to plaintiff at the relevant times and further that special circumstances exist to justify excusing the exhaustion requirement. It is therefore hereby respectfully

 ***11** RECOMMENDED that the court conclude that plaintiffs claims in this action are not barred by the PLRA based upon his failure to exhaust available administrative remedies before commencing suit and that the matter be set down for trial of the plaintiff's remaining excessive force claim.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Filed May 14, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 4326762

Footnotes

1   Plaintiff filed a document *pro se* he styles as "objections" to the ReportRecommendation. In that document, however, Plaintiff asks the Court to adopt the Report–Recommendation. *See* dkt. # 84. Moreover, Plaintiff was represented by counsel at the evidentiary hearing on the failure-to-exhaust issue, and counsel filed a brief in opposition to Defendants' objections to the Report–Recommendaiton. *See* dkt. # 89. These filings make clear that Defendants' are the only actual objections to the Report–Recommendation.

1   As a result of the incident plaintiff was issued two misbehavior reports accusing him of failing to obey a direct order, assaulting a staff member, and engaging in violent conduct. Dkt. No. 1 at 13; Dkt. No. 49–3 at 2, 9–10. Following a disciplinary hearing, plaintiff was found guilty of the charges and sentenced to serve eighteen months of disciplinary confinement in a facility special housing unit ("SHU"), with a corresponding loss of privileges and a recommendation that he forfeit twelve months of good time credits. Dkt. No. 49–3 at 12, 88–89. The determination and resulting sanctions were upheld on appeal to the DOCCS central office. *Id.* at 91.

2   The IGP requires that an inmate "submit" a grievance within twenty-one days of an alleged occurrence, but it does not define the word "submit" or otherwise explain when a grievance is deemed "submitted." *See generally* 7 N.Y.C.R.R. §

701.5(a)(1). In his brief, plaintiff advocates for the extension of the prison mailbox rule to the grievance process. Dkt. No. 78 at 15–17. Some courts addressing this issue have applied the prison mailbox rule, deeming a grievance filed when an inmate places it in the prison mail system. *See, e.g., Breeland v. Cook,* No. 12–CV–2511, 2013 WL 5924592, at *3 (M.D.Pa. Oct. 31, 2013) (applying the prison mailbox rule to determine the timeliness of an appeal under the controlling grievance procedure); *Schadel v. Evans,* No. 09–CV–1338, 2010 WL 2696456, at *3 (C.D.Ill. July 7, 2010) (applying the prison mailbox rule in determining that the plaintiff timely filed his grievance); *but see Burns v. Fike,* No. 12–CV–0239, 2013 WL 5874582, at *5–6 (W.D.Pa. Oct. 31, 2013) (declining to apply the prison mailbox rule because, *inter alia,* "[t]his Court has found no other court that has applied th[e] rule to the submission of inmate grievances or appeals during the grievance procedure"). Given my recommended findings, I find it unnecessary to decide this issue.

3    The process for the filing of grievances by SHU inmates at Upstate is similar to that at Clinton. Dkt. No. 75 at 192.

4    The IGP permits inmates to prepare grievances on plain paper rather than the prescribed grievance form. *See* 7 N.Y.C.R.R. § 701.5(a)(1) ("If [inmate grievance complaint form # 2131] is not readily available, a complaint may be submitted on plain paper.").

5    The record does not contain plaintiff's correspondence to the Legal Aid Society. It does, however, contain a letter, dated January 19, 2012, from the Legal Aid Society to plaintiff acknowledging receipt of his letter dated January 9, 2012, and stating, "We are very concerned to hear about the brutality you experienced in the Clinton observation cells." Exh P–10.

6    None of those letters can be construed as constituting a grievance as defined under the IGP. The term "grievance" is defined by DOCCS Directive No. 4040 as "a complaint, filed with an IGP clerk, about the substance or application of any written or unwritten policy, regulation, procedural or rule of the Department of Correctional Services or any of its program units, or the lack of a policy, regulation, procedure or rule. *A letter addressed to a facility or central office staff is not a grievance.*" 7 N.Y.C.R.R. § 701.2(a) (emphasis added).

7    It appears that this letter refers to an appeal from the denial of Grievance No. CL–61889–12, dated January 31, 2012. *See* Exh. P–16. The grievance was denied because it involved a disciplinary hearing, the results of which are appealed through channels independent of the IGP. *Id.*

8    Upstate is a maximum security prison comprised exclusively of special housing unit ("SHU") cells in which inmates are confined for twenty-three hours each day, primarily for disciplinary reasons. *Samuels v. Selsky,* No. 01–CV–8235, 2002 WL 31040370, at *4 n. 11 (S.D.N.Y. Sept. 12, 2002).

9    Under the IGP, "[a] complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." 7 N.Y.C.R.R. § 701.5(a)(1); *see also* Dkt. No. 75 at 160.

10    Plaintiff testified during the hearing that the grievances were submitted on forms obtained by him while at Upstate. Dkt. No. 75 at 97. The caption at the top of the form, however, has been altered by plaintiff to read "Upstate Correctional Facility," rather than "Clinton Correctional Facility." Exhs. P–22, D–2. When asked about this discrepancy at the exhaustion hearing, plaintiff testified he "used the forms that w[ere] provided to [him] when [he] first [arrived] to Upstate facility, those are the forms [he] used." Dkt. No. 75 at 97.

11    Plaintiff also wrote a letter to Upstate Superintendent D. Rock on February 22, 2012, claiming that his access to the grievance process was being obstructed. Exh. P–28. Superintendent Rock responded on February 23, 2012, by advising plaintiff that grievances, inquiries, and appeals should be submitted directly to the IGP office and returning his complaint so that it could be handled directly with the proper office. Exh. 29.

12    The court wishes to express its appreciation to Maria Dyson, Esq., who agreed to accept an assignment as plaintiff's *pro bono* attorney, as well to her colleague, Elmer Keach, III., Esq., for the energetic, highly competent, and professional effort expended by them on behalf of the plaintiff.

13    As was also discussed above, plaintiff's January grievances would have been subject to a more streamlined, two-step process because they involved an allegation of assault by DOCCS staff. 7 N.Y .C.R.R. § 701.8.

14    The defendants in this case properly asserted plaintiff's failure to exhaust available administrative remedies as an affirmative defense to his claims. Dkt. No. 36 at 2–3.

15    The three cases decided together by the Second Circuit, referred to by me as the "*Hemphill* trilogy," include *Hemphill v. N.Y.,* 380 F.3d 680 (2d Cir.2004); *Giano v. Goord,* 380 F.3d 670 (2d Cir.2004); and *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004).

16    Various courts in this circuit have faulted an inmate-plaintiff for failing to appeal the fact that DOCCS officials (*i.e.,* the IGRC or a facility superintendent) did not timely respond to his grievance or appeal. *See, e.g., Rosado v. Fessetto,* No. 09–CV–0067, 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010) (Baxter, M.J.), *report and recommendation adopted by* 2010 WL 3809991 (N.D.N.Y. Sept. 21, 2010) (Hurd, J.), ("Courts have consistently held ... that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement."); *Murray v. Palmer,* No. 03–CV–

1010, 2008 WL 2522324, at *15, 18 & n. 46 (N.D.N.Y. June 20, 2008) (Hurd, J., *adopting report and recommendation by* Lowe, M.J.) ("[E]ven if Great Meadow C.F. did not ... have a functioning grievance-recording process (thus, resulting in Plaintiff's alleged grievance never being responded to), Plaintiff still had the duty to appeal that non-response to the next level."); *Veloz v. N.Y.,* 339 F.Supp.2d 505, 515–16 (S.D.N.Y.2004), *aff'd,* 178 F. App'x 39 (2d Cir.2006), (rejecting the plaintiff's argument that the prison's grievance procedure had been rendered unavailable by the practice of prison officials' losing or destroying his grievances because, *inter alia,* he should have "appeal [ed] these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming"); *Croswell v. McCoy,* No. 01–CV–0547, 2003 WL

17    The second *Hemphill* consideration, estoppel, is not applicable in this case. As was previously noted defendants have asserted and properly preserved the defense of exhaustion. In addition, there is no record evidence to suggest that either defendant Plumley or Spear was involved in rendering the IGP unavailable to plaintiff by intercepting his grievances, rejecting them once filed, or otherwise misleading, threatening, or deterring plaintiff from utilizing the administrative process. *See, e.g., Hemphill,* 380 F.3d at 686 ("The court should also inquire as to ... whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."); *Smith v. Kelly,* 985 F.Supp.2d 275, 286 (N.D.N.Y.2013) (Suddaby, J.) ("[A] defendant in a prisoner civil rights action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies ... based on the actions or inactions of *other* individuals." (footnote omitted) (citing cases) (emphasis in original)).

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 675824
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Edwin PUGA, Plaintiff,

v.

Celia CHOTO, Correction Officer, Great
Meadow Correctional Facility; Lawrence
Perry, Correction Officer, Great Meadow
Correctional Facility; Ronald Lamb, Correction
Officer, Great Meadow Correctional Facility;
Timothy Lemery, Correction Officer, Great
Meadow Correctional Facility, Defendants.

No. 9:11–CV–70 (TJM/CFH).
|
Feb. 21, 2014.

**Attorneys and Law Firms**

Cooper, Erving & Savage, Kimberly G. Finnigan, Esq., of
Counsel, Albany, NY, for Plaintiff.

Hon. Eric T. Schneiderman, Attorney General for
the State of New York, Cathy Y. Sheehan, Esq.,
Assistant Attorney General, of Counsel, Albany, NY, for
Defendants.

### *DECISION and ORDER*

THOMAS J. McAVOY, Senior District Judge.

## I. INTRODUCTION
 **\*1** Plaintiff Edwin Puga ("Puga"), an inmate currently in
the custody of the New York Department of Corrections
and Community Services ("DOCCS"), brought this action
*pro se* pursuant to 42 U.S.C. § 1983 alleging defendants
violated his Eighth Amendment rights by subjecting him
to excessive force. Compl. (Dkt. No. 1). In answering the
complaint, the defendants pled, *inter alia,* the affirmative
defense of failure to exhaust administrative remedies. Dkt.
No. 16.

On May 8, 2013, defendants filed a letter motion seeking
a hearing to resolve the issue of Puga's exhaustion of
administrative remedies. Dkt. No. 37. By text order dated
August 16, 2013, the Court granted defendants' letter

motion and referred the evidentiary hearing to the Hon.
Christian F. Hummel, United States Magistrate Judge,
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).
Dkt. No. 39.

Magistrate Judge Hummel conducted an evidentiary
hearing and rendered a Report–Recommendation &
Order on November 4, 2013. Dkt. No. 50. At the
evidentiary hearing, Puga was represented by assigned
counsel. In the Report–Recommendation & Order,
Magistrate Judge Hummel recommended that Puga's
complaint be **DISMISSED** based upon the failure to
comply with the exhaustion requirements of 42 U.S.C. §
1997e(a). *Id.*

Puga did not submit objection to Magistrate Judge
Hummel's recommendation within the statutory time
period but did submit objections, *pro se,* on February 20,
2014. Dkt. No. 20. In his objections, Puga asserts that he
received the Report–Recommendation & Order from his
attorney and asked that she file objections and provide
him a copy of the objections. *Id.* ¶ 14. He further asserts
that he waited approximately 90 days but, because he did
not receive a copy of any objections, he filed objections
*pro se. Id.* ¶¶ 14–15.

## II. STANDARD OF REVIEW
After reviewing a report and recommendation, the Court
may "accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate
judge. The judge may also receive further evidence
or recommit the matter to the magistrate judge with
instructions." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

### *a. Timeliness of Objections*
Magistrate Judge Hummel's November 4, 2013 Report–
Recommendation & Order, which Puge admits he received
and reviewed, Dkt. No. 20, ¶ 13, provided:

> Pursuant to 28 U.S.C. § 636(b)(1), the parties may
> lodge written objections to the foregoing report.
> Such objections shall be filed with the Clerk of
> the Court "within fourteen (14) days after being
> served with a copy of the ... recommendation."
> N.Y .N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)
> (1)(B)-(C)). **FAILURE TO OBJECT TO THIS**

**REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S .C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**\*2**  11/04/13 Rep. Rec. & Ord., pp. 14–15 (emphasis in original).

This clear directive requires that objections were to be filed with the Clerk of the Court by November 18, 2013. [1] However, as indicated above, the objections were not filed until February 20, 2014–108 days after the Report Recommendation and Order.

Because Puga's objections were filed *after* the date that they were due, the issue of whether to consider the objections is governed by Fed.R.Civ.P. 6(b)(1)(B). This provides that a court "may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect." Fed.R.Civ.P. 6(b)(1)(B). "Excusable neglect is an 'elastic concept' that 'at bottom [is] an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 366 (2d Cir.2003) (citations omitted). "Factors to be considered in evaluating excusable neglect include '[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.' " *Silivanch,* 333 F.3d at 366 (alteration in original) (quoting *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380 (1993)). The Court places the most weight on the third factor. *See Silivanch,* 333 F.3d at 366. The Second Circuit has repeatedly held that "where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Silivanch,* at 366–67; see *also Redhead v. Conference of Seventh–Day Adventists,* 360 Fed. Appx. 232 (2d Cir.2010); *Canfield v. Van Atta Buick/GMC Truck Inc.,* 127 F.3d 248, 251 (2d Cir.1997).

Assuming, *arguendo,* that Puga asked his attorney to file objections, given the short time period to file objections it was unreasonable for him to wait 90 days before he decided to take an active part in the objection process. Simply stated, the opportunity to file *pro se* objections

long before they were actually filed was in the reasonable control of Puga. By waiting 108 days to file objections knowing that objections were due within 14 days, Puga fails to establish excusable neglect.

Accordingly, Puga's objections are deemed untimely and will not be considered.

#### *b. Objections*

Even if the objections were considered, Puga merely reargues his case as presented to Magistrate Judge Hummel. General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error. *Farid v. Bouey,* 554 F.Supp.2d 301, 306 n. 2 (N.D.N.Y.2008); *see Frankel v. N.Y.C.,* 2009 WL 465645 at *2 (S.D.N.Y. Feb. 25, 2009).

### III. CONCLUSION

**\*3**  Having reviewed the Report–Recommendation and Order, the Court finds that it is not subject to attack for clear error or manifest injustice. The Court accepts and adopts Magistrate Judge Hummel's recommendations for the reasons stated in his thorough report. Puga's complaint is **DISMISSED** based upon the failure to comply with the exhaustion requirements of 42 U.S.C. § 1997e(a).

**IT IS SO ORDERED.**

### REPORT–RECOMMENDATION & ORDER [1]

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

Plaintiff *pro se* Edwin Puga ("Puga"), an inmate currently in the custody of the New York Department of Corrections and Community Services ("DOCCS") bring this action pursuant to 42 U.S.C. § 1983 alleging defendants violated his Eighth Amendment rights by subjecting him to excessive force. Compl. (Dkt. No. 1). In answering the complaint, the defendants pled, *inter alia,* the affirmative defense of failure to exhaust administrative remedies. Dkt. No. 16.

On May 8, 2013 defendants filed a letter motion seeking a hearing to resolve the issue of Puga's exhaustion of

Case 9:16-cv-01174-NAM-DEP   Document 123   Filed 05/24/19   Page 96 of 107
Puga v. Choto, Not Reported in F.Supp.3d (2014)
2014 WL 675824

administrative remedies. Dkt. No. 37. By text order dated August 16, 2013 the Honorable Thomas J. McAvoy, Senior United States District Judge, granted defendants' letter motion and referred the evidentiary hearing to this Court. Dkt. No. 39.

This Court issued an order scheduling a hearing on the issue of exhaustion of administrative remedies for October 3, 2013. Dkt. No. 40. By letter motion filed September 19, 2013, Puga's appointed counsel asked that the exhaustion hearing be cancelled, or in the alternative, be delayed for sixty days in order to allow counsel to conduct discovery on the exhaustion issue. Dkt. No. 43. By text order dated September 24, 2013 the Court denied that motion. Dkt. Sheet Entry dated 9/24/2013.

On October 3, 2013 an evidentiary hearing was conducted. At the close of that hearing the Court reserved decision. Hr'g Tr. at 87–88.

## I. Relevant Law

### A. Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging prison conditions, including federal civil rights cases. *Porter v. Nussle,* 534 U.S. 516, 524 (2002); *see also Woodford v. Ngo,* 548 U.S. 81, 83 (2006). This exhaustion requirement applies to all prison condition claims. *Porter,* 534 U.S. at 532. "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement." *Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999). The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate. *Porter,* 534 U.S. at 524.

Exhaustion for an inmate in DOCCS custody is generally achieved through Inmate Grievance Program ("IGP"). *See* N.Y. COMP.CODES R. & REGS. tit. 7, § 701.1, *et seq.* (2012). Allegations of staff harassment are subject to an expedited procedure whereupon the complaint is first reviewed by the Superintendent and only if it is not a bona fide claim will it be returned to the IGP for normal processing. N.Y. COMP.CODES. R

& REGS. tit. 7, § 701.8 (2012). Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with the Central Office Review Committee ("CORC") and receive a response from the CORC prior to filing a federal lawsuit. *Torres v. Carry,* 672 F.Supp.2d 338, 344 (S.D.N.Y.2009); *see also* N.Y. COMP.CODES R. & REGS. tit. 7 § 701.5(d)(2)(ii) (2012) ("The CORC shall review each appeal, render a decision on the grievance, and transmit its decision ... within 30 calendar days") (hereinafter "7 N.Y.C.R .R. § 701.5"). Disagreement with the superintendent's decision in the expedited review also requires an appeal to the CORC. N.Y. COMP.CODES. R & REGS. tit. 7, § 701.8(g)-(h); *see also Espinal v. Goord,* 588 F.3d 119, 125 (2d Cir.2009) (explaining IGP and the expedited procedure for harassment claims and its appeal mechanism through the CORC). Exhaustion must precede filing a lawsuit. *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) ("Subsequent exhaustion after suit is filed therefore is insufficient."), *abrogated in part on other grounds by Porter,* 534 U.S. 516.

**\*4** While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." *Ruggiero v. Cnty. of Orange,* 467 F.3d 170, 175 (2d Cir.2006) (citing *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004)). The failure to exhaust may be excused in limited circumstances.

> In determining whether such an exception is applicable, a district court must apply a three-part test: First, the court must determine whether administrative remedies in fact were available to the prisoner. Second, if such remedies were available, the court must determine whether the defendants' own actions inhibited the inmate's exhaustion of administrative remedies, thereby requiring that one or more of them be equitably estopped from raising the failure to exhaust as a defense. Finally, if administrative remedies were available and the defendants are not estopped, the court must determine whether any special circumstances justify the prisoner's failure to comply

with administrative procedural requirements.

*Gayle v. Benware,* 716 F.Supp.2d 293, 298 (S.D.N.Y.2010) (internal citations omitted); *see generally Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004) (articulating above test as the appropriate method for excusing failure to exhaust given the present state of all Second Circuit opinions). "Unavailability of administrative remedies ... is an objective [test]: that is, would a similarly situated individual of ordinary firmness have deemed them unavailable." *Kasiem v. Switz,* 756 F.Supp.2d 570, 576–77 (S.D.N.Y.2010) (internal quotation marks and citations omitted). Estoppel occurs when "an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible ... [as evidenced by] prison officials' threats, beatings, ... denials of grievance forms, or by other misconduct deterring [the inmate] from fulfilling the requisite procedure." *Id.* at 577 (internal quotation marks and citations omitted). If an inmate claims estoppel and continues to file complaints and grievances, the exception is inapplicable. *Id.* Special circumstances exist when an inmate's failure to comply can be justified. *Id.* (citations omitted). Justification is found "by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Goord,* 380 F.3d 670, 678 (2d Cir.2004) (citations omitted).

**B. The Inmate Grievance Process**

New York State law provides a three tier inmate grievance procedure which is applicable to Puga's claims. *See* N.Y. CORRECT. LAW § 139; N.Y. COMP.CODES R. & REGS. tit. 7, § 701.1 *et seq.* [2] Where the grievance involves allegations of employee excessive force, as alleged by Puga, there is an expedited administrative process. N.Y. COMP.CODES R. & REGS. tit. 7, § 701.8. In such cases the superintendent of the facility is required to order an investigation and render a decision within twenty-five (25) days. *Id.* § 701(a)-(f). If the superintendent fails to respond within the required twenty-five (25) time limit the inmate may appeal his grievance to the CORC. The inmate does this by filing a Notice of Decision to Appeal (Form # 2133) with the inmate grievance clerk. *Id.* § 701.8(g). If an inmate is moved to another facility while the grievance is pending, he is required to mail the signed appeal back to

the IGP Supervisor at the facility where the grievance was originally filed. *Id.* § 701.6(h)(2). The Second Circuit has long recognized this procedure as an "available remedy" for purposes of the PLRA. *See Hall v. County of Saratoga,* No. 10–CV–1120 (NAM/CFH), 2013 WL 838284, at *1–*2 (N . D.N.Y. Mar. 6, 2013).

**II. Evidentiary Hearing**

**A. The Stipulated Facts**

**\*5** The evidentiary hearing was conducted on October 3, 2013. At the commencement of the hearing the parties agree to stipulate to certain facts for purposes of the exhaustion hearing. Hr'g Tr. at 11–12. The parties stipulated, *inter alia,* that on November 6, 2010 Puga submitted a grievance to the Great Meadow Correctional Facility ("Great Meadow") against defendant corrections officers for allegedly assaulting him on October 29, 2010. *Id.* at 11. On November 16, 2010 Puga received a notice from the Inmate Grievance Resolution Committee ("IGRC") acknowledging receipt of the grievance. *Id.* Puga received a letter on December 1, 2010 from the IGP supervisor at Great Meadow advising him that the grievance was still under investigation. *Id.* The parties agree there is no evidence that Puga received a decision on the grievance.

In early December 2010 Puga was transferred from the Great Meadow to Southport Correctional Facility ("Southport"). Hr'g Tr. at 12. On December 22, 2010 Puga sent a letter to the IGRC at Southport. On December 28, 2010 Puga received a response from the IGP. On that date Puga sent a letter to the Director of the IGP in Albany, New York. On January 12, 2011, Karen Bellamy, Director of the IGP, sent a letter to Puga acknowledging receipt of his correspondence dated December 28, 2010. *Id.*

On June 28, 2011 Puga sent a letter to S. Woodward, IGP Supervisor at Great Meadow. Woodward responded to Puga by letter dated July 5, 2011. Hr'g Tr. at 12.

**B. Burden of Proof**

Defendants have pled the affirmative defense that Puga has failed to exhaust his administrative remedies as

required by the PLRA. Ans. (Dkt. No. 16). In conducting this hearing, the Second Circuit has set forth a three part test to determine if the exhaustion requirement has been met:

> a court should first consider whether the administrative remedies were in fact available to the prisoner. Second, a court must determine whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense ... Third, a court should examine whether there were special circumstances that excused plaintiff's failure to adhere to the administrative procedural requirements.

*Torres v. Anderson,* 674 F.Supp.2d 394, 397–398 (E.D.N.Y.2009) (quoting *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)) (internal quotation marks and citations omitted).

In following the *Hemphill* analysis, the burden of proof rests with defendants while plaintiff bears the burden of production as to estoppel and special circumstances. *Bailey v. Fortier,* No. 09–CV–742 (GLS/DEP), 2012 WL 6935254, at *5–*6 (N.D.N.Y. Oct. 4, 2012) (citations omitted).

### C. The Hearing

Puga does not contend that administrative remedies were not available in this case. Ex. D–12E, DOCCS Directive 4040. Puga did not introduce any evidence that would dispute the existence of an administrative remedy. No defendant has been alleged to have taken any action inhibiting Puga's exhaustion of remedies. The focus of the exhaustion hearing centers on whether Puga availed himself of the proper exhaustion process or if special circumstances existed which excused his failure to exhaust administrative remedies.

**\*6** On November 6, 2010 Puga filed a grievance at Great Meadow alleging defendants Choto, Perry, and Lemery assaulted him on October 29, 2010. Hr'g Tr. at 11, Ex. P–1.[3] Puga received a notice dated November 16, 2010 from the Inmate Grievance Resolution Committee ("IGRC") acknowledging the receipt of his grievance. Hr'g Tr. at 11, Ex. P–2. By letter dated December 1, 2010, S. Woodward, IGP Supervisor at Great Meadow, advised Puga that his grievance was still being investigated. Hr'g Tr. at 11, Ex. P–4. On December 3, 2010 a decision was issued by the Superintendent denying Puga's grievance. Exs. P–5 & D–10E. There is no evidence Puga received that decision. Hr'g Tr. at 11. Puga did not file an appeal of that decision to the IGRC clerk at the facility as required by Directive 4040. *Id.* at 28–29, Ex. D–10E.

In early December 10, 2010, Puga was transferred to the Southport. Hr'g Tr. at 11–12, 60. On December 22, 2010 Puga sent a handwritten note to the IGRC at Southport inquiring about the status of the November 6, 2010 grievance. *Id.* at 12, Ex. P–7. By letter dated December 28, 2010 Puga was advised that he was required to inquire about his grievance at the facility where the grievance was filed. Hr'g Tr. at 12, Ex. P–8. Puga did not submit an appeal to the IGRC clerk at Great Meadow. Hr'g Tr. at 28–29.

On December 28, 2010 Puga sent a letter to the Director of the IGP in Albany regarding the status of his grievance. Ex. P–9. By letter dated January 12, 2011 Karen Bellamy, Director of the IGP, advised Puga that a decision had been issued on his grievance by the Superintendent on December 3, 2010 and forwarded to his current facility. Ex. D–10E. Puga was further advised that he must submit his grievance or appeal to the IGRC clerk at the facility. Ex. D–10E.

On January 20, 2011 Puga filed a complaint in the United States District Court for the Northern District of New York based on the alleged use of excessive force on October 29, 2010. Compl. (Dkt. No. 1). On June 28, 2011 Puga sent a letter to Woodward, IGP Supervisor at Great Meadow, requesting a response to his grievance. Ex. P–11. By letter dated July 5, 2011 Woodward advised Puga a that Superintendent's decision was sent to him on December 3, 2010. Ex. D–14E.

Defendants called Jeffery Hale, Director of the IGP in Albany, as a witness. Hale conducted a review of

grievances filed by Puga prior to November 10, 2010. Hr'g Tr. at 31. Hale testified that on two occasions prior to November 10, 2010 Puga successfully appealed grievances to his office. *Id.*

Hale also testified that Directive 4040 is the policy for the operation of the IGP. Hr'g Tr. at 17, Ex. D–12E. As Puga's grievance involved an assault, it was sent directly to the Superintendent. Hr'g Tr. at 31. Where an inmate does not receive a decision on his grievance, Directive 4040 provides additional remedies for an inmate to exhaust his administrative remedies. *Id* . at 32. An inmate:

> **\*7** can write the Inmate Grievance Program Supervisor to check on the status; he could get the grievance response if it was responded to. If it was not responded to, then he could request to have the grievance automatically appealed to the Central Office Review Committee. If it was responded to, he can get a copy of the response and attempt to file an appeal.

*Id.*

Defendants also called Sergeant Timothy L. Vedder as a witness. Sergeant Vedder has been employed by DOCCS for over thirty-one years. He is presently the IGRC Supervisor at Great Meadow. Hr'g Tr. at 46.

Inmates are advised of the grievance procedure during their orientation at Great Meadow. Hr'g Tr. at 47. During inmate orientation clerks from the IGRC attend the orientation to speak with inmates about the grievance process. There is also an explanation of the grievance process in the manual which inmates receive during orientation. *Id.*

Sergeant Vedder reviewed the file kept at Great Meadow regarding Puga's grievance. Hr'g Tr. at 49–50, Ex. D–2E. The grievance filed at Great Meadow was assigned grievance number 50, 715–10. *Id.* The first document in the file is a November 8, 2010 decision from the Superintendent denying Puga's grievance. Hr'g Tr. at 49. The second page is the cover sheet for the grievance from

Great Meadow. *Id.* at 50. The third and fourth pages are the handwritten grievance filed by Puga. *Id.* at 50, Ex. D–2E. A review of the DOCCS computer files indicates the decision was mailed to Puga at Southport on December 7, 2010. Hr'g Tr. at 52. There is no record at Great Meadow of Puga having filed an appeal of the Superintendent's decision denying his grievance. *Id.* at 56.

Sergeant Vedder testified that there are provisions which allow the IGP supervisor to allow additional time for inmates who have gone beyond the time frame set forth in the directive to file appeals. Hr'g Tr. at 54. Sergeant Vedder is particularly lenient in situations where an inmate, like Puga, is housed at a different facility. *Id.* If an inmate's request for additional time to file an appeal is denied he may file a grievance challenging that decision. *Id.* at 55.

During the hearing defense counsel read portions of the transcript of the deposition of Puga which was taken on May 3, 2012. During that deposition the following colloquy occurred regarding the January 11, 2011 letter from Karen Bellamy, Director of IGP (Ex. D10E) to Puga:

Q: And that letter said that a decision was rendered, correct?

A: Yes. It says they made a decision and they said that on December 3rd that had sent it to me.

Q: And you were at Southport then?

A: Yes.

Q: So—but you—did you say you did not receive that?

A: I never.

Q: Did you ask again for a copy?

A: I asked for a copy from Comstock, no. No. I never asked for another copy. I just let it go. If I put some grievance in at Great Meadow it was never going to get me anyway. This kind of grievance, if it affects the officers, I'm never going to get a decision. It's just not going to get to me. I'm never going to receive it. The only thing I can do is prove that I never got this in my hands.

**\*8** Q: Did you write, after this letter of January 12, 2011, did you write to Great Meadow or ask at Southport for a copy of the decision?

Puga v. Choto, Not Reported in F.Supp.3d (2014)
2014 WL 675824
Case 9:16-cv-01174-NAM-DEP   Document 123   Filed 05/24/19   Page 100 of 107

A: No. I let it go. It was—it was a waste of time. It's like something I had to prove in Court.

Hr'g Tr. at 67–68.

Puga testified that he never received a decision on his grievance. Hr'g Tr. at 73. He wrote letters on December 22, 2010 and December 28, 2010 in order to find out what had happened to his grievance and to continue the grievance process. *Id.* at 75. Puga continued to seek a decision on his grievance by his June 28, 2011 letter to the grievance program at Southport. *Id.* at 77, Ex. P–11.

### III. Recommendation

As to the first two prongs of the *Hemphill*[4] analysis, the Court finds, by a preponderance of the evidence, that an administrative remedy was available. *See supra* Part I(B). The Court further finds that defendants did not forfeit their affirmative defense or inhibit Puga from exhausting his remedies. There is no evidence that prison officials took any steps to prevent Puga from appealing his grievance determination. The only factual issue raised by Puga is whether special circumstances were established which excused his failure to exhaust his administrative remedies pursuant to Directive 4040. *See Giano v. Goord,* 380 F.3d 670, 678 (2d Cir.2004) (noting that special circumstances justifying a prisoner's failure to comply with administrative procedural requirements is "determined by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way."); *see also Dabney v. Pegano,* No. 10–CV–1109 (GTS/TWD), 2013 WL 5464776, at *7 (N.D.N.Y. Sept. 30, 2013).

Plaintiff contends that "special circumstances" are present in the case as he (1) properly filed a grievance on November 6, 2010 which was acknowledged by the facility; (2) never received a decision on his grievance; (3) sent a letter to the Southport IGRC on December 22, 2010; (4) sent a letter to the Director of the IGP in Albany on December 28, 2010; and (5) sent a letter to S. Woodward, IGP Supervisor at Great Meadow on June 28, 2011.

The parties agree that Puga filed a grievance on November 6, 2010. Hr'g Tr. at 11–12. Puga contends that he never received a decision on that grievance. As Puga alleges, he did not receive a decision on his grievance, however, there were other options he could pursue to successfully exhaust his administrative remedies. He could have contacted the IGP supervisor at Great Meadow to inquire about the status of his grievance. He did not do this. In the alternative, he could have exhausted his administrative remedies by requesting to have the grievance automatically appealed to the CORC. *See* N.Y. COMP.CODES R. & REGS. tit. 7 § 701.6(g). The parties agree that Puga did not file an appeal with the CORC.

On December 22, 2010 Puga sent a letter to the IGRC at Southport. Hr'g Tr. at 12, Ex. P. 7. By letter dated December 28, 2010, Puga was advised "that you have to inquire about grievances with the facility where they were filed." Ex. P–8. Puga never contacted the IGRC at Great Meadow regarding the status of his grievance.

**\*9** On December 28, 2010 Puga sent a letter to the Director of the IGP in Albany. On January 12, 2011 Karen Bellamy, Director of the IGP, sent a letter to Puga advising him that the Superintendent had issued a decision on his grievance on December 3, 2010. That letter provided, *inter alia,* "You are advised that you must submit your grievance or appeal directly to the IGRC Clerk at the facility. Therefore, you document is being returned to you and we will not retain a copy in this office." Ex. D–10E. Puga never filed a new grievance or appeal with the IGRC Clerk at Great Meadow. During his deposition Puga testified that he did not write to Great Meadow as "it was a waste of time." Hr'g Tr. at 67–68.

On January 20, 2011 Puga filed the complaint in this action in the Northern District of New York. On June 28, 2011 Puga sent a letter to the grievance program at Southport inquiring about that grievance.

Here, Puga, who had successfully appealed grievances on two prior occasions, had numerous opportunities to exhaust his administrative remedies. Puga became frustrated with the process and chose not to pursue those remedies. Despite Puga's transfer and the multiple letters which he authored, none were sufficient to successfully exhaust his administrative remedies. Moreover, in response to Puga's correspondence, he was directed by multiple parties regarding who to contact in order to continue the grievance process. Therefore, any claims of ignorance regarding the process, even given his transfer to

a different facility, are disingenuous. Accordingly, again allocating the burden of proof on the issue of special circumstances to defendants, I conclude that they have demonstrated by a preponderance of the evidence, the absence of any special circumstances that would serve to excuse Puga's failure to exhaust his administrative remedies.

The credible evidence and testimony presented at the exhaustion hearing establishes that (1) Puga failed to exhaust his administrative remedies prior to commencing this action and (2) Puga has offered no special circumstances warranting that he be excused from the PLRA's exhaustion requirement. As such, it is therefore, **RECOMMENDED** that Puga's complaint be **DISMISSED,** based upon the failure to comply with the exhaustion requirements of 42 U.S.C. § 1997e(a). [5]

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D.L.R. 72 .1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 675824

Footnotes

1   If the objections were to be filed by Puga himself, an incarcerated party, they would have been accepted no later than November 23, 2013.

1   This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2   The Rules and Regulations are commonly known as Directive 4040, which is defendants' exhibit 12–E.

3   In addition to stipulating to certain facts the parties stipulated to the admission of all corresponding documents regarding the stipulated facts. Hr'g Tr. at 12.

4   *Hemphill v. New York,* 380 F.3d 680 (2d Cir.2004).

5   Kimberly Finnigan, Esq. of the law firm of Cooper, Erving & Savage was appointed to represent Puga in this action *pro bono.* The Court wishes to thank Attorney Finnigan for her efforts on behalf of Puga.

End of Document   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 4790807
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Giovanni SORIA, Plaintiff,

v.

Roy GIRDICH, et al., Defendants.

No. 9:04-CV-727 (DNH/GJD).
|
Dec. 6, 2007.

**Attorneys and Law Firms**

Giovanni Soria, pro se.

Maria Moran, AAG, for Defendants.

### REPORT-RECOMMENDATION

GUSTAVE J. DiBIANCO, United States Magistrate Judge.

**\*1**  This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this amended civil rights complaint, plaintiff alleges that defendants Corrections Officers Fulton and Taylor failed to protect plaintiff from assault by another inmate in violation of plaintiff s constitutional rights. (Dkt. No. 5). Plaintiff seeks monetary and injunctive relief.[1]

Presently before the court is defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 28). Plaintiff has not responded to the motion. For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

### DISCUSSION

**1.** *Summary Judgment*

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56;

Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id.*

**2.** *Facts*

In the amended complaint, plaintiff alleges that on December 28, 2003, he was assigned to work in the mess hall at Upstate Correctional Facility. Amended Complaint (AC) at ¶ IV-1.[2] Plaintiff claims that defendants Corrections Officers Fulton[3] and Taylor were assigned to the mess hall, and that it was their job to secure the area by searching inmates for weapons and contraband. AC at ¶ IV-1.

Plaintiff claims that defendants Fulton and Taylor were "deliberately indifferent" to plaintiff's safety when they "negligently" allowed Inmate Astruza to bring a weapon into the mess hall. AC ¶ IV-2. Inmate Astruza later assaulted plaintiff with the weapon. Plaintiff states that he does not know why this inmate assaulted him, but then states that Inmate Astruza had been disruptive, and plaintiff had asked Taylor and Fulton to remove plaintiff from the same mess hall line as Astruza. AC ¶ IV-3. Plaintiff states that defendants Taylor and Fulton told plaintiff to go back to work, and after he complied with the officers' order, Inmate Astruza called plaintiff a vulgar name and assaulted him. *Id.*

Plaintiff alleges that defendant Deputy Superintendent for Security LaClair failed to properly supervise and properly train his employees, allowing this assault to occur. AC ¶ IV-4. Plaintiff also states that he told defendant Captain Bezio that defendants Taylor and Fulton were not performing their jobs properly when they allowed Inmate Astruza to enter the mess hall with a weapon. AC ¶ IV-5. Plaintiff claims that defendant Bezio

was deliberately indifferent to plaintiff's safety because he never reprimanded defendants Taylor and Fulton. *Id.*

**\*2** Finally, plaintiff alleges that defendant Superintendent Roy Girdich was responsible for the overall security and care of inmates in Upstate Correctional Facility, and therefore, "should have known" that the lack of proper security would result in an inmate bringing a weapon into the mess hall. AC ¶ IV-6. Plaintiff claims that defendant Girdich's failure to rectify the situation caused plaintiff's injuries.

### 3. *Exhaustion of Administrative Remedies*

Defendants argue that plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a). The PLRA exhaustion requirement applies to *all inmate suits about prison life,* whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord,* 380 F.3d 670, 675-76 (2d Cir.2004). The Supreme Court has recently held, agreeing with the Second Circuit, that the exhaustion requirement is an *affirmative defense,* not a jurisdictional prerequisite. *Jones v. Bock,* 549 U.S. 199, ----, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007); *Giano v. Goord,* 380 F.3d at 675-76. The Second Circuit has also held that there are instances in which the exhaustion requirement may either be waived or excused. *Id.* at 675. (citations omitted).

Additionally, as with other affirmative defenses, the defendant has the burden of proof to show that plaintiff failed to exhaust his administrative remedies. *McCoy v. Goord,* 255 F.Supp.2d 233, 247-48 (S.D.N.Y.2003). Where questions of fact exist as to exhaustion, summary dismissal is not appropriate. *Pendergrass v. Corrections Officers,* 01-CV-243A, 2004 U.S. Dist. LEXIS 28224, *6-7 (W.D.N.Y. Sept. 1, 2004). At the same time that the Second Circuit decided *Giano,* it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement and specifying various instances in which the requirement could be waived or excused. *See Hemphill v. State of New York,* 380 F.3d 680 (2d Cir.2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justified plaintiff's failure to exhaust); *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances,

but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride,* 380 F.3d 649 (2d Cir.2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

Pursuant to these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom,* 446 F.3d 305, 311-12 (2d Cir.2006) (citing *Hemphill,* 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. *Id.*

**\*3** The court notes that the Supreme Court's decision in *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) may have changed the law regarding possible exceptions to the exhaustion requirement. In *Woodford,* the Supreme Court held that the PLRA's exhaustion requirement mandates "proper" exhaustion of administrative remedies. In *Woodford,* the plaintiff filed a grievance that was rejected as "untimely." *Id.* at 2384. Woodford appealed the procedural denial through the administrative process, and "technically" exhausted his administrative remedies because there were no administrative remedies "available" to him. *Id.* However, the Supreme Court held that the PLRA required "proper" exhaustion as a prerequisite to filing a section 1983 action in federal court. *Id.* at 2387. "Proper" exhaustion means that the inmate must complete the administrative review process *in accordance with the applicable procedural rules,* including deadlines, as a prerequisite to bringing suit in federal court. *See id.* at 2385-93 (emphasis added).

It is unclear whether *Woodford* has overruled any decisions that recognize "exceptions" to the exhaustion requirement. In fact, based upon the concurring opinion in *Woodford,* it appears that these decisions have **not** been overruled in that respect. In that concurring opinion, Justice Breyer specifically noted that two circuits, the **Second** Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion

requirement is not absolute." *Woodford,* 126 S.Ct. at 2393 (citing *Spruill v. Gillis,* 372 F.3d 218, 232 (3d Cir.2004); *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004)) (Breyer, J. concurring). Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a *traditional exception that the statute implicitly incorporates." Id.* (emphasis added).

The Second Circuit has not specifically considered the effect that *Woodford* may have had on *Giano-Hemphill* line of cases. However, in *Ruggiero v. County of Orange,* 467 F.3d 170, 175-76 (2d Cir.2006), the Second Circuit stated that it did not need to determine what effect *Woodford* has upon the Second Circuit case law in the exhaustion area because in *Ruggiero,* the court found that plaintiff would not have prevailed even assuming the continued validity of the ability to "excuse" non-exhaustion. *See also Reynoso v. Swezey,* No. 06-1835-pr, 2007 U.S.App. LEXIS 15105, *4, 2007 WL 1836880 (2d Cir. June 25, 2007) (unpublished order) (continuing to state that the court was not deciding whether the decision in *Woodford* affected Second Circuit case law). In *Shane v. Mazzuca,* the court stated that it would follow the "current" law in the Second Circuit until the Second Circuit specifically addressed the issue. *Shane v. Mazzuca,* 04-CV-8266, 2006 U.S. Dist. LEXIS 79817, *19-20 (S.D.N.Y. Oct. 31, 2006) (citation omitted).

**\*4** The Second Circuit has also decided that to the extent that its decision in *Braham v. Casey,* 425 F.3d 177, 183 (2d Cir.2005) supported a plaintiff's argument that would have allowed for less than "proper exhaustion," it was overruled by *Woodford. See Loera Macias v. Zenk,* 495 F.3d 37, 43-44 (2d Cir.2007). The issue upon which *Braham* was overruled involved whether "informal complaints" would be sufficient to exhaust a claim. In *Loera Macias,* the Second Circuit implied that the "exceptions" to exhaustion, including availability, estoppel, and special circumstances continued to exist. *Id.* at 44-46.

The Supreme Court cited *Woodford* in *Jones v. Bock,* explaining that the holding in *Woodford* only imposed a requirement that in order to properly exhaust administrative remedies, the inmate must " 'complete the administrative review process in accordance with the applicable procedural rules.' " *Jones,* 127 S.Ct. at 922 (citing *Woodford,* 126 S.Ct. at 2384). These rules are defined by the prison grievance process itself, and not

by the PLRA. *Id.* In *Jones,* the Court ultimately held that exhaustion was not *per se* inadequate simply because a defendant that was later named in the civil rights complaint was not named in the grievance. *Id.* at 923.

New York State provides inmates with a grievance procedure to follow by which inmates may file complaints and appeal adverse decisions. N.Y. CORRECT. LAW § 139; N.Y. COMP.CODES R. & REGS. tit. 7 §§ 701.1 *et seq.* (N.Y.CRR). The regular Inmate Grievance Program (IGP) consists of a three-tiered process. *Hemphill,* 380 F.3d at 682. The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). *Id.* §§ 701.5(a)(1) and (b). [4] An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id.* § 701.5(d). Time deadlines apply at all levels of the process, but exceptions to any of the deadlines may be made based on "mitigating circumstances." *Id.* §§ 701.5(a)(1); 701.6(g). An inmate must appeal any denial of his grievance to the highest available administrative level. *Martinez v. Williams,* 349 F.Supp.2d 677, 682 (S.D.N.Y.2004).

There is also an expedited process for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees. 7 NYCRR § 701.8. Under this procedure, the inmate may (but is not required to) report the misconduct to the employee's supervisor. *Id.* § 701.8(a). The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the Superintendent for review. *Id.* § 701.8(b). Under the regulations, the Superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house", by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations. *Id.* §§ 701.8(c); 701.8(d)(l)-(d)(3). An appeal of the adverse decision of the Superintendent may be taken to the CORC as in the regular grievance procedure. *Id.* § 701.8(h). A similar "special" procedure is provided for claims of discrimination against an inmate. *Id.* § 701.9.

**\*5** In this case, on the complaint form, there is a question asking whether there is a grievance procedure

2007 WL 4790807

at the facility in which plaintiff is incarcerated. AC at ¶ 4(a). On that form, plaintiff indicated that there was no grievance procedure at Upstate Correctional Facility. *Id.* Plaintiff then states that he "reported" the matter to Officers Fulton and Taylor and Captain Bezio. *Id.* ¶ 4(c). Plaintiff states that the letter is enclosed with the amended complaint. *Id.* However, no letter addressed to any of these defendants was included in the amended complaint,[5] and plaintiff did not produce the letter when requested by the defendants in discovery.

The court first finds that plaintiff's statement that there is no grievance procedure at Upstate Correctional Facility is incorrect at best. *See* Affidavit of Christine Gregory, the Inmate Grievance Program (IGP) Supervisor at Upstate (Dkt. No. 28-5). Ms. Gregory has been IGP Supervisor at Upstate since December 2003. *Id.* ¶ 1. Ms. Gregory states that there has been a grievance procedure at Upstate since the facility opened in 1999. *Id.* ¶ 2. Ms. Gregory also states that she reviewed the grievance records, and found that plaintiff never filed any grievances regarding the December 2003 incident. *Id.* ¶ 4. Plaintiff filed no grievances in the years 2003, 2004, 2006, and 2007. *Id.* Plaintiff filed one grievance in 2005 on an unrelated matter. *Id* .

Plaintiff has not responded to defendants' summary judgment motion and did not produce the letter that he allegedly wrote to defendants Taylor, Fulton, and Bezio about the incident.[6] Even if plaintiff had produced a letter, however, the Second Circuit's decision in *Loera Macias v. Zenk* would foreclose plaintiff from being successful on a claim that the "letter" satisfied the exhaustion requirement. *495 F.3d at 43-44* (informal complaints are insufficient for administrative exhaustion). Additionally, assuming that there are still valid exceptions to the exhaustion requirement, plaintiff has not cited any that would apply to him.

Plaintiff's statement in the amended complaint that there was no grievance procedure at Upstate does not indicate that he was unaware of the grievance program or did not understand the procedure. In fact, the court would point out that the grievance plaintiff filed in 2005 was written in Spanish. Gregory Aff., Ex.1. Plaintiff was not only aware of the grievance program, but knew that he could file his grievance in Spanish. The court understands that this grievance was filed more than one year after the incident in question, but there is no indication that plaintiff was

not aware of the grievance program in December of 2003. Plaintiff has not responded to defendants' summary judgment motion with any explanation or claim of exception. Thus, this court finds that plaintiff has not exhausted his administrative remedies, and the case may be dismissed on that basis.

**4. *Failure to Protect***

**\*6** Even if plaintiff had exhausted his administrative remedies or could be excused from that requirement, his claim would fail on the merits. An inmate has a right under the Eighth and Fourteenth Amendments to be spared "the 'unnecessary and wanton infliction of pain.' " *Hendricks v. Coughlin,* 942 F.2d 109, 112 (2d Cir.1991) (citation omitted). An inmate's allegation that a defendant was deliberately indifferent in failing to protect him from the violence of other inmates states a claim under section 1983. *Id.* at 113.

In order to state an Eighth Amendment claim for failure to protect an inmate, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, *and* prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer v. Brennan,* 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The plaintiff must show that prison officials *actually knew of and disregarded* an excessive risk of harm to the inmate's health and safety. *Id.* at 837. The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists and the defendant must also draw that inference. *Id.*

In this case, plaintiff states that he was assaulted by another inmate when defendants Taylor and Fulton "negligently disregard[ed]" their jobs by allowing the other inmate to enter the mess hall with a weapon. First, the court would point out that negligence does not state a claim under section 1983. *Daniels v. Williams,* 474 U.S. 327 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). Second, there is no indication that either defendant knew of a substantial risk of harm to plaintiff. In fact, plaintiff states in the amended complaint that he does not know why the other inmate assaulted him. AC ¶ IV-3. Plaintiff then seems to state that the other inmate was being disruptive and plaintiff asked defendants to remove plaintiff from the same line in which the other inmate was working. *Id.* There is no indication that plaintiff ever had a disagreement with the other inmate or that defendants were deliberately indifferent

2007 WL 4790807

to plaintiff's safety by not realizing that plaintiff was in danger when he asked to be taken off the same line as the other inmate. [7]

Thus, plaintiff's facts as stated in the amended complaint do not state a claim for deliberate indifference, and the complaint could have been dismissed on this basis even if plaintiff had properly exhausted his administrative remedies.

### 5. Respondeat Superior

Finally, the court notes that defendants Bezio, LaClair, and Girdich are all supervisory officials who had not personal involvement in the alleged failure to protect. It is well-settled that the personal involvement of a defendant is a pre-requisite to the award of damages in a section 1983 action. See *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir.2001). Liability may not be based on the theory of *respondeat superior*. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994).

*7 In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir.1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability. A supervisory official is said to have been personally involved if that official directly participated in the infraction. *Id.* A supervisory official is said to have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement of a supervisory official is said to exist if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.*

In this case defendant Girdich [8] appears to be named simply because he is the superintendent of Upstate, and defendant LaClair is named because he is the Deputy Superintendent for Security. Neither of these defendants were present or even knew about the incident. Clearly, their supervisory positions are insufficient to render them personally responsible for any violation alleged by plaintiff in this amended complaint. Although plaintiff does claim that he complained to defendant Bezio, complaining to a superior after the incident, without more, does not render that supervisor liable for the alleged violation, particularly when the alleged violation is not continuing. See *Murray v. Koehler*, 734 F.Supp. 605, 607 (S.D.N.Y.1990) (supervisory official is not responsible for incident about which he had no advance notice). Thus, plaintiff's complaint could have been dismissed on this basis as well.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion for summary judgment (Dkt. No. 28) be **GRANTED,** and the amended complaint **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

### All Citations

Not Reported in F.Supp.2d, 2007 WL 4790807

---

Footnotes

1    Plaintiff requests that the court order his transfer to another facility.

2    The facts are stated in a section of the amended complaint under the heading "FACTS" which is labeled on the complaint form as paragraph 6. Plaintiff has also separated his fact paragraph into different subsections labeled with the Roman numeral IV-1, IV-2 etc. Plaintiff may have meant to label the subsections "VI" which would be the Roman numeral for "6." For clarity, the court will simply cite the subsections as plaintiff has labeled them.

3    It is unclear whether "Fulton" is the actual spelling of this defendant's name. Defendants' memorandum of law in support of their summary judgment motion refers to this defendant as "Fulton," however, the acknowledgment of service signed

2007 WL 4790807

by the defendant appears to indicate that his name may be "Fortin." (Dkt. No. 10 at 2). The defendant's signature is almost illegible as is the printed version of the name. At the top of the page, the name "Fulton" is crossed out, and what appears to be "Fortin" is written in. Since defendants continue to refer to this defendant as "Fulton," this court will do the same.

4    The court notes that the sections governing inmate grievances were re-numbered in 2006. This court will refer to the current numbering which is different than the numbers that appear in *Hemphill.*

5    The court has also checked the original complaint, but no letter addressed to any defendants was attached to that document. (Dkt. No. 1).

6    The defendants specifically requested that plaintiff produce a copy of the letter that he referenced in the amended complaint. Defendants also served interrogatories asking what steps plaintiff took to complain about this incident and why he did not file a grievance. *See* Dkt. No. 20 (Exhibits). When plaintiff failed to respond to the defendants' discovery requests, defendants made a motion to compel, which this court granted on July 5, 2006. (Dkt. No. 23). Plaintiff again failed to produce the appropriate discovery, and defendants made a motion for sanctions. (Dkt. No. 24). This court granted defendants' motion to the extent that it ordered preclusion of the evidence that plaintiff failed to produce. (Dkt. No. 27).

7    Although the court realizes that an amended complaint supercedes the original, the court must note that in plaintiff's amended complaint, he claimed that Inmate Astruza attacked plaintiff with a *"weapon metal pick"* and states that defendants Taylor and Fulton were negligent in allowing Inmate Astruza to bring this "metal" weapon into the mess hall. However, plaintiff's original complaint states that Inmate Astruza attacked plaintiff with a *"pen."* (Dkt. No. 1, Facts at p. 2). This original version of the facts is supported by the "Report of Inmate Injury" that is attached to the original complaint and states that plaintiff was *"stabbed with a pen,"* not a metal pick. Complaint Exhibit. Plaintiff appears to have exaggerated the description of the weapon in his amended complaint.

8    The court also notes that defendant Girdich has never been served in this action. *See* Dkt. No. 8. The Marshal's Process Receipt and Return indicates that Superintendent Girdich retired from Upstate on May 27, 2004. Plaintiff has never attempted to have the Marshal serve this defendant again. Although the failure to serve defendant Girdich within the appropriate amount of time (FED. R. CIV. P. 4(m)) would be another basis to dismiss this complaint as against the superintendent, this court need not undertake this analysis since there are many bases upon which to recommend dismissal.

---

**End of Document**        © 2019 Thomson Reuters. No claim to original U.S. Government Works.